Keith Mathews
*Pro Hac Vice*
Associated Attorneys of New England
PO Box 278
Manchester, NH 03105
Ph. 603-622-8100
keith@aaone.law

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORONAVIRUS REPORTER, CALID INC on behalf of themselves and all others similarly situated<br><br>Plaintiffs,<br><br>vs.<br><br>APPLE INC., FEDERAL TRADE COMMISSION<br>Defendants. | CAND Docket: 21-cv-05567-EMC<br><br>**PLAINTIFFS' OBJECTION TO APPLE'S *EX PARTE* APPLICATION FOR RELATION TO APP STORE FEES CASE; REFERRAL FOR ATTORNEY MISCONDUCT** |

# **PLAINTIFFS' OBJECTION TO APPLE'S *EX PARTE* APPLICATION FOR RELATION TO APP STORE FEES CASE; REFERRAL FOR ATTORNEY MISCONDUCT**

## I.     Background

1. Everybody knows a loved one or a friend whose life was touched by Dr. Roberts, Plaintiff Coronavirus Reporter's Chief Physician. Anyone who ever had a cardiac bypass, stenting procedure, or was admitted to an Emergency Department on concern of myocardial infarction ("heart attack") almost certainly had laboratory blood work to detect damaged cardiac muscle tissue. In the 1980s, Dr. Roberts pioneered the MBCK blood test used for two decades as a "gold standard," and which directly laid the foundation for the subsequent troponin test widely used today. Dr. Roberts' CV, Exhibit A in this lawsuit, narrates a career of saving lives. One item he cannot put on his CV is saving lives with Coronavirus Reporter, because Apple improperly blocked this app in February 2020 to develop their own.

2. Apple's own SARS-CoV-2019 tracing system is still widely unavailable in the United States, some eighteen months later. In England, it is derided as "Pingdemic" and many British citizens have deleted the app in some sort of digital revolt.

3. As this jury will ultimately determine, Dr. Roberts' voluntary symptom "situational reference" app was exactly the app needed a year and a half ago. At the very least, there was room to allow the presence of such a critically important app; instead Apple blocked the entire class of startup COVID apps.

4. Yesterday, Apple by way of counsel Gibson Dunn filed a "notice" that amounts to fraud on the Court[1]. Apple's "notice" purports to be filed under Local Rule 3-12(c), which is reserved for *sua sponte* judicial referrals. Though one cannot put it past Apple and Gibson Dunn's arrogance to believe they are the judge and jury in this case, the fact is Apple has sought to evade an answer in this case for over eight months. Now, they seek to escape the answer due next week by improperly inducing the Clerk to consolidate claims under the falsely purported authority of a District Judge. Apple could have complied with Local Rule 3-12(b) and served such a motion. But Apple knows the motion would fail on its merits, and in light of meet & confer deadlines, would be late for avoiding an answer. Further, Rule 12-b requires service upon *all parties*, Coronavirus Reporter, and notably, the Federal Trade Commission. This was not an honest mistake; Gibson Dunn is arguably the wealthiest litigation-only law firm in the world. They clearly sought to improperly induce erroneous action by the Clerk, rather than serve yet another false, dilatory motion on the FTC, of all people.

5. Plaintiff refers Apple's conduct to the Court, and reserves the right to seek sanctions and/or jury inferences at the appropriate time. We seek hearing and/or investigation on this matter, but Plaintiff now proceeds by treating Apple's filing as an *ex parte* application under L.R 3-12(b) to relate cases.

6. There are several immediately obvious flaws with the idea of consolidating this pandemic response emergency app lawsuit with a case about basketball app commissions. For

---

[1] The high threshold for fraud upon the court is attained when a pattern of fraudulent facts are presented to the Court to interfere with a just and equitable decision process. After eight months of evading an Answer by falsely claiming Plaintiff "verges on disregard for the law" for filing a Sherman claim regarding a COVID app, Apple counsel now impersonates a district judge by filing under Local Rule 3-12(c) – strictly reserved for judicial *sua sponte* referrals, hoping the Clerk would be induced to issue YGR's notice of relation, which specifically exempts Apple from filing an Answer. Make no mistake, this was no mistake, and Plaintiff demands a hearing and/or investigation.

starters, the case they seek consolidation has nothing to do with COVID-19, has nothing to do with free apps, and has nothing to do with the fraud and retaliation/RICO claims that five Plaintiffs in this case, and a related case in Maine, demand be heard by a jury. Put simply, *Cameron* is a case on 30% fees; that matter is but one of nine claims in this lawsuit, which in fact was only added to demonstrate Apple's frivolous MTD filings.

7. Despite Plaintiff's early intent in February 2020 to assist with pandemic response technology, Apple has mounted vicious attacks against him, falsely declaring Plaintiff's claims verge "on disregard for the law," filing no less than four 12(b)(6) motions that absurdly assert Dr. Roberts' didn't even state a claim for relief – and now saying his claims are identical to claims that completed discovery and completed bench trial.

8. The opening paragraph of the *Cameron* Complaint challenges Apple's "supra-competitive 30% commission" of apps that "allow users to play games while in line at the grocery store, to edit documents, to make exercise more fun, to help meditate, an so much more." With all due respect to the *Cameron* plaintiffs, there is little similarly in either the gravity of the claim, or the claim theory itself, to Dr. Roberts' lawsuit. Seven of nine causes of action have nothing to do with *Cameron*, except that they involve smartphone apps.

9. Notably, our RICO claims against Apple have never been plead by any party, including Cameron, the DOJ, and the FTC. Over the course of five years, and ten person-years of developer work, Plaintiffs in this case and a related case in Maine have observed App Store behavior amounting to civil and/or criminal RICO violations. Plaintiffs' complaint seeks "joinder of the Department of Justice" to prosecute these RICO complaints, in the event FTC's response requires such. To simply ignore these claims, which certainly is

what Apple is hoping for in filing a surreptitious "*ex parte* application," would deprive Plaintiffs of their right to litigate this matter. For convenience of the Court, the RICO claim is summarized below:

a. Apple operates an enterprise that succeeds as the most profitable corporation in global history, in large part due to false and fraudulent behavior directed at developers. Apple blocks or suppresses third-party apps on false pretenses, to benefit their own competing apps or those of cronies.

b. Counsel here represents five small developers, whose stories evidence an incontrovertible pattern of fraud by Apple's App Review team;

c. Coronavirus Reporter was told by the App Review team that their "self reported symptoms app was dangerous." This, we know, was false, and Apple later allowed other apps (referred to as their "cronies") to publish symptom self-reporting apps.

d. Primary Productions was told their app constituted "illegal gambling," when it clearly did not, and when Apple was provided other examples of giveaway apps like HIQ, Apple ended communications.

e. A top-ten ranked telecommunications reference utility was told it "violated privacy policy" at Apple. The App was de-ranked/suppressed, and replaced with an Israeli copycat (i.e. crony) that used the same, and a more invasive, data technique.

f. A cross platform Facetime competitor was developed two years before Apple launched iOS 15 cross-platform Facetime. The app was suppressed in rankings and had zero downloads. Plaintiff asserts app ranking suppression is similar wire

fraud to the false statements made by the App Review team in the above example, in that case manipulating end-user rankings to falsely hide a competing app from a listing.

g. In short, Counsel and Plaintiffs have researched substantial claim theory and RICO racket activity that affected critical apps, spanning from COVID-19 subject matter to top-ten ranked telecom utilities. To subvert and downgrade these claims to "Pure Sweat Basketball" 30% fees dispute, by tricking the Clerk into believing a District Judge referred the case for consolidation, is exactly what Apple so desires. Plaintiffs have a right to adjudication on the merits.

10. Furthermore, there exists no identity of defendants as typically required for relation of cases. Here, the Federal Trade Commission is a defendant regarding an Administrative Procedure Act claim that they failed to even respond, let alone help, Plaintiff's prosecution of Apple's Sherman violations. To put potential DOJ RICO claims, FTC claims, and/or APA review thereof on perpetual hold would be a manifest injustice.

11. Finally, Apple's notice raises serious concerns under the doctrine of judicial estoppel, which states that a party is "precluded from taking a position it held in earlier litigation." Apple has filed frivolous 12(b)(6) motions for eight months now against Plaintiff C.R. that its pleadings don't amount to a cause of action, and are in "disregard for the law." Apple can't have it both ways and now state that this case is so related to *Cameron* and *Epic* as to warrant consolidation. Those cases have completed bench trial, or discovery, and Apple never objected to them as failing to state a claim. Apple is harassing this Plaintiff with false and dilatory tactics.

12. The simple fact is Apple does not want to file an Answer addressing the serious claims set forth in our Complaint. Apple now sought to improperly use Local Rules designated for internal use by the Court and Clerk, to put an improper stop to our RICO and FTC claims. Upon reading our Claim Theory Overview and the docket history, it should be clear to any honest observer that Apple is using false and/or misleading pleadings to avoid answering the serious RICO and Sherman allegations brought by Coronavirus Reporter. We raise RICO and Sherman claims against App Store practices that impact all free developers. The Court may take judicial notice of the fact that *Apple Insider*, a publication closely covering Apple litigation, produced coverage explaining the broad scope of our new claims (https://appleinsider.com/articles/21/07/21/developers-of-free-apps-seek-200-billion-damages-claim-apple-restrains-trade. )

13. Dr Roberts has suffered nearly two years of fraud and abuses by Apple and its counsel. At this stage in his career, he should be free to focus on his passion – scientific advancement – rather than Apple's unethical pleading maneuvering. Plaintiff reserves the right to file a motion for sanctions upon adjudication of this *ex parte* notice-application, and hereby demands Apple be ordered to file their long overdue Answer without delay

## II.    MEMORANDUM OF LAW

14. An action is related to another when (1) the actions concern substantially the same parties, property, transaction, or event; and (2) it appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different judges. Civ. L.R. 3-12(a). The rule applies to any potentially related action "which is or was pending in this District." Civ. L.R. 3-12(b) .

15. *Coronavirus Reporter & Calid v. Apple & FTC* lack the requisite "substantial" parity in parties, transactions, and operative facts. This district has rejected relation of cases even where parties and claims were far more similar than they are here. *See Tecson v. Lyft*, No. 18-cv-06782, 2019 WL 1903263, at *3 (N.D. Cal. Apr. 29, 2019) (Gonzalez Rogers, J.) (finding that TCPA cases against the *same* defendant did "not suffice to meet the substantial similarity threshold" because the cases involved "different facts and claims so the judge in each case would be focused on resolving separate issues of law and fact for different parties").

    ***Different Parties, Property, Transactions, and Events.*** Here, the transactions and events pertain to free apps that were blocked from distribution, subjected to ranking suppression, and/or subjected to fraudulent App Review activity constituting RICO wire fraud predicate act patterns. Additionally, $99 developer fees are sought in the proposed classes. Put simply, none of these issues are being litigated in *Cameron,* which is complete with discovery.

16. *Cameron*'s complaint is clear, we cite Paragraph 108 – the proposed classes apply to developers of apps sold for a "non-zero price." It would be a vast injustice to stay this case, pertaining to free developers, so that *Cameron* could proceed with narrow "single market" theories only applicable to paid apps. Plaintiff has spent the better part of two years now developing much broader claim theory (see Complaint- *Claim Theory Overview*) covering the institutional market for apps, which includes free apps and paid apps alike.

17. Similarly, *Cameron* does not have any proposed classes for the excessive $99 annual developer subscription fee. These fees, per a recent Congressional Subcommittee report, amount to tens of billions of inappropriate taxation.

18. Furthermore, *Cameron* does not even touch upon the RICO claims, retaliation claims, and ranking suppression claims brought in this case. Plaintiffs have a right to confront witnesses and proceed to a jury on claims they were lied to, defrauded, subject to wire fraud, app suppression, and even patent retaliation. To defer this matter to *Cameron* would be to deny justice to Plaintiffs.

19. Additionally, the presence of defendant FTC in this case, and the request for potential joinder of DOJ, defeats any parity of parties argument. Here, the FTC will be involved in discovery to produce the administrative record, to determine whether or not an APA claim for failing to respond may proceed. In all likelihood, this claim will be amended; the FTC may choose to respond, in which case, the Complaint is clear that an "non-arbitrary and capricious" response must be issued.

**There is little to no overlap in transactions and events.**

20. Dr Roberts' COVID app, and claims herein, require discovery into this life-or-death matter, and how Apple engaged in fraudulent App Review practices. These "transactions and events" have little to do with "Pure Sweat Basketball's" dispute over 30% commissions. Substantial fraud was directed at our Plaintiffs, and likely, lives lost by Apple's authoritarian, racketeering App Store. There "is virtually no overlap in the "property, transactions, or event[s]" at issue. Civ. L.R. 3-12(a). It is noted that this district recognized in *Cameron/Pepper* that having the same defendant in those cases resulted in "each case stem[ming] from the use of the exact same technology and the economics

regarding the same technology." *Pepper v. Apple,* No. 11-cv- 06714-YGR, 2019 WL 4783951, at *1 (N.D. Cal. Aug. 22, 2019) (Gonazalez Rogers, J.) (finding "significant economies" in terms of case management and resolution of motions tied to an understanding of the technology, platform markets, and the transactions at issue). In contrast, this is not the "exact same economics" because it doesn't pertain to App Store commissions, with the exception of one minor cause of action. Arguably, the only "exact same technologies" is the involvement of the iPhone. But here, ranking technology is not even mentioned in *Cameron*, nor is the fundamental core of our claim – restriction of access to the smartphone enhanced internet. This is not reasonably similar to "Kodak downstream fees theory" to warrant such late consolidation. In short, while *Cameron* and *Pepper* may have made a commendable start nearly a decade back in questioning Apple's policies, the fact is they have not comprehensively plead and discovered all of Apple's wrongdoings. Their claims are ten years outdated, at least to some degree. Apple, most aware of this, cannot be allowed to "bury" novel, valid claims under old, possibly failing claims. Make no mistake, this is exactly what they hoped the Clerk would do when they improperly filed under Local Rule 3-12-c.

21. ***Little Duplication of Labor and Expense or Risk of Conflicting Results.*** This case and *Cameron* are in very different procedural postures, making it unlikely there will be meaningful efficiencies created through relation. These differences in procedural posture make it unlikely that there will be an unduly burdensome duplication of labor and expense, and given the different defendants and operative facts, there is little risk of conflicting results. *Cf. Pepper*, 2019 WL 4783951, at *2 (relating cases when "[a]ll three

cases are currently in a similar procedural posture and have yet to begin substantial discovery and so efficiency gains will be achieved in discovery).

22. Apple has acknowledged our claims, by this Counsel and Plaintiffs, are sufficient to be considered "first-to-file" under FRCP Class Action rules. In *Primary Productions v. Apple,* in the Maine district, Apple filed a motion to dismiss, alleging, amongst other things, that *Coronavirus* is first-to-file: "*The [Primary Productions] complaint should be dismissed under the first-to-file rule, which exists to prevent the inefficiencies and inconsistencies that result. This case is nearly a word-for-word copy of [Coronavirus Reporter]*" (21-cv-137-JDL, Document 17). After naming this lawsuit "first-to-file" claim theory for free apps, ranking suppression, and annual developer fees, Apple remarks that some allegations – one or two minor, alternative causes of action out of nine – relate to *Cameron*.

23. This action is first-to-file proposed classes that protect small developers of free apps from RICO and Sherman violations. Recognizing this truth, Apple's *ex parte* "notice" motion must be denied, referred for reprimand, and/or stricken from the record.

24. As numerous courts have recognized, there are many coordination arrangements short of a full merger that promote efficiency and eliminate the need for duplicative work, including the alignment of pretrial deadlines and discovery schedules. *See, e.g., Odyssey Wireless, Inc. v. Apple Inc.,* No. 3:15-cv-01735-H-RBB, 2015 WL 10943612, at *2 (S.D. Cal. Sept. 30, 2015); *Jones v. Bank of Am., N.A.,* No. 3:11-cv-01161-JM-WVG, 2013 WL 12091088, at *1 (S.D. Cal. May 9, 2013). Courts in this district and elsewhere have allowed similar cases to be maintained on "separate, yet similar, litigation tracks" facilitated in part by issuing joint orders as necessary. *See In re HP Derivative Litig.,* No.

5:10-cv-03608-EJD, 2011 WL 5914216, at *4 (N.D. Cal. Nov. 28, 2011); *Regents of University of California v. Dep't of Homeland Sec.,* No. 3:17-cv-05211-WHA, (N.D. Cal. Sep. 22, 2017) ECF No. 49 (relating but not consolidating five separate cases challenging rescission of DACA); *California v. Ross,* No. 3:18-cv-01865-RS (N.D. Cal. May 22, 2018), ECF No. 14 (relating but not consolidating two separate cases challenging additional of citizenship question to the census); *see also Int'l Refugee Assistance Project v. Trump*, No. 8:17- cv-00361-TDC (D. Md. filed Feb. 7, 2017); *Iranian Alliances Across Borders v. Trump*, No. 8:17- cv-02921-TDC (D. Md. filed Oct. 2, 2017); *Zakzok v. Trump*, No. 1:17-cv-02969-TDC (D. Md. filed Oct. 6, 2017) (coordinating but not consolidating three separate challenges, including one involving undersigned counsel and another involving counsel from the *Pars* team).

25. Because *Cameron* has nearly completed discovery, and *Epic* has completed bench trial, it is even hard to imagine how the Court could coordinate these cases. Nonetheless, Plaintiff is open to any coordination that could save all parties time and efforts, with regards to one or two minor causes of actions that may have slight overlap with *Cameron*. But such coordination must not restrict Plaintiff's right to timely discovery and adjudication of RICO and free app claim theory that is simply not at issue, nor even mentioned, in *Cameron* and *Epic.*

Respectfully submitted, this 5th day of August 2021.

/s/ Keith Mathews
Keith Mathews
*Pro Hac Vice*
NH Bar No. 20997
Associated Attorneys of New England
PO Box 278
Manchester, NH 03105
Ph. 603-622-8100
keith@aaone.law

## CERTIFICATE OF SERVICE

I, Keith Mathews, do declare as follows:

I certify that a copy of the foregoing was delivered electronically to counsel for the Defendants with counsel, and emailed to those without known counsel.

Executed on this 5th day of August 2021.

/s/ Keith Mathews
Keith Mathews
Attorney for Plaintiffs