1  GIBSON, DUNN & CRUTCHER LLP
   MARK A. PERRY (SBN 212532)
2    mperry@gibsondunn.com
   RACHEL S. BRASS (SBN 219301)
3    rbrass@gibsondunn.com
   JULIAN W. KLEINBRODT (SBN 302085)
4    jkleinbrodt@gibsondunn.com
   555 Mission Street, Suite 3000
5  San Francisco, CA 94105-0921
   Telephone: (415) 393-8200
6  Facsimile:  (415) 374-8429

7  *Attorneys for Apple Inc.*

8                  **UNITED STATES DISTRICT COURT**

9                  **NORTHERN DISTRICT OF CALIFORNIA**

                   **SAN FRANCISCO DIVISION**
10

11

12  CORONAVIRUS REPORTER, CALID INC.,          Case No. 3:21-CV-05567-EMC
    on behalf of themselves and all others similarly
13  situated                                    **DEFENDANT APPLE INC.'S RULE 12**
                                                **MOTION TO DISMISS AND MOTION TO**
14                    Plaintiffs,               **STRIKE; SUPPORTING MEMORANDUM**
                                                **OF POINTS AND AUTHORITIES**
15          v.

16  APPLE INC., FEDERAL TRADE
    COMMISSION,
17                                              Date:      October 14, 2021
                      Defendants.               Time:      1:30 p.m. PT
18                                              Place:     Courtroom 5, 17th Floor

19                                              The Honorable Edward M. Chen

20

21

22

23

24

25

26

27

28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 14, 2021, at 1:30 p.m., or as soon thereafter as the matter may be heard, in the United States District Court, Northern District of California, 450 Golden Gate Ave., San Francisco, Courtroom 5, 17th Floor, Federal Courthouse, Defendant Apple Inc., through their undersigned counsel, will, and hereby do, move to dismiss and move to strike Plaintiffs Coronavirus Reporter and CALID Inc.'s Complaint. This Motion is supported by this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the Declaration of Rachel S. Brass and exhibits thereto; the Proposed Order filed herewith; the pleadings and papers on file herein; and such other matters that may be presented to the Court at the hearing.

By:     _/s/ Rachel S. Brass_
Rachel S. Brass

GIBSON, DUNN & CRUTCHER LLP
MARK A. PERRY (SBN 212532)
 mperry@gibsondunn.com
RACHEL S. BRASS (SBN 219301)
 rbrass@gibsondunn.com
JULIAN W. KLEINBRODT (SBN 302085)
 jkleinbrodt@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: (415) 393-8200
Facsimile: (415) 374-8429

_Attorneys for Apple Inc._

1

**STATEMENT OF ISSUES TO BE DECIDED**

2

Whether the Complaint should be dismissed, and one of the proposed classes should be stricken,

3

because:

4

1. Plaintiffs lack Article III standing (Counts I, II, and VI).

5

2. Plaintiffs have failed to allege a relevant antitrust market (Counts I–VI), antitrust injury and

6

standing (Counts I–VI), exclusionary conduct under Section 2 (Counts I, II, and IV), and/or

7

concerted action under Section 1 (Count V).

8

3. Plaintiffs have failed to allege the required elements of a Section 2 tying claim (Count VI)

9

or Section 2 essential facilities claim (Count III).

10

4. Plaintiffs have failed to state a claim for breach of contract or the covenant of good faith

11

and fair dealing (Counts VII and VIII).

12

5.  Plaintiffs have failed to plead with sufficient particularity the required elements of a RICO

13

claim (Count IX).

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT APPLE INC.'S MOTION TO DISMISS
CASE NO. 3:21-CV-05567-EMC

1

# TABLE OF CONTENTS

2

<u>Page</u>

STATEMENT OF ISSUES TO BE DECIDED .................................................................ii

I. INTRODUCTION ..........................................................................................................1

II. BACKGROUND ...........................................................................................................2

    A.    The App Store ...................................................................................................2

    B.    Plaintiffs ..........................................................................................................3

    C.    Procedural History ..........................................................................................4

III. LEGAL STANDARDS .................................................................................................5

IV. ARGUMENT ...............................................................................................................6

    A.    Plaintiffs Lack Article III Standing to Bring Counts I, II, and VI .............6

    B.    Plaintiffs' Antitrust Claims Must Be Dismissed ..........................................7

        1.    Plaintiffs Fail to Allege a Plausible Relevant Market (Counts I–VI) ...................................................................................................7

        2.    Plaintiffs Fail to Allege Plausible Antitrust Injury (Counts I–VI) .................................................................................................10

        3.    Plaintiffs Fail to Allege Exclusionary Conduct (Counts I, II, and IV) ...............................................................................................11

        4.    Plaintiffs Fail to Allege Concerted Action or Unlawful Agreement (Count V) .................................................................13

        5.    Plaintiffs Fail to Identify Two Distinct, Tied Products (Count VI) .................................................................................................14

        6.    Plaintiffs Fail to Allege Inability to Access an Essential Facility (Count III) ..................................................................15

    C.    Plaintiffs' Contract Claims Must Be Dismissed .......................................16

        1.    Plaintiffs Fail to Plead Breach of Any Contract (Count VII) ........16

        2.    Plaintiffs Fail to Plead Breach of the Covenant of Good Faith and Fair Dealing (Count VIII) ...............................................18

    D.    Plaintiffs' RICO Claim Must Be Dismissed (Count IX) .........................19

        1.    Plaintiffs Have Failed to Plead the Claim with Particularity, As Required by Rule 9(b) ..................................................19

        2.    Plaintiffs Have Failed to Allege that Apple Committed Any Predicate Acts ................................................................20

**TABLE OF CONTENTS** (*continued*)

Page

3.     Plaintiffs Have Failed to Allege an Enterprise Distinct from the RICO Defendant ................................................................ 22

4.     Apple's Use of the Federal Court System to Defend Itself Is Not a Basis for a RICO Claim ............................................. 23

E.     The Complaint Should Be Dismissed Without Leave to Amend ........... 24

V. CONCLUSION ...................................................................................... 24

Gibson, Dunn & Crutcher LLP

DEFENDANT APPLE INC.'S MOTION TO DISMISS
CASE NO. 3:21-CV-05567-EMC

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.,*
836 F.3d 1171 (9th Cir. 2016) ...................................................*13, 14, 15, 16*

*Agena v. Cleaver-Brooks, Inc.,*
2019 WL 11248590 (D. Haw. Oct. 31, 2019) ..............................................*20*

*In re Am. Express Anti-Steering Rules Antitrust Litig.,*
361 F. Supp. 3d 324 (E.D.N.Y. 2019) .........................................................*10*

*Am. Needle, Inc. v. NFL,*
560 U.S. 183 (2010)......................................................................................*13*

*Apple Inc. v. Psystar Corp.,*
586 F. Supp. 2d 1190 (N.D. Cal. 2008).......................................................*10*

*In re Apple Processor Litig.,*
2019 WL 3533876 (N.D. Cal. Aug. 2, 2019) .................................................*7*

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)...................................................................................*5, 21*

*Atl. Richfield Co. v. USA Petroleum Co.,*
495 U.S. 328 (1990)......................................................................................*11*

*Baar v. Jaguar Land Rover N. Am., LLC,*
295 F. Supp. 3d 460 (D.N.J. 2018)..............................................................*13*

*Baumer v. Pachl,*
8 F.3d 1341 (9th Cir. 1993) .........................................................................*24*

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)....................................................................................*5, 6*

*Blix Inc. v. Apple Inc.,*
2020 WL 7027494 (D. Del. Nov. 30, 2020)............................................*12, 16*

*Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.,*
985 F. Supp. 2d 612 (S.D.N.Y. 2013) .........................................................*12*

Gibson, Dunn &
Crutcher LLP

1

2

## TABLE OF AUTHORITIES (*continued*)

Page(s)

3

4

*Brantley v. NBC Universal, Inc.,*
675 F.3d 1192 (9th Cir. 2012) ................................................................. 10

5

6

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
429 U.S. 477 (1977) ................................................................................. 11

7

8

*Cascade Health Sols. v. PeaceHealth,*
515 F.3d 883 (9th Cir. 2008) ................................................................. 15

9

*Chappel v. Lab'y Corp. of Am.,*
232 F.3d 719 (9th Cir. 2000) ................................................................. 24

10

11

*Coronavirus Reporter v. Apple, Inc.,*
No. 21-cv-47 (D.N.H.) ............................................................................. 4

12

13

*Costco Wholesale Corp. v. Maleng,*
522 F.3d 874 (9th Cir. 2008) ................................................................. 13

14

15

*Currier v. Town of Gilmanton,*
2019 WL 3779580 (D.N.H. Aug. 12, 2019) ............................................ 9

16

17

*DaimlerChrysler Corp. v. Cuno,*
547 U.S. 332 (2006) ................................................................................. 5

18

19

*Delacruz v. State Bar of Cal.,*
2020 WL 227237 (N.D. Cal. Jan. 15, 2020) .......................................... 24

20

*Dennis v. Husqvarna Forest & Garden Co.,*
1994 WL 759187 (D.N.H. Dec. 27, 1994) ............................................. 13

21

22

*Depot, Inc. v. Caring for Montanans, Inc.,*
915 F.3d 643 (9th Cir. 2019) ................................................................. 19

23

24

*Donelson v. Ameriprise Fin. Servs., Inc.,*
2021 WL 2231396 (8th Cir. June 3, 2021) .............................................. 7

25

26

*Donohue v. Apple, Inc.,*
871 F. Supp. 2d 913 (N.D. Cal. 2012) .............................................. 17, 18

27

28

*Eclectic Props. E., LLC v. Marcus & Millichap Co.,*
751 F.3d 990 (9th Cir. 2014) ................................................................. 21

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES (*continued*)

Page(s)

*Edwards v. Oportun, Inc.,*
193 F. Supp. 3d 1096 (N.D. Cal. 2016) ........................................................................... 7

*In re Facebook Privacy Litig.,*
192 F. Supp. 3d 1053 (N.D. Cal. 2016) ........................................................................... 7

*Fantasy, Inc. v. Fogerty,*
984 F.2d 1524 (9th Cir. 1993) ........................................................................................ 6

*Fed. Trade Comm'n v. Qualcomm Inc.,*
969 F.3d 974 (9th Cir. 2020) .................................................................................... 7, 11

*Ferguson v. Greater Pocatello Chamber of Commerce, Inc.,*
848 F.2d 976 (9th Cir. 1988) ........................................................................................ 15

*Garibaldi v. Bank of Am. Corp.,*
2014 WL 172284 (N.D. Cal. Jan. 15, 2014) .................................................................. 17

*Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.,*
711 F.3d 68 (2d Cir. 2013) ............................................................................................ 11

*Gorlick Distrib. Ctrs., LLC v. Car Sound Exhaust Sys., Inc.,*
723 F.3d 1019 (9th Cir. 2013) ...................................................................................... 10

*Gottreich v. S.F. Inv. Corp.,*
552 F.2d 866 (9th Cir. 1977) ........................................................................................ 19

*Granfield v. NVIDIA Corp.,*
2012 WL 2847575 (N.D. Cal. July 11, 2012) ................................................................. 7

*Griffin v. Green Tree Servicing, LLC,*
2016 WL 6782764 (C.D. Cal. Apr. 11, 2016) ................................................................ 17

*Hamilton v. Greenwich Invs. XXVI, LLC,*
126 Cal. Rptr. 3d 174 (Cal. Ct. App. 2011) .............................................................. 16, 17

*Hicks v. PGA Tour, Inc.,*
897 F.3d 1109 (9th Cir. 2018) ................................................................................ 8, 9, 10

*hiQ Labs, Inc. v. LinkedIn Corp.,*
485 F. Supp. 3d 1137 (N.D. Cal. 2020) ................................................................. 8, 9, 16

Gibson, Dunn &
Crutcher LLP

1
2

**TABLE OF AUTHORITIES** (*continued*)

Page(s)

3
4

*JamSports & Entm't, LLC v. Paradama Prods., Inc.,*
336 F. Supp. 2d 824 (N.D. Ill. 2004)................................................................. *16*

5
6

*Jefferson Par. Hosp. Dist. No. 2 v. Hyde,*
466 U.S. 2 (1984)................................................................. *14*

7
8

*Johnson v. Glock, Inc.,*
2021 WL 428635 (N.D. Cal. Feb. 8, 2021)................................................................. *6*

9

*Kearney v. Foley & Lardner, LLP,*
590 F.3d 638 (9th Cir. 2009)................................................................. *23*

10
11

*Kelly v. United States,*
140 S. Ct. 1565 (2020)................................................................. *21*

12
13

*Ledford v. Peoples,*
657 F.3d 1222 (11th Cir. 2011)................................................................. *9*

14
15

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.,*
431 F.3d 353 (9th Cir. 2005)................................................................. *19*

16
17

*Lopez v. Dean Witter Reynolds, Inc.,*
591 F. Supp. 581 (N.D. Cal. 1984)................................................................. *22*

18
19

*Lujan v. Defs. of Wildlife,*
504 U.S. 555 (1992)................................................................. *6*

20
21

*Maya v. Centex Corp.,*
658 F.3d 1060 (9th Cir. 2011)................................................................. *5*

22

*Med. Supply Chain, Inc. v. Neoforma, Inc.,*
419 F. Supp. 2d 1316 (D. Kan. 2006)................................................................. *9*

23
24

*Meland v. WEBER,*
2 F.4th 838 (9th Cir. 2021)................................................................. *5, 6*

25
26

*Metro Servs. Grp. v. Travelers Cas. & Sur. Co.,*
2021 WL 2633416 (N.D. Cal. June 25, 2021)................................................................. *20*

27
28

*MetroNet Servs. Corp. v. Qwest Corp.,*
383 F.3d 1124 (9th Cir. 2004)................................................................. *12*

Gibson, Dunn &
Crutcher LLP

## TABLE OF AUTHORITIES (*continued*)

<u>Page(s)</u>

*Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.,*
924 F.2d 1484 (9th Cir. 1991) ........................................................................................ 8

*Muskegan Hotels, LLC v. Patel,*
986 F.3d 692 (7th Cir. 2021) ........................................................................................ 24

*Newcal Indus., Inc. v. Ikon Office Sol.,*
513 F.3d 1038 (9th Cir. 2008) ........................................................................................ 8

*In re NFL Sunday Ticket Antitrust Litig.,*
933 F.3d 1136 (9th Cir. 2019) ...................................................................................... 11

*Novell, Inc. v. Microsoft Corp.,*
731 F.3d 1064 (10th Cir. 2013) .................................................................................... 16

*Odom v. Microsoft Corp.,*
486 F.3d 541 (9th Cir. 2007) ........................................................................................ 19

*Ohio v. Am. Express Co.,*
138 S. Ct. 2274 (2018) .................................................................................................... 7

*Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.,*
555 U.S. 438 (2009) ................................................................................................ 12, 13

*Pac. Recovery Sols. v. Cigna Behavioral Health, Inc.,,*
2021 WL 1176677 (N.D. Cal. Mar. 29, 2021) ...................................................... 20, 21

*Pence v. Andrus,*
586 F.2d 733 (9th Cir. 1978) .......................................................................................... 6

*Pistacchio v. Apple Inc.,*
2021 WL 949422 (N.D. Cal. Mar. 11, 2021) ...................................................... 9, 10, 15

*Progressive W. Ins. Co. v. Superior Court,*
37 Cal. Rptr. 3d 434 (Cal. Ct. App. 2005) .................................................................... 17

*Rae v. Union Bank,*
725 F.2d 478 (9th Cir. 1984) ........................................................................................ 22

*Relevent Sports, LLC v. U.S. Soccer Fed'n, Inc.,*
2020 WL 4194962 (S.D.N.Y. July 20, 2020) ................................................................ 13

## TABLE OF AUTHORITIES (*continued*)

Page(s)

*Rick-Mik Enters., Inc. v. Equilon Enters. LLC,*
532 F.3d 963 (9th Cir. 2008) ...................................................................................... *10, 14*

*Roberts v. UBS AG,*
2013 WL 1499341 (E.D. Cal. Apr. 11, 2013) .............................................................. *17*

*Sambreel Holdings LLC v. Facebook, Inc.,*
906 F. Supp. 2d 1070 (S.D. Cal. 2012)........................................................................ *13*

*SaurikIT, LLC v. Apple Inc.,*
No. 20-cv-08733 (N.D. Cal.) ...................................................................................... *9*

*Schreiber Distr. Co. v. Serv-Well Furniture Co.,*
806 F.2d 1393 (9th Cir. 1986) ..................................................................................... *22*

*Sever v. Alaska Pulp Corp.,*
978 F.2d 1529 (9th Cir. 1992) ..................................................................................... *22*

*Somers v. Apple, Inc.,*
729 F.3d 953 (9th Cir. 2013) ....................................................................................... *10*

*Sosa v. DIRECTV, Inc.,*
437 F.3d 923 (9th Cir. 2006) ................................................................................. *23, 24*

*Soundgarden v. UMG Recordings, Inc.,*
2020 WL 1815855 (C.D. Cal. Apr. 6, 2020) .......................................................... *18, 19*

*Spokeo, Inc. v. Robins,*
136 S. Ct. 1540 (2016)................................................................................................. *6*

*Sprewell v. Golden State Warriors,*
266 F.3d 979 (9th Cir. 2001) ....................................................................................... *6*

*Sumotext Corp. v. Zoove, Inc.,*
2016 WL 6524409 (N.D. Cal. Nov. 3, 2016) .............................................................. *8*

*Swartz v. KPMG LLP,*
476 F.3d 756 (9th Cir. 2007) ....................................................................................... *5*

*The Jeanery, Inc. v. James Jeans, Inc.,*
849 F.2d 1148 (9th Cir. 1988) ..................................................................................... *13*

Gibson, Dunn &
Crutcher LLP

**TABLE OF AUTHORITIES** (*continued*)

<u>Page(s)</u>

*Townshend v. Rockwell Int'l Corp.,*
2000 WL 433505 (N.D. Cal. Mar. 28, 2000) ................................................................ *12*

*United States v. Brugnara,*
856 F.3d 1198 (9th Cir. 2017) ..................................................................................... *21*

*United States v. E.I. du Pont de Nemours & Co.,*
351 U.S. 377 (1956).................................................................................................... *8*

*United States v. Miller,*
953 F.3d 1095 (9th Cir. 2020) ..................................................................................... *21*

*United States v. Ritchie,*
342 F.3d 903 (9th Cir. 2003) ...................................................................................... *3*

*United States v. Walters,*
997 F.2d 1219 (7th Cir. 1993) ..................................................................................... *21*

*Verizon Commc'ns Inc. v. Law Offs. of Curtis V. Trinko, LLP,*
540 U.S. 398 (2004).............................................................................................. *12, 15*

*Vigdor v. Super Lucky Casino, Inc.,*
2017 WL 2720218 (N.D. Cal. June 23, 2017)............................................................. *18*

*Wagh v. Metris Direct, Inc.,*
2002 WL 257846 (N.D. Cal. 2002) .............................................................................. *22*

*Walter v. Drayson,*
538 F.3d 1244 (9th Cir. 2008) ..................................................................................... *24*

*Young v. Facebook, Inc.,*
790 F. Supp. 2d 1110 (N.D. Cal. 2011)........................................................................ *17*

*Yount v. Acuff Rose-Opryland,*
103 F.3d 830 (9th Cir. 1996) ....................................................................................... *18*

**STATUTES**

18 U.S.C. § 1961(5)..................................................................................................... *22*

18 U.S.C. § 1962 ......................................................................................................... *19*

**TABLE OF AUTHORITIES** (*continued*)

<u>Page(s)</u>

18 U.S.C. § 1962(c) ........................................................................... *19, 22*

18 U.S.C. § 1964(c) ................................................................................ *19*

**OTHER AUTHORITIES**

Herbert Hovenkamp, et al., *IP and Antitrust: An Analysis of Antitrust Principles Applied to Intellectual Property* § 13.03 [C][2] (3rd ed. 2020 supp.)........................... *16*

N. Dist. of Cal. Guidelines for Prof'l Conduct ¶ 7 ....................................... *23*

**RULES**

Fed. R. Civ. P. 12(b)(1), (h)(3) ........................................................... *5*

Fed. R. Civ. P. 12(f)(2) ...................................................................... *6*

# I. INTRODUCTION

With the launch of the iPhone in 2007, Apple Inc. ("Apple") created the revolutionary and unique iOS ecosystem. Since then, Apple has focused on delivering to its consumers a safe, reliable, high-quality experience. One of the business strategies Apple employs to serve its customers is to offer a highly curated App Store in which each app available for download has gone through a rigorous process of review, including by Apple employees expert in app review. Apple's commitment to delivering to its users a reliable, trustworthy App Store experience has taken on added significance during the global coronavirus pandemic. Apple has had to evaluate COVID-19–related apps with a critical eye to ensure consumers are receiving safe, credible information supported by established medical and scientific institutions. This was all the more important during the uncertain early days of the pandemic, when it was difficult to distinguish reliable COVID-19 information from dishonest misinformation, and much remained unknown about the virus itself.

This case arises because Plaintiffs Coronavirus Reporter and CALID, Inc., both alleged app developers, are dissatisfied with Apple's efforts in the Spring of 2020 to ensure that the App Store was a place where consumers could find trustworthy COVID-19–related apps. They assert that Apple declined to approve their apps for distribution through the App Store, and attempt to leverage that routine gripe into a series of sweeping antitrust claims, two contract claims, and a federal racketeering claim against Apple. But Apple does not now, and did not then, have any obligation to approve and distribute on its own platform apps that are inconsistent with its Guidelines or policies or that threaten its consumers' health or safety. Plaintiffs' claims are meritless, and this case should be dismissed for multiple independent reasons.

*First*, Plaintiffs lack Article III standing to bring claims arising from alleged injuries they did not suffer. Most of their grievances, such as having to pay a 30% commission to Apple, being required to use IAP, or "ranking suppression," apply only to apps approved for distribution; they cannot be challenged by alleged developers whose apps, by their own allegations, were rejected. Any claims based on injuries Plaintiffs did not suffer, including Counts I, II, and VI, should be dismissed. Additionally, one of Plaintiffs' proposed classes should be stricken under Federal Rule of Civil Procedure 12(f) for the same reason: as defined, it depends on conduct that did not affect Plaintiffs.

*Second*, Plaintiffs' Sherman Act claims (Counts I–VI) fail because Plaintiffs have not alleged essential elements of their claims. They have not pleaded sufficient facts to make their conclusory relevant market definitions plausible and (to the extent they have alleged injury at all) they have alleged injury only to themselves—not to competition. Plaintiffs' Section 2 claims (Counts I, II, and IV) are deficient because they have alleged no exclusionary conduct, only a refusal-to-deal theory that runs afoul of well-settled Supreme Court precedent. And their Section 1 unreasonable-restraint claim (Count V) flounders because it challenges unilateral conduct, not concerted action.

*Third*, Plaintiffs' tying claim under Section 1 (Count VI) and essential facilities claim under Section 2 (Count III)—lifted verbatim from *Epic Games v. Apple Inc.*—must be dismissed. Plaintiffs not only lack Article III standing to assert a tying claim but also fail to allege either that the two allegedly tied products are distinct or that a tie even exists. Plaintiffs similarly fail to state a claim under the so-called essential facilities doctrine because iOS is not an essential facility and no law requires Apple to deal with another party on that party's preferred terms in any event.

*Fourth*, Plaintiffs' contract claims (Counts VII and VIII) are legally and factually defective because Apple did not breach or frustrate any alleged contractual obligation. On the contrary, the relevant contract invests Apple with sole discretion to approve, or disapprove, the distribution of apps developed using its proprietary software and other tools.

*Fifth*, Plaintiffs fail to plead a RICO claim (Count IX) with the particularity demanded by Federal Rule of Civil Procedure 9(b). Nor have Plaintiffs sufficiently alleged *any* of the elements of wire or mail fraud—the supposed predicate acts—or pleaded a distinct RICO enterprise.

For these reasons, Apple respectfully requests that the Court dismiss Plaintiffs' complaint.

## II. BACKGROUND

### A.   The App Store

Apple introduced the App Store in 2008. Compl. ¶ 144. App developers wishing to distribute apps on the App Store must enter into two agreements with Apple: the Developer Agreement and the Developer Program License Agreement ("DPLA"). Developers must also abide by the App Store

Review Guidelines (the "Guidelines").[1]  The Developer Agreement governs the relationship between a developer and Apple, *see* Ex. A, while the DPLA governs the distribution of apps created using Apple's proprietary tools and software, *see* Ex. B.  By signing the DPLA, developers "understand and agree" that Apple may reject apps in its "sole discretion."  Ex. B § 6.8(b).  The Guidelines set out the standards Apple applies when exercising that discretion to review and select apps for distribution on the App Store, a process known as "App Review."  *See generally* Ex. C.  A feature of the App Store known as In App Purchasing ("IAP"), discussed throughout the Complaint, allows iOS users to purchase digital goods and services within apps.  *See id.* §§ 3.1.1, 3.1.3(e).

Shortly after the COVID-19 pandemic began, Apple acted to ensure the App Store distributed relevant apps only from credible, reputable sources by, according to Plaintiffs, "announc[ing] that applications dealing with coronavirus would only be allowed from 'recognized institutions such as government, hospital, insurance company, NGO, or a university.'"  Compl. ¶¶ 14–16.  Apple allegedly later expanded the criteria for developers submitting COVID-19 apps to "any healthcare company with deep-rooted credentials."  *Id.* ¶ 75.

## B.   Plaintiffs

Plaintiffs allege they are developers of COVID-19–related apps.  Plaintiff Coronavirus Reporter is allegedly composed of "a group of health care and computer science experts" who developed an app named Coronavirus Reporter.  Compl. ¶ 14.  The app allegedly would have allowed users to "self-identify" COVID-19 symptoms.  *Id.* ¶ 15.  Coronavirus Reporter allegedly submitted its app to Apple for app review on March 3, 2020.  *Id.* ¶ 16.  Apple allegedly rejected the app and denied an appeal on March 26, 2020, because the app was not from a recognized institution, Coronavirus Reporter "lacked 'deeply rooted medical credentials,'" and the app's "user-generated data ha[d] not been vetted for

---

[1]  Both agreements and the Guidelines, attached as Exhibits A, B, and C, are "central" to Plaintiffs' claims, are incorporated by reference in the Complaint, and may be considered on this motion. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (noting that a document "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.").  Specifically, the Complaint defines a putative class as all U.S. app developers who have signed the DPLA, Compl. ¶ 184; and alleges that Apple enforces an unlawful tie "[t]hrough its Developer Agreement . . . and . . . Guidelines," *id.* ¶ 259. California law governs both agreements.  *See* Ex. A § 17 (Developer Agreement); Ex. B § 14.10 (DPLA).  All exhibit citations herein are to the attached Declaration of Rachel S. Brass.

accuracy by a reputable source." *Id.* ¶¶ 18, 77.  Coronavirus Reporter does not allege that it would have, had its app been approved, had to pay a 30% commission to Apple on any transactions, been forced to use IAP, or been subjected to so-called ranking suppression.

Plaintiff CALID Inc. is allegedly a corporation "founded to develop the CALID iOS App." Compl. ¶ 42.  Its app allegedly "allows scheduling of any entity—ranging from an expert for videoconferencing, to a house for rent." *Id.*  Apple allegedly rejected this app because it "sought to use credit card payments for the rentals, which have a 2% transaction fee," instead of Apple's IAP system. *Id.* ¶¶ 42, 117.  It is unclear whether the CALID app was later approved for distribution on the App Store—the Complaint contains contradictory allegations that "CALID was forced to abandon work on the platform" but that the app also was allegedly "subject to ranking suppression" and "typically invisible on App Store searches." *Id.* ¶ 42.  According to the Complaint, the CALID app was a "COVID application[]" and a "COVID startup app[]." *Id.* ¶¶ 87, 253.  The Complaint does not elaborate further.

## C.    Procedural History

On January 19, 2021, Plaintiff Coronavirus Reporter filed the first iteration of this lawsuit in the District of New Hampshire.  ECF Nos. 1, *Coronavirus Reporter v. Apple, Inc.* ("DNH Dkt."), No. 21-cv-47 (D.N.H.).  After the complaint was amended, Apple moved to dismiss the case or transfer it here under the DPLA's forum selection clause.  ECF Nos. 17, 19, 26, DNH Dkt.  In response, Coronavirus Reporter filed a second amended complaint—this time as a putative class action.  ECF No. 27, DNH Dkt.  Apple again moved to dismiss, but the New Hampshire court instead ordered the case transferred to California.  ECF Nos. 32, 33, DNH Dkt.  After the court refused to reconsider that order, Coronavirus Reporter voluntarily dismissed the lawsuit.  ECF Nos. 39, 40, DNH Dkt.

Coronavirus Reporter, now joined by CALID,[2] filed this putative class action on July 20, 2021. Similar to its New Hampshire predecessor, Ex. D, the Complaint proposes three classes: (1) "All U.S.

---

[2]  The initial and first amended complaints in New Hampshire alleged that Coronavirus Reporter "previously transacted business under the name Calid."  ECF No. 1 ¶ 14, DNH Dkt.; ECF No. 17 ¶ 14, DNH Dkt.  The second amended complaint in New Hampshire contained allegations about an "Unnamed App #4," which was a "marketplace platform focused on telemedicine" that may or may not have been CALID.  ECF No. 27 ¶ 19, DNH Dkt.  Apple has asked Plaintiffs to specify the app or apps they submitted for distribution, the dates of submission and rejection, and the developer accounts associated with those apps; but to date Plaintiffs have not responded.  *See* Ex. H (Aug. 10

Gibson, Dunn & Crutcher LLP

developers of any Apple iOS application that was excluded through disallowance and/or ranking suppression on Apple's iOS App Store"; (2) "All U.S. developers of any Apple iOS application or in-app product subject to a 30% sales commission [on] Apple's iOS App Store"; and (3) "U.S.-based iOS developers who were required to sign the DPLA and pay Apple $99 simply to access the 60% of the population that uses smartphone enhanced services (i.e. iOS) over the national internet backbone." Compl. ¶¶ 180–84 (italics omitted). And lifting liberally from other pending cases against Apple, Exs. E–G,[3] Plaintiffs assert nine counts against Apple: Section 2 claims for monopolization and attempted monopolization (Counts I, II, and IV); an essential facility claim (Count III); a Section 1 unreasonable-restraint claim (Count V); a tying claim (Count VI); two contract claims (Counts VII and VIII); and a Racketeer Influenced Corrupt Organization Act ("RICO") claim (Count IX). Plaintiffs also accuse the Federal Trade Commission of violating the Administrative Procedure Act.[4]

### III. LEGAL STANDARDS

"The party invoking federal jurisdiction bears the burden of establishing the elements of standing." *Meland v. WEBER*, 2 F.4th 838, 843 (9th Cir. 2021). "[A] plaintiff must demonstrate standing for each claim." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). Courts must dismiss claims over which they lack subject matter jurisdiction. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011); Fed. R. Civ. P. 12(b)(1), (h)(3).

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Courts are not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or

---

email from Rachel S. Brass to Keith Mathews). Nor have Plaintiffs filed their Rule 7-1 Corporate Disclosure Statements or Local Rule 3-15 Certificate of Interested Entities.

[3]  The Court may take judicial notice of the complaints in these cases, which the Complaint cites, relies on, and/or copies from. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

[4]  Because Plaintiffs assert their APA claim only against the FTC (which at the date of this filing apparently has not been served), Apple does not address that claim. *See* Compl. at 79.

unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see also Twombly*, 550 U.S. at 558 (noting that "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed," and cautioning that "proceeding to antitrust discovery can be expensive" (quotation marks omitted)).

Under Rule 12(f), a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f)(2). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues" in order to "streamlin[e] the ultimate resolution of the action and focus[ ] . . . attention on the real issues in the case." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527, 1528 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994).

## IV. ARGUMENT

### A. Plaintiffs Lack Article III Standing to Bring Counts I, II, and VI

Plaintiffs bear the burden of establishing Article III standing for their claims. *Meland*, 2 F.4th at 843. A plaintiff must allege (1) injury in fact, (2) that is fairly traceable to defendant's conduct, and (3) redressable. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). A plaintiff must show that it its injury is "concrete and particularized." *Id.* at 560. "To bring a claim on behalf of a class, the named plaintiff must have standing to bring the claim himself." *Johnson v. Glock, Inc.*, 2021 WL 428635, at *6 (N.D. Cal. Feb. 8, 2021); *see also Pence v. Andrus*, 586 F.2d 733, 736–37 (9th Cir. 1978) ("[I]n class actions, the named representatives must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547–48 (2016). Because Plaintiffs have failed to establish a cognizable injury traceable to the practices challenged in Counts I, II, and VI, at least those claims should be dismissed.

First, Plaintiffs lack standing to bring any claims related to IAP or Apple's alleged commission on certain paid transactions. As the Complaint emphasizes, the Coronavirus Reporter app was intended to be entirely "free." Compl. ¶¶ 69, 163. And the CALID app, as allegedly approved for distribution, was also "free." *Id.* ¶ 42. Moreover, because both apps were allegedly rejected, neither was, nor would have been, subject to IAP or Apple's commission. Likewise, Plaintiffs' alleged injuries—that

their apps were rejected from the App Store, *id.* ¶¶ 74, 117–19, and that the CALID app was allegedly subject to "ranking suppression," *id.* ¶ 42—have nothing to do with IAP or a commission.

Because Plaintiffs do not allege that they personally suffered any injury from Apple's alleged IAP requirement or 30% commission, claims based on this alleged conduct must be dismissed. *See In re Apple Processor Litig.*, 2019 WL 3533876, at *6–8 (N.D. Cal. Aug. 2, 2019) (dismissing claims where plaintiff had not personally suffered injury alleged); *In re Facebook Privacy Litig.*, 192 F. Supp. 3d 1053, 1058 (N.D. Cal. 2016) (dismissing claims that relied on Facebook having disclosed information to third parties where named plaintiff's information was not disclosed to third party); *Granfield v. NVIDIA Corp.*, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012) (dismissing for lack of standing claims for defects in "products not purchased"). Those claims are Counts I, II, and VI, which each depend on alleged injuries related to Apple's alleged 30% commission, *see* Compl. ¶¶ 200, 212, or IAP, *see id.* ¶¶ 195–96, 199–200, 202, 206–07, 209–12, 214, 259, 261–63, 265–67, 269–75.

One of Plaintiffs' proposed classes is defined to include only developers who were subject to Apple's alleged commission. *See* Compl. ¶¶ 182–83 (proposing class of developers "of any Apple iOS application or in-app product subject to a 30% sales commission"). This proposed class is subsumed within (or overlaps with) the proposed class in the *Cameron* case pending before Judge Gonzalez Rogers. In any event, this proposed class must be stricken: Plaintiffs have alleged no facts suggesting they are members of this class, let alone proper representatives; accordingly, this proposed class must be stricken from the Complaint under Rule 12(f) as "immaterial" and "impertinent" to the legal issues here. *See Donelson v. Ameriprise Fin. Servs., Inc.*, 2021 WL 2231396, at *7 (8th Cir. June 3, 2021) ("It is sensible to permit class allegations to be stricken at the pleading stage if it is apparent from the pleadings that the class cannot be certified." (quotation marks and ellipsis omitted)); *cf. Edwards v. Oportun, Inc.*, 193 F. Supp. 3d 1096, 1100 (N.D. Cal. 2016) (striking proposed class under Rule 12(f) where plaintiff was not a member of the putative class).

**B.      Plaintiffs' Antitrust Claims Must Be Dismissed**

**1.      Plaintiffs Fail to Allege a Plausible Relevant Market (Counts I–VI)**

Defining the relevant market is the "threshold" for stating an antitrust claim under Section 1 or 2. *Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020) (citing *Ohio v. Am.*

*Express Co.*, 138 S. Ct. 2274, 2285 (2018)).  Accordingly, a plaintiff must plead a plausible relevant market—including "both a geographic market and a product market"—to state a claim under either Section 1 or Section 2.  *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018); *see also hiQ Labs, Inc. v. LinkedIn Corp.*, 485 F. Supp. 3d 1137, 1148 (N.D. Cal. 2020) ("[T]he relevant market must still be plausibly alleged to make it past a 12(b)(6) challenge.").  The relevant product market "must encompass the product at issue as well as all economic substitutes for the product," *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1045 (9th Cir. 2008)—that is, all products that are "reasonably interchangeable by consumers for the same purpose," *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956).  The relevant geographic market must include the "area of effective competition where buyers can turn for alternate sources of supply."  *Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.*, 924 F.2d 1484, 1490 (9th Cir. 1991) (cleaned up).

Far from defining the relevant product market for each claim with clarity, Plaintiffs vacillate among conflicting allegations—many of them cut-and-pasted from complaints in other App Store cases.[5]  *Cf. Sumotext Corp. v. Zoove, Inc.*, No. 16-CV-01370-BLF, 2016 WL 6524409, at *3 (N.D. Cal. Nov. 3, 2016) (dismissing antitrust claims because "the allegations of the relevant market [were] unclear").  For example, Plaintiffs conclusorily assert a single "iOS app and IAP distribution services" market—without explaining what products are included or excluded.  Compl. ¶¶ 154, 195–96.  Plaintiffs similarly allege an alternative market for "the U.S. retailing of iOS apps and related digital products" without any elaboration.  *Id.* ¶ 195.  Elsewhere, Plaintiffs advance—again without any elaboration—an "IAP processing" market, *id.* at 69; an "iOS App Store" market; *id.* ¶ 233; an "iOS Games Payment Processing Market," *id.* ¶ 267; and a market for "the entire interstate, smartphone enhanced commerce and information flow transacted via the national internet backbone," *id.* ¶ 152.  Plaintiffs make no attempt to describe the boundaries of these markets, much less allege facts demonstrating that they are unique, plausible product markets; to the contrary, Plaintiffs purport to

---

[5]  Counts I and II of the Complaint are lifted almost word-for-word from the complaint in *Cameron*.  *Compare* Compl. ¶¶ 193–215, *with* Ex. F ¶¶ 124–46.  Counts III and VI are copied from *Epic Games*, a case where a developer's app was removed from the App Store for intentionally violating Apple's Guidelines.  *Compare* Compl. ¶¶ 217–43, *with* Ex. E ¶¶ 193–206, 233–44.  And the Complaint's market-definition allegations are copied from the complaint in *SaurikIT*.  *Compare* Compl. ¶¶ 142–51, *with* Ex. G ¶¶ 35–41, 43–44, 47.

Gibson, Dunn &
Crutcher LLP

"reserve the right to apply [at least two of these] market definitions interchangeably." *Id.* ¶ 153.  Such scattershot pleading—which "puts the onus on the court to 'cull through the allegations, identify the claims, and, as to each claim identified, select the allegations that appear to be germane to that claim'"—is reason enough to dismiss all antitrust claims.  *Currier v. Town of Gilmanton*, 2019 WL 3779580, at *3 (D.N.H. Aug. 12, 2019) (quoting *Ledford v. Peoples*, 657 F.3d 1222, 1239 (11th Cir. 2011)); *Med. Supply Chain, Inc. v. Neoforma, Inc.*, 419 F. Supp. 2d 1316, 1331–32 (D. Kan. 2006) (dismissing antitrust complaint for failure to satisfy Rule 8).

In any event, the Complaint does not substantiate any allegedly relevant market with sufficient factual allegations.  Alleged markets must be defined through allegations concerning reasonable interchangeability of use and cross-elasticity of demand.  *Hicks*, 897 F.3d at 1120; *see also hiQ Labs*, 485 F. Supp. 3d at 1147–48.  Yet Plaintiffs address neither.  They make no attempt to explain why the products in "iOS app distribution" market, Compl. ¶ 142, a "market/aftermarket for iOS app payment processing," *id.*, or a market for "the entire interstate, smartphone enhanced commerce and information flow transacted via the national internet backbone," *id.* ¶ 152—whatever they are—are economic substitutes, for example.  Indeed, in many instances Plaintiffs have merely lifted excerpts from the Complaint in *SaurikIT, LLC v. Apple Inc.*, No. 20-cv-08733 (N.D. Cal.), without any allegations explaining their plausibility here.  *See supra* n.5.

Nor have Plaintiffs "included appropriate allegations demonstrating that there are *not* appropriate economic substitutes."  *Pistacchio v. Apple Inc.*, No. 4:20-CV-07034-YGR, 2021 WL 949422, at *2 (N.D. Cal. Mar. 11, 2021).  For instance, the alleged "market for smartphone enhanced commerce and information flow transacted via the national internet backbone" on its face includes companies like Google, Samsung, and others, who—like Apple—make smartphones that are used to engage in "enhanced commerce and information flow." Compl. ¶ 218.  But the Complaint contains no allegations as to the universe of products within this market that are (or are not) reasonably interchangeable—aside from a textbox suggesting iOS apps *are* interchangeable with those on other platforms.  *See id.* p. 13 (listing "Interchangeable Applications" in the alleged "Smartphone Enhanced Internet Information and Commerce Device Marketplace").  Similarly, Plaintiffs have not alleged anything about what the "products" are within the "iOS app distribution," "iOS app payment

DEFENDANT APPLE INC.'S MOTION TO DISMISS
CASE NO. 3:21-CV-05567-EMC

Gibson, Dunn &
Crutcher LLP

processing," or "IAP distribution services" markets, or why they are not reasonably interchangeable with other products outside of those markets. This alone is fatal. *Pistacchio*, 2021 WL 949422, at *2. Yet it is particularly egregious here as Plaintiffs attempt to define multiple single-brand markets— which are "extremely rare," *Apple Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1198 (N.D. Cal. 2008), and treated with extreme skepticism, *In re Am. Express Anti-Steering Rules Antitrust Litig.*, 361 F. Supp. 3d 324, 343 (E.D.N.Y. 2019); *see also Pistacchio*, 2021 WL 949422, at *2 (dismissing similar claims challenging Apple's App Store practices because the plaintiff "has not yet adequately pled that the relevant market should itself be limited to the iOS platform").

For similar reasons, Plaintiffs have failed to allege a relevant geographic market. The Complaint vacillates between defining domestic markets, "overseas" or "global" markets, or both. *See, e.g.*, Compl. ¶ 142 (alleging a "domestic and global market for iOS app distribution"), ¶ 154 (asserting a single "domestic and overseas market for iOS app and IAP distribution services"), ¶ 158 (alleging Apple's practices affected only "the domestic market for iOS app and in-app-product distribution services"), ¶ 274 (alleging a single "U.S. market for iOS app and IAP distribution services"). Yet Plaintiffs fail to allege any facts supporting these assertions, much less square their contradictory boundaries with one another.

For these reasons, Plaintiffs have not plausibly alleged a relevant market, and their antitrust claims must be dismissed. *See, e.g.*, *Rick-Mik Enters., Inc. v. Equilon Enters. LLC*, 532 F.3d 963, 972 (9th Cir. 2008); *Hicks*, 897 F.3d at 1120; *Pistacchio*, 2021 WL 949422, at *2 (dismissing antitrust claims because the "sparse supporting allegations" failed to substantiate alleged market).

### 2.  Plaintiffs Fail to Allege Plausible Antitrust Injury (Counts I–VI)

Antitrust injury is a pleading requirement for Section 1 and 2 claims. *Somers v. Apple, Inc.*, 729 F.3d 953, 963 (9th Cir. 2013); *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1197–98 (9th Cir. 2012). To allege antitrust injury, a plaintiff must allege injury to "competition in the market as a whole"—such as marketwide reduction in output or increase in prices—"not merely injury to itself as a competitor." *Gorlick Distrib. Ctrs., LLC v. Car Sound Exhaust Sys., Inc.*, 723 F.3d 1019, 1024–25 (9th Cir. 2013). This alleged harm also must be "'attributable to an anticompetitive aspect of the practice under scrutiny'"; "harm that could have occurred under the normal circumstances of free

competition" does not suffice.  *In re NFL Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1150 (9th Cir. 2019) (quoting *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990)).

The theory of harm pleaded here is that Plaintiffs "were underpaid by Apple," Compl. ¶¶ 202, 214, 276, because their apps were rejected from the App Store or subjected to alleged ranking suppression, *id.* ¶¶ 16, 42, 74, 112, 116, 137.  Yet there are no plausible allegations that this alleged conduct suppressed output, increased prices, or otherwise harmed competition *marketwide*.  Because "[t]he antitrust laws . . . were enacted for the protection of competition not competitors," *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977) (quotation marks omitted), Plaintiffs' allegations therefore fail to state a cognizable antitrust injury.

Indeed, the only potential allegations of antitrust injury reflect Plaintiff's wholesale reuse of others' complaints.  *Compare* Compl. ¶ 158 (alleging Apple restricts output by barring competing app stores from the App Store), *id.* ¶ 159 (alleging Apple's "distribution charges" are so high that they "keep developers out of the App Store"), *id.* ¶ 164 (alleging 30% commissions are evidence of supracompetitive prices), *with* Ex. F (*Cameron*) ¶¶ 63, 65, 74, 131.  But none of these allegations relate to Plaintiffs' alleged business or theory of harm here.  There is no allegation that Plaintiffs sought to introduce a competing app store, for example, or that they paid supracompetitive commissions to Apple.  In other words, Plaintiffs cannot attribute any *antitrust* injury to the practices challenged in *this* case.  *In re NFL Sunday Ticket Antitrust Litig.*, 933 F.3d at 1150; *see also Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*, 711 F.3d 68, 77 (2d Cir. 2013) (affirming dismissal of complaint because "harm only supports antitrust injury, however, if it flows from that which makes the [allegedly anticompetitive] scheme unlawful").  Plaintiffs' Section 1 and 2 claims therefore must be dismissed.[6]

### 3.  Plaintiffs Fail to Allege Exclusionary Conduct (Counts I, II, and IV)

To state a Section 2 claim, a plaintiff must plead willful acquisition or maintenance of monopoly power in a relevant market.  *FTC v. Qualcomm Inc.*, 969 F.3d 974, 990 (9th Cir. 2020).  This requires the plaintiff to allege the willful maintenance of monopoly power "through exclusionary conduct,"

---

[6]  To the extent Plaintiffs maintain that some or all of the relevant markets reach beyond the United States, *see supra* § IV.B.1, they also fail to allege any antitrust injury in those markets, *see* Compl. ¶ 172 ("The antitrust injuries alleged herein . . . have occurred in the U.S. market . . . .").

Gibson, Dunn &
Crutcher LLP

*MetroNet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124, 1130 (9th Cir. 2004), "as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident," *Verizon Commc'ns Inc. v. Law Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004).

Plaintiffs allege that Apple engaged in exclusionary conduct by rejecting their apps for distribution on the App Store. *See, e.g.*, Compl. ¶¶ 16, 74, 112. But Apple's alleged conduct is entirely permissible under well-settled precedent and does not support Section 2 claims under any theory—attempt, monopoly, or monopsony. As the Supreme Court has stated, absent a duty to deal with competitors, a defendant "has no obligation to deal under terms and conditions favorable to its competitors." *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 450–51 (2009). And because intellectual property carries "the legal right to refuse to license . . . , the existence of a predicate condition to a license agreement cannot state an antitrust violation." *Townshend v. Rockwell Int'l Corp.*, No. 99 CV 400, 2000 WL 433505, at \*8 (N.D. Cal. Mar. 28, 2000). Even assuming that Apple and Plaintiffs compete (despite a lack of plausible allegations to that effect), Apple's alleged conduct, which amounts to enforcement of its own business terms, does not give rise to antitrust liability. Apple is under no obligation to deal with Plaintiffs on Plaintiffs' favored terms.

A recent case illustrates the point. In *Blix Inc. v. Apple Inc.*, the plaintiff alleged that Apple's removal of the plaintiff's email app from the MacOS App Store for violating Apple's Guidelines was actionable under Section 2 because it "abus[ed] power over key distribution channels." 2020 WL 7027494, at \*1, 8 (D. Del. Nov. 30, 2020) (quotation marks omitted). The court dismissed these claims, concluding that the plaintiff's "abuse of distribution channels" theory would create a "new form of antitrust liability never before recognized by the Supreme Court." *Id.* at \*8 (quotation marks and alteration omitted); *cf. Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.*, 985 F. Supp. 2d 612, 623 (S.D.N.Y. 2013) (dismissing claims that Amazon engaged in anticompetitive conduct by not allowing plaintiffs "to sell e-books on Amazon's devices and apps").

Under the principles articulated in *Blix* and similar cases, the Court should reject Plaintiffs' theory that they somehow have a "right" to have their apps distributed on the App Store, and to do so on the terms they prefer, Compl. ¶ 94. The Court should likewise reject Plaintiffs' theory that it is exclusionary conduct for Apple to require developers to "sign the DPLA and pay Apple $99," *id.* ¶ 184,

to license Apple's IP, use its developer tools, or access Apple's customer base, as Apple has no obligation to do otherwise. *See Pac. Bell Tel. Co.*, 555 U.S. at 450. Accordingly, all Section 2 claims should be dismissed for failure to plead exclusionary conduct.

### 4. Plaintiffs Fail to Allege Concerted Action or Unlawful Agreement (Count V)

Section 1 of the Sherman Act, 15 U.S.C. § 1, prohibits only *concerted action* that restrains trade. *Am. Needle, Inc. v. NFL*, 560 U.S. 183, 190 (2010). Thus, "the existence of an agreement" is an essential element of any Section 1 claim. *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1178 (9th Cir. 2016); *see also The Jeanery, Inc. v. James Jeans, Inc.*, 849 F.2d 1148, 1152 (9th Cir. 1988) ("Unilateral conduct by a single firm, even if it appears to restrain trade unreasonably, is not unlawful under [S]ection 1." (quotation marks omitted)). And it is well established that no agreement exists if "[t]here is no 'meeting of the minds'" but rather a unilateral "command[]" that others merely "comply with." *Costco Wholesale Corp. v. Maleng*, 522 F.3d 874, 898 (9th Cir. 2008).

For this reason, courts routinely reject Section 1 claims in which the defendant merely promulgated policies or contractual terms to which potential counterparties were required to adhere. *See The Jeanery*, 849 F.2d at 1160 ("This termination was pursuant to James Jeans' announced policy as reiterated in its conversations with its dealers" and therefore "was unilateral, independent action taken by James Jeans . . ., [a]nd it did not violate section 1"); *Sambreel Holdings LLC v. Facebook, Inc.*, 906 F. Supp. 2d 1070, 1076–77 (S.D. Cal. 2012) (concluding that Facebook's mandatory agreements for app developers were "unilateral action"); *Relevent Sports, LLC v. U.S. Soccer Fed'n, Inc.*, 2020 WL 4194962, at *6–7 (S.D.N.Y. July 20, 2020) (concluding that U.S. Soccer's adherence to FIFA policies was "unilateral compliance with FIFA's directive"); *Baar v. Jaguar Land Rover N. Am., LLC*, 295 F. Supp. 3d 460, 465 (D.N.J. 2018) (a "unilaterally implemented [] Policy" imposed by Jaguar Land Rover on "dealers" was not actionable under Section 1).

Plaintiffs here challenge only unilateral conduct: Apple's rejection of their apps. Compl. ¶¶ 16, 74, 112. Apple's Guidelines and other App Store policies are the terms on which Apple chooses to do business with developers, as the Complaint concedes. *See, e.g.*, *id.* ¶¶ 108, 110, 165. Thus, Apple's alleged rejection of Plaintiffs' apps pursuant to its Guidelines is "unilateral, independent action" not to deal with a supposed competitor. *The Jeanery*, 849 F.2d at 1160; *see also Dennis v. Husqvarna Forest*

& *Garden Co.*, 1994 WL 759187, at \*3 (D.N.H. Dec. 27, 1994) (such "independent action" is not actionable because it is the product of a firm's "right to deal, or refuse to deal, with whomever it likes, as long as it does so independently").  Such unilateral conduct is not prohibited by Section 1.

### 5.    Plaintiffs Fail to Identify Two Distinct, Tied Products (Count VI)

Plaintiffs have alleged nearly verbatim the tying claims from a second lawsuit pending in this district, *Epic Games v. Apple.  Compare* Compl. ¶¶ 257–67, *with* Ex. E ¶¶ 233–45.  But in borrowing those claims, which were tried before Judge Gonzales Rogers in May, Plaintiffs failed to allege facts necessary to state a claim.

Tying involves the linking of two separate products from two separate markets; its essential characteristic "lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product" that the buyer did not want or would have preferred to purchase elsewhere. *Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 12, 21 (1984); *see also Aerotec Int'l, Inc.*, 836 F.3d at 1178 ("A tie only exists where the defendant improperly imposes conditions that explicitly or practically require buyers to take the second product if they want the first one." (quotation marks omitted)).  To state a tying claim, a plaintiff must allege that: (1) the tying and tied products are actually two distinct products; (2) that the defendant "possesses enough economic power in the tying product market to coerce its customers into purchasing the tied product"; and (3) "that the tying arrangement affects a not insubstantial volume of commerce in the tied product market." *Aerotec Int'l, Inc.*, 836 F.3d at 1178.

As noted above, Plaintiffs lack standing to bring this claim (copied from the *Epic Games* complaint) because the Complaint does not allege that Plaintiffs were required to use IAP.  *See supra* § IV.A.  But the claim also should be dismissed because Plaintiffs allege no facts showing that the two purportedly tied products—"Apple's App Store" and "Apple's In-App Purchase"—are distinct. Compl. ¶ 262; *see also Rick-Mik Enters.*, 532 F.3d at 974 (affirming dismissal of tying claim where allegedly tied market was not "separate and distinct" from the tying product).  Nor have Plaintiffs even alleged the "most fundamental requirement" of a tying claim: "the existence of a tie." *Aerotec Int'l, Inc.*, 836 F.3d at 1178.  To do so, they would have to show that the "sale of the desired ('tying') product [was] conditioned on purchase of another ('tied') product," *id.*, and that they were "'coerced' into

buying the tied product[],” *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 900 (9th Cir. 2008). Because Plaintiffs allege that they intended to distribute a free app, and allege no facts about any in-app purchases they intended to offer, they never would have even used IAP, let alone have been coerced into buying it.  Compl. ¶¶ 8, 31, 69, 163.  Indeed, Plaintiffs’ repeated allegation that Apple allows free apps to be distributed on the App Store all but concedes that there is no requirement that developers use IAP to distribute apps through the App Store.  *See id*.  As Plaintiffs acknowledge, there are even many ways to monetize apps without IAP, such as through advertising.  *See, e.g.*, *id.* ¶¶ 30, 32, 157.

### 6.    Plaintiffs Fail to Allege Inability to Access an Essential Facility (Count III)

An essential facilities claim is a theory of Section 2 monopolization that similarly challenges a refusal to deal.  *See Aerotec Int’l, Inc.*, 836 F.3d at 1184.  The essential facilities doctrine has never been recognized by the Supreme Court, and its viability remains an open question.  *See Trinko*, 540 U.S. at 411.  To the extent the doctrine *is* viable, an “indispensable requirement” is “the unavailability of access” to the facility, for, “where access exists, the doctrine serves no purpose.”  *Id.*  In other words, the doctrine is about facility access; not access “in a way that is conducive to [a competitor’s] existing business model.”  *Aerotec Int’l, Inc.*, 836 F.3d at 1185.

Plaintiffs allege that Apple monopolizes the so-called market for “smartphone enhanced commerce and information flow . . . transacted via the national internet backbone” through its alleged “unlawful denial” of Plaintiff to “an essential facility—access to iOS userbase.”  Compl. ¶¶ 219–20. This claim fails at the outset because Plaintiffs do not allege that access to the App Store is entirely unavailable to them.  *See Trinko*, 540 U.S. at 411.  Indeed, to the extent the Complaint’s allegations that CALID was “subject to ranking suppression,” Compl. ¶ 42, are intended to suggest that the app was distributed on the App Store, then at least one Plaintiff had (or has) access to the App Store.

Nor do Plaintiffs allege, as they must, that they compete in their alleged market by offering a competing operating system or other competing product in a vertically related market.  *See Ferguson v. Greater Pocatello Chamber of Commerce, Inc.*, 848 F.2d 976, 983 (9th Cir. 1988) (only competitors of the defendant may assert essential facility claims); *Pistacchio*, 2021 WL 949422, at *3 (rejecting similar essential facilities claim where plaintiff did not compete with Apple).  To the contrary, the Complaint alleges only that Plaintiffs are developers—i.e., customers on one side of the App Store

Gibson, Dunn &
Crutcher LLP

platform—and that Apple denied Plaintiffs' apps because they failed to meet Apple's policies and requirements.  Compl. ¶¶ 18, 42, 75.

What is more, Plaintiffs do not adequately allege that the App Store is an essential facility.  For one, a facility is essential only if the downstream market "is otherwise unavailable."  *Aerotec Int'l, Inc.*, 836 F.3d at 1185.  But as Plaintiffs concede, the App Store is not the only way to reach the iOS user base as app users can also be reached through "web browser apps" (among many other channels).  Compl. ¶ 104; *see also Blix, Inc.*, 2020 WL 7027494, at *7 (concluding that Mac App Store was not essential facility where plaintiff's product could be distributed on other platforms); *JamSports & Entm't, LLC v. Paradama Prods., Inc.*, 336 F. Supp. 2d 824, 839 (N.D. Ill. 2004) (concluding that facility is not essential so "long as there is an alternative (albeit inferior)" facility that plaintiff could access).  Moreover, iOS *cannot* be an essential facility because it is Apple's proprietary software protected by patents, trademarks, and copyrights.  As a leading treatise explains, "an intellectual property owner has the right unilaterally to decide not to use or license its intellectual property."  Herbert Hovenkamp, et al., *IP and Antitrust: An Analysis of Antitrust Principles Applied to Intellectual Property* § 13.03 [C][2] (3rd ed. 2020 supp.).  Without that right, a firm "might be deterred from investing, innovating, or expanding (or even entering a market in the first place) with the knowledge anything it creates it could be forced to share."  *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1073 (10th Cir. 2013) (Gorsuch, J.).  Accordingly, Plaintiffs cannot "just demand the right to piggyback on its larger rival" in court, rather than "investing [or] innovating" itself.  *Id.*  It is Apple's prerogative to decide whether and to what extent to make its operating system available to others, and its decision to restrict access (or to set terms of access) is not a basis for antitrust liability.[7]

## C.    Plaintiffs' Contract Claims Must Be Dismissed

### 1.    Plaintiffs Fail to Plead Breach of Any Contract (Count VII)

To state a breach of contract claim under California law, *see supra* n.2, a plaintiff must plead: (1) a contract; (2) plaintiff's performance or excuse for nonperformance; (3) breach; and (4) damages.  *Hamilton v. Greenwich Invs. XXVI, LLC*, 126 Cal. Rptr. 3d 174, 183 (Cal. Ct. App. 2011).  This

---

[7]  This claim also fails because the only relevant market pleaded as to this claim is not a proper relevant market.  *See supra* § IV.B.1; *cf. hiQ Labs, Inc.*, 485 F. Supp. 3d at 1151.

Gibson, Dunn &
Crutcher LLP

1    obligates the plaintiff to "identify the *specific provision* of the contract allegedly breached." *Donohue*

2    *v. Apple, Inc.*, 871 F. Supp. 2d 913, 930 (N.D. Cal. 2012) (emphasis added) (citing *Progressive W. Ins.*

3    *Co. v. Superior Court*, 37 Cal. Rptr. 3d 434, 449 (Cal. Ct. App. 2005)).

4          Plaintiffs fail to state any specific breach here.  They allege that "Apple's Developer Agreement

5    as amended in March 2020 promised that entities with 'deeply rooted medical credentials' were

6    permitted to publish COVID apps on the App Store."  Compl. ¶ 279.  They then merely assert that

7    Apple breached that promise when it "refused to allow an entity with deep-rooted medical expertise to

8    publish on the App Store."  *Id.* ¶ 288.   But nothing in the Developer Agreement (or any other contract)

9    contained such a promise, much less *obligated* Apple to distribute any particular app through the App

10   Store; to the contrary, Apple merely specified in March 2020 that certain institutional and recognized

11   entities would be permitted to submit pandemic-related apps *for review* (not automatic approval).  *Id.*

12   ¶ 16; *see also Donohue*, 871 F. Supp. 2d at 931 (rejecting argument that a user guide contained

13   contractual promises because it "includes no 'promises' which plaintiff could have 'accepted'").[8]

14         Second, the Complaint pleads no facts showing how the Developer Agreement was allegedly

15   *amended* by Apple's policy announcement regarding COVID-19 apps.  The Developer Agreement has

16   a set process for amendment, Ex. A § 19, which Plaintiffs do not even reference, much less allege was

17   used, *see* Compl. ¶ 279.  *See Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011)

18   (dismissal appropriate when complaint offered no "specificity as to what contractual provisions

19   Facebook allegedly violated"); *Garibaldi v. Bank of Am. Corp.*, 2014 WL 172284, at *3 (N.D. Cal.

20   Jan. 15, 2014); *Roberts v. UBS AG*, 2013 WL 1499341, at *20 (E.D. Cal. Apr. 11, 2013).   The

21   Developer Agreement in force during the relevant period indicates on its face that it was last modified

22   in June 2015, belying any assertion that it was later modified in any way that was binding on Apple.

23   Ex. A at p. 7; *see Griffin v. Green Tree Servicing, LLC*, 2016 WL 6782764, at *5 (C.D. Cal. Apr. 11,

24   2016) (express contract terms barred plaintiff's claims alleging additional contractual promises).

25

26

27

28

---

[8]   The Complaint also fails to allege Plaintiffs' performance or excuse for nonperformance—another
      requirement of a breach of contract claim and thus an independent basis for dismissal.  *See*
      *Hamilton*, 126 Cal. Rptr. 3d at 183.

Gibson, Dunn &
Crutcher LLP

Nor can Plaintiffs state a claim by asking the Court to read extratextual terms into the DPLA (a separate contract from the Developer Agreement) limiting Apple's discretion to approve or disapprove apps for distribution on the App Store.  *See* Compl. ¶ 289.  To the contrary, the DPLA states expressly that approval decisions are in Apple's "*sole discretion*."  Ex. B §§ 3.2(g), 6.8 (emphasis added); *see Yount v. Acuff Rose-Opryland*, 103 F.3d 830, 836 (9th Cir. 1996) ("Contract interpretation is governed by the objective intent of the parties *as embodied in the words of the contract*." (emphasis added) (citing Cal. Civ. Code § 1636)).  And Plaintiffs explicitly agreed to this arrangement in exchange for access to Apple's propriety software, tools, and services.  *See* Ex. B § 1.1 (developers must "accept and agree to the terms" of the DPLA to "use the Apple Software and Services").  They cannot now complain that Apple has exercised that agreed-upon discretion, or ask this Court to second-guess Apple's business decisions.  Plaintiffs' breach of contract claim should be dismissed.

## 2.     Plaintiffs Fail to Plead Breach of the Covenant of Good Faith and Fair Dealing (Count VIII)

Plaintiffs' claim for breach of the covenant of good faith and fair dealing should also be dismissed.  First, it merely rehashes Plaintiffs' breach allegations.  *Compare* Compl. ¶¶ 288, 293, *with id.* ¶¶ 296, 299.  And where allegations "do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action . . . no additional claim is actually stated."  *Soundgarden v. UMG Recordings, Inc.*, 2020 WL 1815855, at *17 (C.D. Cal. Apr. 6, 2020); *Vigdor v. Super Lucky Casino, Inc.*, 2017 WL 2720218, at *4 (N.D. Cal. June 23, 2017).  So too here.

Second, the "implied covenant is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract."  *Donohue*, 871 F. Supp. 2d at 932 (quotation marks omitted).  Yet Plaintiffs do not allege that Apple frustrated any contractual term.  As noted above (§ IV.C.1), Apple never "promised" in the Developer Agreement (or anywhere else) that entities with "deeply rooted medical credentials" would be "permitted to publish COVID apps on the App Store," *see* Compl. ¶ 279.  The Complaint points to no other contractual term from which to imply such a duty.

Third, Plaintiffs cannot rely on an implied covenant untethered to any contract.  The Complaint

Gibson, Dunn &
Crutcher LLP

alleges that Apple "breached the covenant" when it "disregarded established medical hierarchies and blocked Dr. Roberts from using the internet to help people disseminate epidemiological data." Compl. ¶ 296.   These allegations are divorced from any contract term and fail to show any term that was frustrated; accordingly, the claim must be dismissed.   *See Soundgarden*, 2020 WL 1815855, at *17.

**D.     Plaintiffs' RICO Claim Must Be Dismissed (Count IX)**

Finally, Plaintiffs allege that "individuals within Apple, Apple itself, and/or its counsel" have "engaged in an open-ended pattern of predicate acts over a multi-year timespan" in violation of 18 U.S.C. § 1962(c).  Compl. ¶ 304.   RICO provides a private cause of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]."   18 U.S.C. § 1964(c).   To make out a civil RICO claim under § 1962(c), a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property."  *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (quotation marks omitted).   Because Plaintiffs have not alleged the factual predicates for such a claim with the requisite specificity, their claim should be dismissed.

**1.     Plaintiffs Have Failed to Plead the Claim with Particularity, As Required by Rule 9(b)**

As an initial matter, because Plaintiffs' RICO claim sounds in fraud, it is subject to Rule 9(b)'s requirement that the claim be pled with "particularity."   *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (en banc).   The purpose of Rule 9(b) is to identify "the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations."   *Gottreich v. S.F. Inv. Corp.*, 552 F.2d 866, 866 (9th Cir. 1977).   To satisfy Rule 9(b), "the pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false."   *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 668 (9th Cir. 2019) (quotation marks omitted).   In other words, a plaintiff "must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation."   *Odom*, 486 F.3d at 553 (quotation marks omitted).

Plaintiffs' threadbare RICO allegations fall far short of this demanding standard.   In their RICO count and elsewhere in the Complaint, Plaintiffs make vague, conclusory allusions to Apple's alleged

practice of "assigning junior App Review members to issue false, pretextual reasons for rejection to small developers." Compl. ¶ 305; *see also, e.g., id.* ¶¶ 63, 112, 150, 251, 291, 390. But they do not identify even a *single specific instance* where Apple allegedly issued a pretextual reason for rejection, to anyone, let alone to Plaintiffs themselves, much less do so with the requisite time, date, place, and identities of the people allegedly making and receiving the misrepresentation. As to CALID, the Complaint alleges that the app was rejected for failure to "use IAP," *id.* ¶ 117, not for any pretextual reason. And as to Coronavirus Reporter, the Complaint alleges that the app was rejected consistent with Apple's announced policy to allow COVID apps only from recognized institutions or entities with extensive medical credentials. *Id.* ¶¶ 16, 75. While Plaintiffs may dispute the wisdom of the alleged policy, they nowhere allege that rejection of their app pursuant to the policy was pretextual. Plaintiffs' allegations of pretext are transparently insufficient under Rule 9(b). *Cf. Metro Servs. Grp. v. Travelers Cas. & Sur. Co.*, 2021 WL 2633416, at *7 (N.D. Cal. June 25, 2021) (dismissing RICO claim where plaintiff "alleged only conclusory statements" that defendant "used the interstate mails and wires to further its pattern of racketeering . . . including by communicating with Plaintiff"); *Agena v. Cleaver-Brooks, Inc.*, 2019 WL 11248590, at *8 (D. Haw. Oct. 31, 2019) (dismissing RICO claim where plaintiffs failed to identify person who received alleged misrepresentations).

Aside from the insufficient allegations of pretext, the Complaint contains a couple other disconnected allegations that could conceivably be construed as attempting to allege fraud. *See, e.g.*, Compl. ¶¶ 290 ("[A]n element of fraud may exist to the extent Apple employed cronyism and surreptitiously favored its own partners and/or friends."); 306 ("Apple suppressed competitors in App Store rankings, hiding quality apps from the general public when it suited Apple's own interests. This represents an additional pattern of wire fraud predicate act."). But these allegations fare no better under Rule 9(b) because they are equally lacking in specificity as to time, place, and other details. It would be impossible for Apple to prepare an adequate answer to Plaintiffs' RICO allegations, and the RICO claim is thus "subject to dismissal based on these deficiencies alone." *Pac. Recovery Sols. v. Cigna Behavioral Health, Inc.*, 2021 WL 1176677, at *10 (N.D. Cal. Mar. 29, 2021).

### 2. Plaintiffs Have Failed to Allege that Apple Committed Any Predicate Acts

Next, Plaintiffs have not sufficiently alleged that Apple committed wire or mail fraud—the

purported predicate acts.  Compl. ¶ 305.[9]  "The mail and wire fraud statutes are identical except for the particular method used to disseminate the fraud, and contain three elements: (A) the formation of a scheme to defraud, (B) the use of the mails or wires in furtherance of that scheme, and (C) the specific intent to defraud."  *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014).  Additionally, as the Ninth Circuit recently clarified, to be guilty of mail or wire fraud, "a defendant must act with the intent not only to make false statements or utilize other forms of deception, but also to deprive a victim of money or property by means of those deceptions."  *United States v. Miller*, 953 F.3d 1095, 1101 (9th Cir. 2020).  Plaintiffs have not established any of these three elements.

Plaintiffs' most obvious failure is that none of their allegations "support a reasonable inference that [Apple] acted with specific intent to deceive or defraud."  *Pac. Recovery Sols.*, 2021 WL 1176677, at *11.  The only goal or intent that Plaintiffs (wrongly) attribute to Apple in the entire Complaint is to "benefit themselves, their partners and cronies."  Compl. ¶ 251; *see, e.g.*, ¶ 306 (alleging similarly that Apple acted to "suit[]" its "own interests").  To prevail on their claims of fraud, even if they *had* identified specific instances of fraud (which they did not), Plaintiffs would have to show that Apple acted wrongly not just to benefit itself, but also to "deprive a victim of money or property."  *Miller*, 953 F.3d at 1101; *see Kelly v. United States*, 140 S. Ct. 1565, 1573 n.2 (2020) ("[T]he victim's loss must be an objective of the [deceitful] scheme rather than a byproduct of it." (quoting *United States v. Walters*, 997 F.2d 1219, 1226 (7th Cir. 1993))).  Plaintiffs do not contend that Apple intended to deprive them (or anyone else) of money or property, and nothing in the Complaint supports such an inference.

For the same reason, Plaintiffs have not alleged a scheme to defraud, which is "any scheme to deprive another of money or property by means of false or fraudulent pretenses, representations, or promises."  *United States v. Brugnara*, 856 F.3d 1198, 1207 (9th Cir. 2017) (quotation marks omitted).  Nothing in Plaintiffs' allegations suggests that Apple had a scheme to deprive anyone of any money or property.  The only "schemes" mentioned in the RICO count, that Apple allegedly rejected two apps for pretextual reasons or suppressed competitors in rankings, are not supported by any facts alleging

---

[9]  Plaintiffs vaguely allege that Apple also engaged in "witness retaliation," Compl. ¶ 307, but provide no details whatsoever; they do not even cite the statutory provision Apple allegedly violated.  This allegation thus lacks sufficient content for facial plausibility.  *See Iqbal*, 556 U.S. at 678.

Gibson, Dunn &
Crutcher LLP

that Apple did so *to deprive* Plaintiffs of money or property.  Likewise, because Plaintiffs have failed to allege a scheme, they necessarily have failed to allege the use of the wires or mail to further that scheme, as required for the second element of a fraud claim.

For these reasons, Plaintiffs have failed to establish that Apple committed any predicate acts. Moreover, to allege a "pattern of racketeering activity," 18 U.S.C. § 1961(5), Plaintiffs had to identify at least two predicate acts within a ten-year period.  Because Plaintiffs did not even attempt to describe a single predicate act with any specificity, they have *a priori* failed to allege a pattern of cognizable offenses.  Accordingly, Plaintiffs' RICO claim should be dismissed.

### 3.   Plaintiffs Have Failed to Allege an Enterprise Distinct from the RICO Defendant

To state a claim under § 1962(c), a plaintiff must allege an enterprise that is *separate* from the "person employed by or associated with" that enterprise who engaged in the unlawful RICO conduct. 18 U.S.C. § 1962(c); *see Schreiber Distr. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1396 (9th Cir. 1986) ("The courts have consistently held that in an action under section 1962(c) the 'person' must be a separate and distinct entity from the 'enterprise.'").  In other words, "[i]f [a corporation] is the enterprise, it cannot also be the RICO defendant."  *Rae v. Union Bank*, 725 F.2d 478, 481 (9th Cir. 1984); *see Wagh v. Metris Direct, Inc.*, 2002 WL 257846, at *2 (N.D. Cal. 2002) ("[F]or purposes of a single action, a single corporate defendant cannot be both the RICO person and the RICO enterprise under section 1962(c)." (quoting *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1533–34 (9th Cir. 1992))).

The only Apple-associated defendant that Plaintiffs have named in this case is Apple itself. While Plaintiffs incorrectly contend in their RICO count that the RICO "[d]efendants [in this case] include individuals within Apple, Apple itself, and/or its counsel," Compl. ¶ 303, the Complaint does not name any other alleged RICO participants.  Plaintiffs thus contend that Apple (and its agents) can be both the RICO defendant and the enterprise.  This is expressly forbidden by the caselaw, *see Rae*, 725 F.2d at 481, and the claim must be dismissed, *see Lopez v. Dean Witter Reynolds, Inc.*, 591 F. Supp. 581, 585–86 (N.D. Cal. 1984) (dismissing RICO claim where "deficient" complaint named only a corporation and did not "also identify a separate entity that is the 'enterprise'").

Gibson, Dunn &
Crutcher LLP

### 4.     Apple's Use of the Federal Court System to Defend Itself Is Not a Basis for a RICO Claim

Plaintiffs also accuse "Apple and their counsel" of filing "false pleadings in court," Compl. ¶ 308, apparently as a last-ditch effort to prop up their baseless RICO claim.  Each of Apple's filings, in this District and in New Hampshire, has been made in good faith, and Apple has diligently complied with all applicable rules, guidelines, and standards of professional conduct.  For Plaintiffs to suggest otherwise, without any support, is itself a violation of this Court's conduct standards.  *See* N. Dist. of Cal. Guidelines for Prof'l Conduct ¶ 7, https://www.cand.uscourts.gov/forms/guidelines-for-professional-conduct/ (last visited August 11, 2021).  In any event, a corporation defending itself against a lawsuit does not constitute "racketeering activity" under 18 U.S.C. § 1961(1) and cannot form the basis for a RICO claim.

Additionally, Apple's and its counsel's complained-of use of the courts is explicitly immune from RICO challenge.  "Under the *Noerr-Pennington* doctrine, those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006); *see id.* at 929–32 (applying doctrine to claims brought under RICO).  A three-part test applies to determine whether a defendant's conduct is immunized under *Noerr-Pennington*: a court must "(1) identify whether the lawsuit imposes a burden on petitioning rights, (2) decide whether the alleged activities constitute protected petitioning activity, and (3) analyze whether the statutes at issue may be construed to preclude that burden on the protected petitioning activity."  *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 644 (9th Cir. 2009).

All three elements are met here.  As the Ninth Circuit has stated, a "successful RICO claim" based on litigation or prelitigation activity "would quite plainly burden" Apple's ability to freely engage in future litigation.  *Sosa*, 437 F.3d at 932.  The challenged activity here—filing papers in federal court—is protected petitioning activity.  *See id.* at 934 ("[I]n the litigation context, not only petitions sent directly to the court in the course of litigation, but also conduct incidental to the prosecution of the suit is protected.").  And RICO "does not authorize the burden" that Plaintiffs' "suit would place on [Apple's] right to petition the courts."  *Delacruz v. State Bar of Cal.*, 2020 WL 227237, at *9 (N.D. Cal. Jan. 15, 2020); *see Sosa*, 436 F.3d at 939–42.  Accordingly, Apple and its counsel are

Gibson, Dunn &
Crutcher LLP

1   immune from Plaintiffs' RICO challenge to their litigation activity.

2       To the extent Plaintiffs' allegations can be construed to suggest that Apple's counsel could itself

3   be named as a RICO defendant for defending Apple in litigation Plaintiff initiated in federal court, that

4   too is wrong.  Where counsel's role is "limited to providing legal services" to the alleged enterprise,

5   counsel has not "operate[ed] or manage[d]" the enterprise as required by the conduct element of a

6   RICO claim.  *Baumer v. Pachl*, 8 F.3d 1341, 1344–45 (9th Cir. 1993); *see Muskegan Hotels, LLC v.*

7   *Patel*, 986 F.3d 692, 699 (7th Cir. 2021) ("A complaint that does no more than allege that a law firm

8   performed legal work for an enterprise fails to state a violation of § 1962(c).").

9       Here, the only allegations that Plaintiffs make against Apple's counsel are that counsel "filed

10  false pleadings in court and relayed to media outlets" statements about Plaintiffs' legal filings.  Compl.

11  ¶ 308.  These allegations fail to satisfy the conduct element as a matter of law.  *See Walter v. Drayson*,

12  538 F.3d 1244, 1248 (9th Cir. 2008) (holding that allegations that an attorney "allegedly wrote emails,

13  gave advice, and took positions on behalf of her clients" cannot satisfy the conduct element); *Baumer*,

14  8 F.3d at 1342, 1344–45 (holding that allegations that an attorney sent letters to the government

15  "mischaracterizing the allegedly improper activities" of the enterprise and "knowingly filed a false

16  partnership agreement" were merely "legal services" that did not satisfy the conduct element).  Hence,

17  Apple's counsel is not and could not be a proper RICO defendant.

18  **E.    The Complaint Should Be Dismissed Without Leave to Amend**

19      This case should be dismissed with prejudice.  This is the *fourth* complaint Plaintiffs have filed

20  against Apple challenging the same alleged conduct.  *See supra* pp. 4–5.  For the last three complaints,

21  Plaintiffs have had the benefit of responding to Apple's motions to dismiss laying bare the multiple

22  defects in their claims.  In short, Plaintiffs are well aware of the defects in their complaint; they have

23  had ample opportunity to try to fix them; and they have taken their best shot. There is no reason to

24  engage in a futile exercise further.  *See Chappel v. Lab'y Corp. of Am.*, 232 F.3d 719, 726 (9th Cir.

25  2000) (district court properly denies "leave to amend when amendment would be futile").

26  **V. CONCLUSION**

27      For these reasons, all of Plaintiffs' claims fail as a matter of law.  Apple respectfully requests

28  that the Court dismiss the Complaint with prejudice.

1

2    Dated:     August 23, 2021                Respectfully submitted,

3                                            By:     */s/ Rachel S. Brass*

4                                                      Rachel S. Brass

5                                      GIBSON, DUNN & CRUTCHER LLP

6                                      MARK A. PERRY (SBN 212532)
       mperry@gibsondunn.com

7                                      RACHEL S. BRASS (SBN 219301)
       rbrass@gibsondunn.com

8                                      JULIAN W. KLEINBRODT (SBN 302085)
       jkleinbrodt@gibsondunn.com

9                                      555 Mission Street, Suite 3000
                                     San Francisco, CA 94105-0921

10                                   Telephone: (415) 393-8200
                                  Facsimile:  (415) 374-8429

11                                      *Attorneys for Apple Inc.*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

DEFENDANT APPLE INC.'S MOTION TO DISMISS
CASE NO. 3:21-CV-05567-EMC