GIBSON, DUNN & CRUTCHER LLP
MARK A. PERRY (SBN 212532)
  mperry@gibsondunn.com
RACHEL S. BRASS (SBN 219301)
  rbrass@gibsondunn.com
JULIAN W. KLEINBRODT (SBN 302085)
  jkleinbrodt@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: (415) 393-8200
Facsimile:  (415) 374-8429

*Attorneys for Apple Inc.*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| CORONAVIRUS REPORTER, CALID INC., PRIMARY PRODUCTIONS LLC, DR. JEFFREY D. ISAACS, on behalf of themselves and all others similarly situated | Case No. 3:21-CV-05567-EMC |
| Plaintiffs, | **DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE AND REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT** |
| v. | |
| APPLE INC., FEDERAL TRADE COMMISSION, | Date:        November 4, 2021<br>Time:        1:30 p.m. PT<br>Place:       Courtroom 5, 17th Floor |
| Defendants. | The Honorable Edward M. Chen |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ..................................................................................................................... 2

    A.    Plaintiffs Cannot Strike Apple's Motion or Otherwise Avoid Apple's Arguments ................................................................................................................ 2

    B.    Plaintiffs Do Not State Any Antitrust Claims (Counts I–VII) ..................................... 3

        1.    Plaintiffs Cannot Redefine Their Incoherent Markets (Counts I–VII) ............. 3

        2.    Plaintiffs Identify No Antitrust Injury (Counts I–VII) ..................................... 7

        3.    Plaintiffs Fail to Allege Exclusionary Conduct (Counts I, II, IV, VI) .............. 9

        4.    Plaintiffs Do Not Meaningfully Defend Their Section 1 Claim (Count III) ................................................................................................................... 15

        5.    Plaintiffs' Defense of Their Tying Claim Is Self-Defeating (Count V).......... 16

        6.    Plaintiffs Cannot State an "Auxiliary Claim" Via Judicial Estoppel (Count VII)................................................................................................................ 18

    C.    Plaintiffs Do Not State Viable Contract Claims (Counts VIII & IX) ........................ 19

    D.    Plaintiffs Do Not State Viable RICO or Fraud Claims (Counts X & XI)................... 20

    E.    Plaintiffs Should Be Denied Leave to Amend ........................................................... 22

    F.    Plaintiffs' Class Allegations Should Be Stricken ...................................................... 24

III. CONCLUSION ............................................................................................................... 25

ii

DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE AND
REPLY ISO MOTION TO DISMISS AMENDED COMPLAINT
CASE NO. 3:21-CV-05567-EMC

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*AAT Bioquest, Inc. v. Tex. Fluorescence Lab'ys, Inc.*,
2015 WL 1738402 (N.D. Cal. Apr. 13, 2015) ...................................................................3, 8

*Abraham v. Intermountain Health Care Inc.*,
461 F.3d 1249 (10th Cir. 2006)............................................................................17, 18

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
836 F.3d 1171 (9th Cir. 2016)....................................................................................10

*Agric. Water v. Occidental Oil & Gas Corp.*,
235 F. Supp. 3d 1132 (E.D. Cal. 2017)........................................................................23

*Alan Darush MD APC v. Revision LP*,
2013 WL 1749539 (C.D. Cal. Apr. 10, 2013) ...............................................................16

*Alaska Airlines, Inc. v. United Airlines, Inc.*,
948 F.2d 536 (9th Cir. 1991)......................................................................................12

*Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*,
592 F.3d 991 (9th Cir. 2010).................................................................................11, 12

*Ameritech v. Voices for Choices, Inc.*,
2003 WL 21078026 (N.D. Ill. May 12, 2003) ...............................................................23

*Apple, Inc. v. Psystar Corp.*,
586 F. Supp. 2d 1190 (N.D. Cal. 2008) .........................................................................5

*Applera Corp. v. MJ Research Inc.*,
349 F. Supp. 2d 338 (D. Conn. 2004) ..........................................................................13

*Arizona v. Tohono O'odham Nation*,
818 F.3d 549 (9th Cir. 2016)......................................................................................18

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
24 Cal. 4th 83 (Cal. 2000)..........................................................................................20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................................................................... *passim*

*Assoc. Gen. Contractors v. Cal. State Council of Carpenters*,
459 U.S. 519 (1983)....................................................................................................6

**TABLE OF AUTHORITIES** (*continued*)

Page(s)

*Baumer v. Pachl*,
8 F.3d 1341 (9th Cir. 1993)................................................................21

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..........................................................................1

*Blix v. Apple Inc.*,
2020 WL 7027494 (D. Del. Nov. 30, 2020) ..................................13

*Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.*,
985 F. Supp. 2d 612 (S.D.N.Y. 2013)...........................................11

*Brantley v. NBC Universal, Inc.*,
675 F.3d 1192 (9th Cir. 2012)........................................................18

*Brown Shoe Co. v. United States*,
370 U.S. 294 (1962)...........................................................................6

*Cal. Comp. Prods., Inc. v. Int'l Bus. Mach. Corp.*,
613 F.2d 727 (9th Cir. 1979)..........................................................11

*Chang v. Noh*,
2017 WL 7411155 (C.D. Cal. Nov. 27, 2017) ...............................21

*Cho v. Osaka Zen Spa*,
2021 WL 1736813 (S.D.N.Y. May 3, 2021)...................................17

*Chodos v. W. Publ'g Co.*,
292 F.3d 992 (9th Cir. 2002)..........................................................23

*Choyce v. SF Bay Area Indep. Media Ctr.*,
2013 WL 6234628 (N.D. Cal. Dec. 2, 2013) ...................................2

*City Lincoln-Mercury Co. v. Lindsey*,
52 Cal. 2d 267 (Cal. 1959).............................................................19

*City of N.Y. v. Grp. Health Inc.*,
649 F.3d 151 (2d Cir. 2011)..............................................................6

*City of Oakland v. Oakland Raiders*,
445 F. Supp. 3d 587 (N.D. Cal. 2020) ............................................7

*City of Vernon v. S. Cal. Edison Co.*,
955 F.2d 1361 (9th Cir. 1992).........................................................14

DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE AND
REPLY ISO MOTION TO DISMISS AMENDED COMPLAINT
CASE NO. 3:21-CV-05567-EMC

**TABLE OF AUTHORITIES** (*continued*)

Page(s)

*Collins v. Associated Pathologists, Ltd.*,
844 F.2d 473 (7th Cir. 1988)...................................................................................17

*Copperweld Corp. v. Indep. Tube Corp.*,
467 U.S. 752 (1984)..............................................................................................15

*Cotter v. Newark Hous. Auth.*,
422 F. App'x. 95 (3d Cir. 2011) ...........................................................................19

*Cyntegra Inc. v. Idexx Labs., Inc.*,
520 F. Supp. 2d 1199 (C.D. Cal. 2007) ................................................................18

*Depot, Inc. v. Caring for Montanans, Inc.*,
915 F.3d 643 (9th Cir. 2019)................................................................................21

*Dewey v. Volkswagen Aktiengesellschaft*,
681 F.3d 170 (3d Cir. 2012)..................................................................................25

*E & L Consulting, Ltd. v. Doman Indus. Ltd.*,
472 F.3d 23 (2d Cir. 2006) .....................................................................................9

*Eastman v. Quest Diagnostics Inc.*,
108 F. Supp. 3d 827 (N.D. Cal. 2015) ....................................................................9

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014)..................................................................................4

*Epic Games, Inc. v. Apple Inc.*,
2021 WL 4128925 (N.D. Cal. Sept. 10, 2021) ............................................. *passim*

*Feitelson v. Google Inc.*,
80 F. Supp. 3d 1019 (N.D. Cal. 2015) .....................................................................9

*Ferguson v. Greater Pocatello Chamber of Com., Inc.*,
848 F.2d 976 (9th Cir. 1988)................................................................................12

*Fitzgerald v. Chrysler Corp.*,
116 F.3d 225 (7th Cir. 1997)................................................................................22

*FTC v. Facebook, Inc.*,
2021 WL 2643627 (D.D.C. June 28, 2021) ...........................................................10

*FTC v. Qualcomm Inc.*,
969 F.3d 974 (9th Cir. 2020)...............................................................1, 7, 9, 10

DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE AND
REPLY ISO MOTION TO DISMISS AMENDED COMPLAINT
CASE NO. 3:21-CV-05567-EMC

1

2

**TABLE OF AUTHORITIES** (*continued*)

Page(s)

3

*FTC v. Staples, Inc.*,

4   190 F. Supp. 3d 100 (D.D.C. 2016) ...................................................................................5

5   *Gatton v. T-Mobile USA, Inc.*,
152 Cal. App. 4th 571 (Cal. Ct. App. 2007) ....................................................................19

6   *In re Gen. Motors LLC Ignition Switch Litig.*,

7   2016 WL 3920353 (S.D.N.Y. July 15, 2016) ..................................................................21

8   *Golden Gate Pharm. Servs., Inc. v. Pfizer, Inc.*,

9   433 F. App'x 598 (9th Cir. 2011) .....................................................................................6

10   *Gonzalez v. Planned Parenthood of L.A.*,
759 F.3d 1112 (9th Cir. 2014) ........................................................................................19

11   *Gorlick Distrib. Ctrs., LLC v. Car Sound Exhaust Sys., Inc.*,

12   723 F.3d 1019 (9th Cir. 2013)........................................................................................7, 8

13   *Green v. State Bd. of Med. Examiners*,
2020 WL 1229744 (M.D. Ala. Mar. 12, 2020) ...............................................................22

14   *Greenlight Sys., LLC v. Breckenfelder*,

15   2021 WL 2651377 (N.D. Cal. June 28, 2021) ..................................................................3

16   *Greenstein v. Peters*,

17   2009 WL 722067 (C.D. Cal. Mar. 16, 2009) ..................................................................21

18   *Hanson v. Shell Oil Co.*,
541 F.2d 1352 (9th Cir. 1976) ........................................................................................16

19

20   *Hicks v. PGA Tour, Inc.*,
897 F.3d 1109 (9th Cir. 2018) ......................................................................................6, 7

21   *hiQ Labs, Inc. v. Linkedin Corp.*,

22   485 F. Supp. 3d 1137 (N.D. Cal. Sept. 9, 2020) ..............................................................6

23   *Hocking v. City of Roseville*,
2007 WL 3240300 (E.D. Cal. Nov. 2, 2007) ..................................................................22

24   *Image Tech Serv., Inc. v. Eastman Kodak Co.*,

25   903 F.2d 612 (9th Cir. 1990)...........................................................................................15

26   *Image Tech. Servs., Inc. v. Eastman Kodak Co.*,

27   125 F.3d 1195 (9th Cir. 1997)....................................................................................11, 15

28

vi

**TABLE OF AUTHORITIES** (*continued*)

Page(s)

*In re Inclusive Access Course Materials Antitrust Litig.*,
2021 WL 2418333 (S.D.N.Y. June 14, 2021)..................................................................22

*Intel Corp. v. Fortress Inv. Grp.*,
511 F. Supp. 3d 1006 (N.D. Cal. 2021) ...........................................................................6

*Interface Grp., Inc. v. Mass. Port Auth.*,
816 F.2d 9 (1st Cir. 1987) ...............................................................................................12

*Intergraph Corp. v. Intel Corp.*,
195 F.3d 1346 (Fed. Cir. 1999).......................................................................................12

*JamSports & Entm't, LLC v. Paradama Prods., Inc.*,
336 F. Supp. 2d 824 (N.D. Ill. 2004) ..............................................................................14

*Jefferson Par. Hosp. Dist. No. 2 v. Hyde*,
466 U.S. 2 (1984).............................................................................................................16

*John Doe 1 v. Abbott Labs.*,
571 F.3d 930 (9th Cir. 2009)...........................................................................................14

*Kaplan v. Burroughs Corp.*,
611 F.2d 286 (9th Cir. 1979).............................................................................................6

*Kendall v. Visa U.S.A., Inc.*,
518 F.3d 1042 (9th Cir. 2008)...........................................................................................1

*Kottle v. Nw. Kidney Ctrs.*,
146 F.3d 1056 (9th Cir. 1998).........................................................................................23

*Larios v. Lunardi*,
442 F. Supp. 3d 1299 (E.D. Cal. 2020) ............................................................................3

*Liberty Mut. Ins. Co. v. Vila Constr. Co.*,
2021 WL 949380 (N.D. Cal. Mar. 12, 2021) ...................................................................3

*LiveUniverse, Inc. v. MySpace, Inc.*,
304 F. App'x 554 (9th Cir. 2008) ....................................................................................11

*Living Designs, Inc. v. E.I. Dupont De Nemours & Co.*,
431 F.3d 353 (9th Cir. 2005)...........................................................................................21

*Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp.*,
192 F. Supp. 2d 519 (M.D. La. 2001) .............................................................................23

**TABLE OF AUTHORITIES** (*continued*)

Page(s)

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ...................................................................................................23

*Martin v. Wells Fargo Bank, N.A.*,
2020 WL 3128883 (N.D. Cal. June 12, 2020) .........................................................20

*Marziano v. Cty. of Marin*,
2010 WL 3895528 (N.D. Cal. Oct. 4, 2010) ......................................................14, 22

*Maxwell v. Kaylor*,
2020 WL 4732340 (N.D. Cal. Aug. 14, 2020) .........................................................20

*Mayor & City Council of Baltimore, Md. v. Citigroup, Inc.*,
709 F.3d 129 (2d Cir. 2013) .....................................................................................16

*McDonnell v. United States*,
136 S. Ct. 2355 (2016) ..............................................................................................24

*Medtronic Minimed Inc. v. Smiths Med. MD Inc.*,
371 F. Supp. 2d 578 (D. Del. 2005) ..........................................................................11

*MetroNet Servs. Corp. v. Qwest Corp.*,
383 F.3d 1124 (9th Cir. 2004) .....................................................................................9

*Monsanto Co. v. Spray-Rite Service Corp.*,
465 U.S. 752 (1984) ...................................................................................................16

*Mountain Cascade Inc v. City & Cty. of San Francisco*,
2013 WL 6069010 (N.D. Cal. Nov. 18, 2013) .........................................................19

*Muhammad v. Bethel-Muhammad*,
2012 WL 1854315 (S.D. Ala. May 21, 2012) .......................................................9, 18

*Multimedia Patent Tr. v. LG Elecs., Inc.*,
2013 WL 12073800 (S.D. Cal. Aug. 1, 2013) ..........................................................23

*Muskegan Hotels, LLC v. Patel*,
986 F.3d 692 (7th Cir. 2021) .....................................................................................21

*Nanavati v. Adecco USA, Inc.*,
99 F. Supp. 3d 1072 (N.D. Cal. 2015) ........................................................................3

*Narang v. Gerber Life Ins. Co.*,
2018 WL 6728004 (N.D. Cal. Dec. 21, 2018) ..........................................................14

## TABLE OF AUTHORITIES (*continued*)

Page(s)

*In re NFL's Sunday Ticket Antitrust Litig.*,
933 F.3d 1136 (9th Cir. 2019) .................................................................................8

*NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*,
305 F. Supp. 3d 1065 (N.D. Cal. 2018) ...................................................................9

*Novell, Inc. v. Microsoft Corp.*,
731 F.3d 1064 (10th Cir. 2013)...............................................................9, 10, 11, 14

*Oahu Gas Serv., Inc. v. Pac. Res., Inc.*,
838 F.2d 360 (9th Cir. 1988) .................................................................................11

*Ohio v. Am. Express Co.*,
138 S. Ct. 2274 (2018) ..................................................................................4, 5, 17

*Oltz v. St. Peter's Cmty. Hosp.*,
861 F.2d 1440 (9th Cir. 1988).................................................................................6

*Oracle Am., Inc. v. CedarCrestone, Inc.*,
938 F. Supp. 2d 895 (N.D. Cal. 2013) ....................................................................5

*Ortiz v. Freitas*,
2014 WL 4354382 (N.D. Cal. Sept. 2, 2014) ..........................................................2

*Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*,
555 U.S. 438 (2009) ..............................................................................................11

*Paladin Assocs., Inc. v. Montana Power Co.*,
328 F.3d 1145 (9th Cir. 2003)...............................................................................13

*Philadelphia Taxi Ass'n, Inc. v. Uber Techs., Inc.*,
886 F.3d 332 (3d Cir. 2018)....................................................................................7

*Pistacchio v. Apple Inc.*,
2021 WL 949422 (N.D. Cal. Mar. 11, 2021) ...........................................................6

*PSI Repair Servs., Inc. v. Honeywell, Inc.*,
104 F.3d 811 (6th Cir. 1997)...................................................................................5

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
124 F.3d 430 (3d Cir. 1997).................................................................................5, 6

*Rebel Oil Co. v. Atl. Richfield Co.*,
51 F.3d 1421 (9th Cir. 1995)...................................................................................8

1

**TABLE OF AUTHORITIES** (*continued*)

2

Page(s)

3

*Rothery Storage & Van Co. v. Atlas Van Lines, Inc.,*
792 F.2d 210 (D.C. Cir. 1986) .................................................................................................6

4

5

*Samaan v. Sauer,*
2008 WL 2489004 (E.D. Cal. June 17, 2008) .......................................................................25

6

*Sambreel Holdings LLC v. Facebook, Inc.,*
906 F. Supp. 2d 1070 (S.D. Cal. 2012) ...............................................................................15

7

*San Diego Puppy, Inc. v. City of San Diego,*
2014 WL 4546390 (S.D. Cal. Sept. 11, 2014) .....................................................................23

8

9

*SCM Corp. v. Xerox Corp.,*
645 F.2d 1195 (2d Cir. 1981) ..............................................................................................13

10

11

*Senne v. Kan. City Royals Baseball Corp.,*
315 F.R.D. 523 (N.D. Cal. 2016) .........................................................................................25

12

13

*Sidney-Vinstein v. A.H. Robins, Co.,*
697 F.2d 880 (9th Cir. 1983) ..................................................................................................2

14

*Silva v. Swift,*
333 F.R.D. 245 (N.D. Fla. 2019) ............................................................................................2

15

16

*Solidfx, LLC v. Jeppesen Sanderson, Inc.,*
935 F. Supp. 2d 1069 (D. Colo. 2013) .................................................................................13

17

18

*Sosa v. DIRECTV, Inc.,*
437 F.3d 923 (9th Cir. 2006)................................................................................................23

19

*Soundgarden v. UMG Recordings, Inc.,*
2020 WL 1815855 (C.D. Cal. Apr. 6, 2020) ........................................................................20

20

21

*Strategix, Ltd. v. Infocrossing W., Inc.,*
142 Cal. App. 4th 1068 (Cal. Ct. App. 2006) ......................................................................20

22

23

*Summit Health, Ltd. v. Pinhas,*
500 U.S. 322 (1991) ..........................................................................................................1, 15

24

*Tanaka v. Univ. of S. Cal.,*
252 F.3d 1059 (9th Cir. 2001)............................................................................................6, 7

25

26

*Tietsworth v. Sears,*
720 F. Supp. 2d 1123 (N.D. Cal. 2010) ..............................................................................3, 7

27

28

## TABLE OF AUTHORITIES (*continued*)

Page(s)

*U.S. Airways, Inc. v. Sabre Holdings Corp.*,
938 F.3d 43 (2d Cir. 2019)........................................................................................5

*Universal Analytics, Inc. v. MacNeal-Schwendler Corp.*,
914 F.2d 1256 (9th Cir. 1990)....................................................................................15

*Verizon Commc'ns Inc. v. Law Offs. of Curtis V. Trinko, LLP*,
540 U.S. 398 (2004)..............................................................................10, 12, 14

*Walter v. Drayson*,
2007 WL 641413 (D. Haw. Feb. 26, 2007) ................................................................21

*Wilson v. Gateway, Inc.*,
2010 WL 11520532 (C.D. Cal. Jan. 25, 2010) .............................................................20

**STATUTES**

15 U.S.C. § 1 ..........................................................................................................15

15 U.S.C. § 2 ..........................................................................................................9

18 U.S.C. § 201 ......................................................................................................24

**RULES**

Fed. R. Civ. P. 7 ....................................................................................................2

Fed. R. Civ. P. 8 ...........................................................................................1, 2, 24

Fed. R. Civ. P. 9 ....................................................................................................1

Fed. R. Civ. P. 12 .........................................................................................1, 2, 22

Fed. R. Civ. P. 15 .........................................................................................1, 2, 22

N.D. Cal. L.R. Civ. 10 .............................................................................................22

N.D. Cal. L.R. Civ. 7-1 ............................................................................................22

N.D. Cal. L.R. Civ. 7-3 ............................................................................................1

**TREATISES**

P. Areeda & H. Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* (5th ed.) ..............................................................................13, 16

5A Wright & Miller, Fed. Prac. & Proc. Civ. § 1326 (4th ed.)................................................18

xi

DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE AND
REPLY ISO MOTION TO DISMISS AMENDED COMPLAINT
CASE NO. 3:21-CV-05567-EMC

1

**TABLE OF AUTHORITIES** (*continued*)

2

Page(s)

3    5C Wright & Miller, Fed. Prac. & Proc. Civ. § 1380 (3d ed.)...................................................2

4    21B Wright & Miller, Fed. Prac. & Proc. Evid. § 5106.4 (2d ed.) ........................................3

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE AND
REPLY ISO MOTION TO DISMISS AMENDED COMPLAINT
CASE NO. 3:21-CV-05567-EMC

# I. INTRODUCTION

Civil litigation in federal court follows a path prescribed by the Federal and Local Rules. A lawsuit begins with a complaint, which the plaintiff may amend once as a matter of right. Fed. R. Civ. P. 8, 9, 15. A defendant may move to dismiss the operative complaint for failure to state a claim. Fed. R. Civ. P. 12. That motion is met by an opposition, to which the movant may reply. N.D. Cal. L.R. 7-3. Plaintiffs here attempted to chart a novel course: They moved to strike, objected, and opposed Apple's motion to dismiss the First Amended Complaint ("FAC") across two briefs, supported by a purported "addendum" to the complaint for which they have not sought leave but suggest should be "considered part of the FAC by way of judicial notice." Opp. 24 n.9. But whether Plaintiffs file one brief, three, or ten, nothing they have filed or will file can salvage their claims. It is hornbook law that Rule 12(f) authorizes courts to strike only pleadings or averments therein—not motions. And Plaintiffs' forty-odd pages of briefing only confirms that this case should be dismissed with prejudice.

Although Plaintiffs deride Apple's arguments as "frivolous," "dishonest," "sanction[able]," and "laughable," MTS ¶¶ 10, 18, 25, it is Plaintiffs who do not grapple with the legal elements of the claims they pursue. For example, it is Plaintiffs who argue that they need not allege concerted action under Section 1—the "essence of any violation." *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 330 (1991). And it is Plaintiffs who claim an "element" of their Section 2 burden, *FTC v. Qualcomm Inc.*, 969 F.3d 974, 994 (9th Cir. 2020), is not "elemental." MTS ¶ 17. Nor can Plaintiffs walk away from their own allegations by characterizing their import as "factual argument," Opp. 2, for Plaintiffs must "plead not just ultimate facts . . . but evidentiary facts" that would prove up their claims, *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008). Here, they have instead alleged facts that defeat them. In total, Plaintiffs harken back to a pleading regime that "earned its retirement." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). This case merits the same fate.

The FAC is the *seventh* complaint in this litigation. What began as a single-plaintiff, single-defendant, two-count case has mutated into a (nominally) four-plaintiff, two-defendant, twelve-count putative class action. Plaintiffs have had opportunity after opportunity to try to address the defects that Apple identified across five motions to dismiss. They have not done so because they cannot do so. History proves that an eighth complaint would be only longer and less coherent—and still without basis

in fact or law.  Plaintiffs' claims should be dismissed.  They should be dismissed now.  And they should be dismissed with prejudice.

## II. ARGUMENT

### A.    Plaintiffs Cannot Strike Apple's Motion or Otherwise Avoid Apple's Arguments

Plaintiffs advance three threshold arguments that evince a fundamental misunderstanding of federal civil procedure.  First, Plaintiffs move to strike Apple's motion under Federal Rule of Civil Procedure 12(f).  MTS ¶ 1.  But "Rule 12(f) motions only may be directed towards pleadings as defined by Rule 7(a); thus motions, affidavits, briefs, and other documents outside of the pleadings are not subject to Rule 12(f)."  5C Wright & Miller, Fed. Prac. & Proc. Civ. § 1380 (3d ed.).  Apple's motion is not a pleading that can be struck under Rule 12.  *Sidney-Vinstein v. A.H. Robins, Co.*, 697 F.2d 880, 885 (9th Cir. 1983); *see also*, *e.g.*, *Silva v. Swift*, 333 F.R.D. 245, 248 (N.D. Fla. 2019) (refusing to strike a motion to dismiss because "Rule 12(f) does not authorize such relief"); *Choyce v. SF Bay Area Indep. Media Ctr.*, 2013 WL 6234628, at *2 (N.D. Cal. Dec. 2, 2013) (same).  Plaintiffs' motion should be denied on this basis alone.

Next, Plaintiffs argue that Apple's motion "contains numerous conclusory allegations" and therefore "fails to meet the heightened pleading standards of *Twombly/Iqbal*, which equally apply to affirmative defenses."  MTS ¶ 1.  Of course, the only "allegations" in Apple's motion are those drawn from the FAC; Apple will not plead any affirmative defenses unless and until it answers the complaint.  *See* Fed. R. Civ. P. 8(c).  In any event, Rule 8's pleading standards are inapplicable to motions to dismiss.  *See* Fed. R. Civ. P. 7(b) (setting out the requirements of a motion).

Finally, Plaintiffs contend that Apple's motion "is effectively moot" because their proposed amendment "state[s] a claim for relief."  MTS ¶¶ 7–8.  It does not.  *See infra* pp. 23–24.  Nor have Plaintiffs even moved for leave to amend.  *See* Fed. R. Civ. P. 15.  But regardless, "the entire" motion does not "fail[]" even if Plaintiffs can state a new claim.  MTS ¶ 9.  Plaintiffs must defend "the legal and factual basis for each cause of action."  *Ortiz v. Freitas*, 2014 WL 4354382, at *1 (N.D. Cal. Sept. 2, 2014) (Chen, J.).  Their inability to do so cannot forestall a resolution of the claims they actually

allege.[*]

## B. Plaintiffs Do Not State Any Antitrust Claims (Counts I–VII)

On the merits, Plaintiffs' primary defense of their antitrust claims is to gesture at or block cite "the pleadings" and "*ad nauseum* exhibits"—and then declare victory. MTS ¶¶ 10, 14. But litigants cannot rely on "minimal citations to mostly undifferentiated masses of evidence," for "[i]t is not the court's task to pan through these exhibits in an effort to discover [their] argument." *AAT Bioquest, Inc. v. Tex. Fluorescence Lab'ys, Inc.*, 2015 WL 1738402, at *5 (N.D. Cal. Apr. 13, 2015). Where Plaintiffs do attempt to respond to Apple's arguments, their arguments run afoul of well-established antitrust law.

### 1. Plaintiffs Cannot Redefine Their Incoherent Markets (Counts I–VII)

It is Plaintiffs' burden to frame the case with a valid, alleged antitrust market. *See* MTD 8–9. Far from untangling the mess of markets alleged in the FAC, Plaintiffs' submissions compound the confusion. From the fifteen markets alleged in the FAC, *id.* at 7, Plaintiffs now purport to define six in their Motion to Strike, MTS ¶¶ 11–12, and seven in their Opposition, Opp. 6–7. That Plaintiffs cannot settle on a number from one week to the next disabuses any notion that the alleged markets are "well defined." *Id.* at 6.

Yet counting errors are only the first of many flaws. Plaintiffs now assert two alternative "fore-market[s]"—a concept *never* mentioned in the FAC. MTS ¶ 11; Opp. 7. A plaintiff cannot amend its complaint through motion practice. *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1145 (N.D. Cal. 2010). Yet even if Plaintiffs could do so, their attempts to wave away *dozens* of references to ostensible markets as mere "synonyms" and "semantics" sows only disarray. MTS. ¶ 13. Does the still-undefined

---

[*] Plaintiffs' request for judicial notice serves no purpose because "[t]he Court need not take judicial notice of prior filings in its own case." *Larios v. Lunardi*, 442 F. Supp. 3d 1299, 1304 (E.D. Cal. 2020); *accord Liberty Mut. Ins. Co. v. Vila Constr. Co.*, 2021 WL 949380, at *4 n.1 (N.D. Cal. Mar. 12, 2021); *Nanavati v. Adecco USA, Inc.*, 99 F. Supp. 3d 1072, 1075 (N.D. Cal. 2015). To the extent Plaintiffs seek notice of the truth of the assertions in their motion to strike—many of which Apple disputes—their request is improper, unsupported by any authority, and should be denied. 21B Wright & Miller, Fed. Prac. & Proc. Evid. § 5106.4 (2d ed.) ("[A] court cannot notice pleadings or testimony as true simply because these statements are filed with the court."); *see also*, *e.g.*, *Greenlight Sys., LLC v. Breckenfelder*, 2021 WL 2651377, at *4 (N.D. Cal. June 28, 2021) (Chen, J.) (taking judicial notice of "court documents, but not for the truth of the statements within them").

3

DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE AND
REPLY ISO MOTION TO DISMISS AMENDED COMPLAINT
CASE NO. 3:21-CV-05567-EMC

"market for smartphone enhanced commerce and information flow (*devices and apps*) transacted via the national internet backbone," for example, correspond to the new device foremarket or a downstream app market?  FAC ¶ 234 (emphasis added).  Which of the single-brand markets now asserted is "[t]he iOS market"?  *Id.* ¶ 124.  And how can Plaintiffs claim injury in a "market of COVID startups" that is not apparently one of the six (or seven) markets they now purport to allege?  *Id.* ¶ 81; *see also* MTS ¶¶ 10–12; Opp. 7.  The truisms Plaintiffs offer now—such as "[t]he product of the notary stamps market is the notary stamps," Opp. 7—supply no answers.

Making matters worse, Plaintiffs' submissions are rife with contradictions.  For example, they assert the "product of the onboarding software market is the software onboarding," Opp. 7, which the FAC alleges is "disabled" for iOS devices.  FAC ¶ 8 n.1; *see also Epic Games, Inc. v. Apple Inc.*, 2021 WL 4128925, at *29 (N.D. Cal. Sept. 10, 2021) (rejecting as "illogical" a market for a product that is not bought or sold).  They likewise tout in one breath the FAC's "five references to two-sided market-places" only to assert in the next that "free apps are not bound by such a tightly functioning two-sided transaction platform."  MTS ¶ 15.  And Plaintiffs now say the "product" in their foremarkets is "smartphones," Opp. 7, even though the FAC implies that it includes tablets.  *See* FAC ¶¶ 124, 163.  Apple has a right to know the case against it before litigating claims seeking $200 billion and an injunction expropriating control of the App Store.  *See Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014).  That is impossible here, and Plaintiffs identify no case in which similarly muddled and contradictory allegations have survived a pleadings challenge.  *See* MTD 7–8.

To the extent any theory of market definition is discernable, it lacks support in the law, economics, and reality.  The crux of Plaintiffs' case seems to be that "Apple holds a monopsony on the institutional (free) app markets" because it is a single-brand market.  MTS ¶¶ 12, 15.  This is a single-sided market in which Apple is "a buyer of free iPhone apps."  *Id.* ¶ 5.  But the FAC leaves no doubt— and Plaintiffs do not dispute—that "the iOS App market is two-sided."  FAC ¶ 12; *accord id.* ¶¶ 11, 17, 18, 123, 125; *Epic*, 2021 WL 4128925, at *83.  As such, "only one market should be defined" that "include[s] both sides of the platform."  *Ohio v.  Am. Express Co.*, 138 S. Ct. 2274, 2286–87 (2018).  And the relevant product must be some category of transactions between consumers and developers,

*id.*, not "smartphone apps" themselves, Opp. 7; *see also Epic*, 2021 WL 4128925, at *83 ("The Supreme Court has seemingly resolved the question: two-sided transaction platforms sell transactions."). Splitting apart a two-sided transaction platform into separate, one-sided markets is erroneous as a matter of law. *U.S. Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 57 (2d Cir. 2019); *see also Amex*, 138 S. Ct. at 2287 ("[C]ompetition cannot be accurately assessed by looking at only one side of the platform in isolation."). Apple explained all this in its motion, and Plaintiffs have no rebuttal. *See* MTD 9.

Even if Plaintiffs could define a two-sided transaction platform with a one-sided paradigm, there are two other pervasive pleading errors that foreclose Plaintiffs' claims. The first is that Plaintiffs have alleged none of the prerequisites for a single-brand market, much less the *five* iOS-only markets they outline. MTS ¶¶ 12–13; Opp. 6–7. Single-brand markets are "at a minimum, extremely rare." *Epic*, 2021 WL 4128925, at *87 (quotation marks omitted). Under Supreme Court and Ninth Circuit precedent, they are plausible only as aftermarkets when relevant restrictions were not "sufficiently disclosed to consumers" purchasing the primary product. *Id.* at *87–89; *see also PSI Repair Servs., Inc. v. Honeywell, Inc.*, 104 F.3d 811, 820 (6th Cir. 1997). That the FAC is devoid of such allegations is fatal. *See*, *e.g.*, *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 437–44 (3d Cir. 1997) (affirming dismissal of antitrust claims premised on inadequately alleged single-brand aftermarket); *Apple, Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1200–04 (N.D. Cal. 2008) (similar); *Oracle Am., Inc. v. CedarCrestone, Inc.*, 938 F. Supp. 2d 895, 904 (N.D. Cal. 2013) (similar).

Second, Plaintiffs offer no factual basis or other justification for lumping transactions for all iOS apps into their own market—a notion rejected in *Epic*, 2021 WL 4128925, at *85–88; *see also* MTD 9. Plaintiffs ask this Court to ignore *Epic* because it found a "digital game transactions market" that is different than what they seek to define here. Opp. 8 & n.4. But what they fail to explain is how their market can encompass all app transactions if digital game transactions are not substitutes for non-game app transactions. It cannot. *See FTC v. Staples, Inc.*, 190 F. Supp. 3d 100, 117, 123 (D.D.C. 2016) (relevant market may contain products that are "not substitutes for each other" only when those products are subject to "the same competitive conditions"). Nor is this asking the Court to decide a disputed issue of fact, as Plaintiffs suggest. *See* Opp. 8. Plaintiffs must plead "appropriate allegations

5

demonstrating" that their market includes products that are "appropriate economic substitutes" and excludes those that are not. *Pistacchio v. Apple Inc.*, 2021 WL 949422, at *2 (N.D. Cal. Mar. 11, 2021); *accord hiQ Labs, Inc. v. Linkedin Corp.*, 485 F. Supp. 3d 1137, 1148 (N.D. Cal. Sept. 9, 2020) (Chen, J.).  Where "judicial experience" teaches that the alleged market does not meet this standard, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), Plaintiffs' failure to provide *any* explanation of how economic principles support their market is fatal.  *See Intel Corp. v. Fortress Inv. Grp.*, 511 F. Supp. 3d 1006, 1022 (N.D. Cal. 2021) (Chen, J.) (dismissing claims premised on "overbroad" market definition).

Recognizing that they have failed to allege facts demonstrating substitution, Plaintiffs argue that a "lack of cross-elasticity is not fatal." Opp. 7.  That is wrong.  A product market "must encompass the product at issue as well as all economic substitutes," and economic substitutes are defined by "sufficient 'cross-elasticity of demand' with the relevant product." *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018); *accord Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1063 (9th Cir. 2001); *Oltz v. St. Peter's Cmty. Hosp.*, 861 F.2d 1440, 1446 (9th Cir. 1988).  Thus, "[a]uthorities far too numerous to cite or discuss in detail have established" that "[t]he principle most fundamental to product market definition is 'cross-elasticity of demand.'" *Kaplan v. Burroughs Corp.*, 611 F.2d 286, 291 (9th Cir. 1979).  "[W]here the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand," therefore, "the relevant market is legally insufficient." *City of N.Y. v. Grp. Health Inc.*, 649 F.3d 151, 155 (2d Cir. 2011); *see also*, *e.g.*, *Golden Gate Pharm. Servs., Inc. v. Pfizer, Inc.*, 433 F. App'x 598, 599 (9th Cir. 2011) (affirming dismissal of antitrust claims on this principle); *Queen City Pizza*, 124 F.3d at 436 (same).

Nothing in *Brown Shoe Co. v. United States*, 370 U.S. 294 (1962), suggests otherwise.  *See* Opp. 7–8.  The practical indicia identified there are "proxies for direct proof of substitutability." *Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*, 792 F.2d 210, 218 (D.C. Cir. 1986).  The ultimate inquiry is therefore unchanged: Do Plaintiffs allege "specific facts" that support the economic boundaries drawn by their alleged product market?  *hiQ Labs*, 485 F. Supp. 3d at 1148.  They do not.  Nor does *Brown Shoe* otherwise aid Plaintiffs' cause, as they have not alleged that any practical indicia support their alleged markets.  Because "[i]t is not . . . proper to assume that the [plaintiff] can prove facts that it has not alleged," *Assoc. Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S.

6

519, 526 (1983), *Brown Shoe* provides no basis to award the discovery Plaintiffs seek.  Opp. 7–8; *see also Epic*, 2021 WL 4128925, at *41–43 (finding all practical indicia support a market that does *not* include all app transactions).

A properly pleaded market may become "a question of fact for the jury," Opp. 1 & n.1, but that does not mean the failure to plead a plausible relevant market is anything but fatal as a matter of law.  *Hicks*, 897 F.3d at 1121–23; *Tanaka*, 252 F.3d at 1063.  Missing from Plaintiffs' defense of their market definitions is the identification of *any* well-pleaded allegations that support the boundaries they have defined.  Because Plaintiffs have failed to "rigorously address[]" market definition, their complaint "warrants dismissal."  *City of Oakland v. Oakland Raiders*, 445 F. Supp. 3d 587, 600 (N.D. Cal. 2020).

## 2. Plaintiffs Identify No Antitrust Injury (Counts I–VII)

Without disputing that "injury . . . in the market as a whole" is a threshold pleading require-ment, *Gorlick Distrib. Ctrs., LLC v. Car Sound Exhaust Sys., Inc.*, 723 F.3d 1019, 1024–25 (9th Cir. 2013), Plaintiffs disavow the "market for COVID startups," MTS ¶¶ 10–12 & Opp. 11—the only al-legedly "damage[d]" market, FAC ¶ 81; *see also FTC v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020) (courts cannot "assess[] alleged antitrust injuries . . . in the market where competition is [alleg-edly] being restrained" without "an accurate definition of the relevant market," which is indispensable to "measur[ing] [the defendant's] ability to lessen or destroy competition").  Plaintiffs try to pivot away from this problem by arguing that "COVID start-up firms are just participants" in the relevant "insti-tutional app market."  Opp. 11.  This is another improper attempt to move away from allegations they no longer fancy.  *Tietsworth*, 720 F. Supp. 2d at 1145.  In any event, this new theory begets a new problem: Supposed injury to one subset of "participants" in a market is not a marketwide injury to competition.  *See Philadelphia Taxi Ass'n, Inc. v. Uber Techs., Inc.*, 886 F.3d 332, 334–39 (3d Cir. 2018) (affirming dismissal of complaint because medallion-holding taxis driven out of business did not allege harm to the local taxicab market overall).

Moreover, Plaintiffs' argument underscores their refusal to grapple with the very nature of the App Store.  *See* MTD 6–7.  Their grievance stems from Apple's alleged enforcement of guidelines that preclude "COVID-19 startups" from publishing certain apps that established health organizations could distribute.  MTS ¶ 10; *see also* Opp. 11 (citing FAC ¶ 53).  That credentialed apps prevail over less

7

DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE AND
REPLY ISO MOTION TO DISMISS AMENDED COMPLAINT
CASE NO. 3:21-CV-05567-EMC

reputable ones is consistent with "normal circumstances of free competition." *In re NFL's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1150 (9th Cir. 2019). Indeed, ensuring that users receive public health information from developers with established indicia of reliability is the very curation that "enhance[s] consumer appeal" by ensuring "a safe and trusted user experience." *Epic*, 2021 WL 4128925, at *102. That is good for consumer welfare even if it is bad for Plaintiffs. *See Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1445 (9th Cir. 1995) ("[B]ecause the Sherman Act's concern is consumer welfare, antitrust injury occurs only when the claimed injury flows from acts harmful to consumers.").

For this reason, Plaintiffs cannot merely declare that every app rejection injures competition by decreasing output and constricting consumer choice. *See* MTS ¶ 10; Opp. at 11–12 (citing FAC ¶ 179). If that were the rule, the Sherman Act would inhibit competition by requiring all platforms to increase the number of available apps—no matter if they contained malware, were offensive, sought to scam users, or were inferior copycats that could confuse consumers. Consumers instead "should be able to choose between the type of ecosystems and antitrust law should not artificially eliminate them." *Epic*, 2021 WL 4128925, at *29. The App Store's curation—which differentiates it from other platforms— helps "maintain[] a healthy ecosystem that ultimately benefits" users and developers. *Id.* at *75. Because Plaintiffs offer no plausible theory that Apple's policies reduce the net quality of transactions in a relevant market, their allegations amount only to individual harm. *See Gorlick*, 723 F.3d at 1025.

Nor can Plaintiffs rescue their defective theory with conclusory arguments and allegations. To start, they reference a "House Subcommittee report" attached as Exhibit A to the FAC, Opp. 9, but no such document was filed or served—it is a corrupt file. In any event, Plaintiffs cannot gesture at an exhibit as purporting to "explain[] in great detail" the alleged "harm to competition," *id.* at 12, and refuse to elaborate. *See AAT Bioquest, Inc.*, 2015 WL 1738402, at *5. Plaintiffs do not even attempt to connect the dots between any finding by the House and their harms. Likewise, it is decidedly *not* "enough" just to assert "there was harm to Plaintiffs and competition marketwide" as Plaintiffs contend. Opp. 12. The allegations they cite—such as "deny[ing] the Coronavirus Reporter app. . . represented damage to an entire market," "Apple's refusal to sell notarization stamps or onboarding software . . . is intended to harm competition [sic] app developers," and "Apple's conduct and unlawful contractual restraints harm a market," FAC ¶¶ 81, 173, 200—are "threadbare recitals" of the type courts routinely

8

1   reject.  *Iqbal*, 556 U.S. at 663; *see also*, *e.g.*, *NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health*

2   *Plan, Inc.*, 305 F. Supp. 3d 1065, 1074–75 (N.D. Cal. 2018) (dismissing claims because allegations of

3   antitrust injury were conclusory); *Eastman v. Quest Diagnostics Inc.*, 108 F. Supp. 3d 827, 835 (N.D.

4   Cal. 2015) (same); *Feitelson v. Google Inc.*, 80 F. Supp. 3d 1019, 1029 (N.D. Cal. 2015) (same).  After

5   six rounds of amendment, this Court should do the same.

6            **3.       Plaintiffs Fail to Allege Exclusionary Conduct (Counts I, II, IV, VI)**

7            Beyond their threshold failures, Plaintiffs fail to identify any viable theory of liability under

8   Section 2.  15 U.S.C. § 2.  Their first line of defense is a supposed "international consensus on Apple's

9   exclusionary practices" documented in "hundreds of pages of exhibits."  MTS ¶ 16.  But this paralo-

10  gism does not suffice: Plaintiffs' claims must "be measured by [their] amended complaint, not by the

11  avalanche of other filings with which [they] ha[ve] inexcusably flooded the Court."  *Muhammad v.*

12  *Bethel-Muhammad*, 2012 WL 1854315, at *3 n.5 (S.D. Ala. May 21, 2012).

13           Plaintiffs fail on that score.  Rather than defend the individual claims they pleaded, they stir

14  together their four causes of action in the apparent hope that a viable claim will emerge.  *See* Opp. 8–

15  11.  But a federal court is not Frankenstein's lab where dead claims are stitched together in an attempt

16  at resurrection.  Plaintiffs must identify the challenged conduct with "some specificity," *E & L Con-*

17  *sulting, Ltd. v. Doman Indus. Ltd.,* 472 F.3d 23, 32 (2d Cir. 2006), because courts have developed

18  "considerably more specific rules for common forms of alleged misconduct," *Novell, Inc. v. Microsoft*

19  *Corp.*, 731 F.3d 1064, 1072 (10th Cir. 2013) (Gorsuch, J.).  As pleaded, each claim fails.

20           **a.       Plaintiffs Do Not Allege Any Prerequisite of a Duty to Deal (Count I)**

21           Plaintiffs do not dispute that their ability to challenge Apple's alleged app rejections and "re-

22  fusal to sell" notary stamps or onboarding software, FAC ¶¶ 167–173, 179, hinges on establishing a

23  duty to deal.  *See* MTS ¶ 17; Opp. 9–10.  To do so, they must satisfy "[t]he one, limited exception"

24  articulated in *Aspen Skiing*.  *Qualcomm Inc.*, 969 F.3d at 993.  Nothing in their submissions suggests

25  they can do so; Plaintiffs instead misstate the law and ignore its requirements.

26           First, Plaintiffs contend that a monopolist's sacrifice of short-term profits is "not an elemental

27  requirement."  MTS ¶ 17.  That is flat wrong: A monopolist's "sacrifice [of] short-term benefits" is an

28  "element of the *Aspen Skiing* exception."  *Qualcomm*, 969 F.3d at 993–94; *accord MetroNet Servs.*

9

*Corp. v. Qwest Corp.*, 383 F.3d 1124, 1134 (9th Cir. 2004); *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1184 (9th Cir. 2016).  No doubt Plaintiffs seek to argue away this requirement because they cannot allege facts to support it.  Plaintiffs submitted Coronavirus Reporter as a free app, which cannot generate any profits for Apple to sacrifice.  FAC ¶ 9.  Plaintiffs' attempt at revisionist history—arguing that "Apple sacrificed short term revenues from Coronavirus Reporter" in the form of "IAPs, annual subscriptions, etc," MTS ¶ 17—is irrelevant in any event.  For a duty to arise, "sacrific[ing] short-term benefits" must be "the *only* conceivable rationale or purpose" for the refusal to deal.  *Qualcomm*, 969 F.3d at 993 (emphasis added); *accord Novell*, 731 F.3d at 1075.  Here, by contrast, the FAC is filled with allegations about the policies under which Apple rejected Plaintiffs' apps—none of which have anything to do with excluding competition.  *See, e.g.*, FAC ¶¶ 54, 69, 86–87, 206; *see also Novell*, 731 F.3d at 1075 (terminating a course of dealing cannot be "irrational" if it was made for a legitimate business reason).

Second, Plaintiffs ignore the many other prerequisites of a duty-to-deal claim.  *See* MTD 11.  For one, a duty to deal requires "termination of a voluntary . . . course of dealing."  *Verizon Commc'ns Inc. v. Law Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 409 (2004); *accord Qualcomm*, 969 F.3d at 993.  But Plaintiffs do not contend Apple terminated any course of dealing.  The FAC never alleges that Apple terminated Plaintiffs' developer accounts or refused to renew the DPLA.  And even if that was not dispositive (which it is), Plaintiffs' apps were allegedly rejected in the first instance (*i.e.*, without any conceivable prior course of dealing) or allowed to remain on the App Store (*i.e.*, without termination of any conceivable course of dealing).  *See* FAC ¶¶ 53, 87, 97, 103–06.  Nor do Plaintiffs argue that Apple "single[d] [them] out . . . for anticompetitive treatment."  *Qualcomm*, 969 F.3d at 995; *accord Novell*, 731 F.3d at 1078 n.4.  To the contrary, Plaintiffs' own allegations demonstrate that Apple rejected their apps under policies to which it "stayed firm" and "generally" adhered for similar apps and that Apple never sold "notary stamps," "onboarding software," or "access to userbases" to any developers.  FAC ¶¶ 54, 86, 167–173.

Perhaps realizing that they cannot thread *Aspen Skiing*'s "narrowed-eyed needle," *FTC v. Facebook, Inc.*, 2021 WL 2643627, at *15–17 (D.D.C. June 28, 2021), Plaintiffs try to liken their claims to product design cases.  *See* Opp. 9–10.  But a plaintiff cannot "recast" its claim to avoid "travel[ling]

10

the hard road of refusal to deal doctrine." *Novell*, 731 F.3d at 1078.  Alleging anticompetitive product design cannot circumvent the absence of a threshold duty to deal.  *See, e.g.*, *LiveUniverse, Inc. v. MySpace, Inc.*, 304 F. App'x 554, 556–57 (9th Cir. 2008); *Cal. Comp. Prods., Inc. v. Int'l Bus. Mach. Corp.*, 613 F.2d 727, 744 (9th Cir. 1979); *Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.*, 985 F. Supp. 2d 612, 617, 623 (S.D.N.Y. 2013); *Medtronic Minimed Inc. v. Smiths Med. MD Inc.*, 371 F. Supp. 2d 578, 588–89 (D. Del. 2005).  And without "an antitrust duty to deal" at all, Apple "has no duty to deal under the terms and conditions" Plaintiffs desire (*i.e.*, providing them with the features they want at the prices they prefer, *see* Opp. 9).  *Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 457 (2009).

Even if Plaintiffs could surmount this requirement, they do not state a product design claim.  A "line of 'product innovation' cases has consistently rejected antitrust liability for a monopolist's decision about when or whether to market new products." *Oahu Gas Serv., Inc. v. Pac. Res., Inc.*, 838 F.2d 360, 369 (9th Cir. 1988).  Product introduction "is necessarily tolerated by the antitrust laws, unless the monopolist abuses or leverages its monopoly power in some other way when introducing the product."  *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 998 (9th Cir. 2010).  Here, Plaintiffs identify no "associated anticompetitive conduct," *id.* at 998–99; they admit their grievance is with the App Store's "overall design that has always existed," Opp. 10.  And while Plaintiffs argue that the "FAC pleads that the design . . . here serves no purpose other than protecting defendant's monopoly," *id.*, that is another conclusory assertion "not entitled to be assumed true," *Iqbal*, 556 U.S. at 681.  It is also facially implausible: The App Store created a new platform, connecting developers and users in a network that, according to Plaintiffs, facilitates up to 80% of internet commerce.  FAC ¶¶ 11, 16, 31; *see also Tyco*, 592 F.3d at 998 (product introduction that provides any "new benefit to consumers" is not actionable).  Either way, there is no reason for the Court to credit it.

For these reasons, Plaintiffs' claim finds no support in *Tyco* or *Kodak*.  *See* Opp. 9–10.  The Ninth Circuit *rejected* liability in *Tyco* because the challenged design change offered new products to consumers at lower costs.  592 F.3d at 1003.  And *Kodak* merely reaffirms the principle that plaintiffs can challenge a refusal to license intellectual property only if they establish a duty under *Aspen*—which Plaintiffs have not done here.  *See Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195,

1209–10 (9th Cir. 1997).  Nothing in these cases recognizes the theory now pressed here: That dramatic innovation like the App Store—which has driven an enormous expansion of commerce for consumers and developers alike—can be condemned because some developers do not like the way some features were designed.  To stamp this view with judicial imprimatur would, as the Ninth Circuit recognized in *Tyco*,  "dampen[]" the virtues the antitrust laws are intended to promote.  592 F.3d at 1000.

### b.   Plaintiffs Cannot Defend Their Essential Facilities Claim (Count II)

Plaintiffs' defense of their essential facilities claim fares no better.  To start, Plaintiffs seek to establish standing to pursue this claim because they are "app competitors."  MTS ¶ 17.  That this argument is supported only by a conclusory allegation that "Apple competes with develops [sic] in the app markets," FAC ¶ 183 (cited at Opp. 11), is enough to reject it.  *See Iqbal*, 556 U.S. at 681.  But the notion that Apple develops competing *apps* is also irrelevant: Because the alleged essential facility is the "entire iOS userbase," MTS ¶ 17, only a would-be rival operating system could bring such a claim.  *Intergraph Corp. v. Intel Corp.*, 195 F.3d 1346, 1357 (Fed. Cir. 1999).  Just as with an airport that refuses to give an airline a terminal, *Interface Grp., Inc. v. Mass. Port Auth.*, 816 F.2d 9, 10 (1st Cir. 1987) (Breyer, J.), or a university that refuses to give a trade show its stadium, *Ferguson v. Greater Pocatello Chamber of Com., Inc.*, 848 F.2d 976, 983 (9th Cir. 1988), Apple cannot be held liable under the essential facilities doctrine for refusing to distribute a developer's apps on the App Store.

Even if they had standing, however, Plaintiffs do not allege the elements of an essential facilities claim.  At the outset, Plaintiffs do not dispute that they *can* access iOS by complying with the DPLA and App Review Guidelines—as they have done with at least three apps.  FAC ¶¶ 97, 104, 106–07; *see also* MTD 12–13.  The only allegation that they cite is a conclusory assertion that does not deny such access.  *See* FAC ¶ 186 (cited at Opp. 11 n.6).  This is dispositive.  *Trinko*, 540 U.S. at 411.

Nor can Plaintiffs evade this result with the extraordinary argument that Apple has denied access to *three different* essential facilities—not only "iOS userbase access" but also "[n]otary stamps" as well as "application loaders."  Opp. 11 (quotation marks omitted).  The problems with this theory are myriad, but most obvious are two.  First, a facility is only essential if it can "eliminate competition in the downstream . . . market."  *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 545 (9th Cir. 1991).  But Plaintiffs identify no markets downstream from notary stamps or application loaders

12

DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE AND
REPLY ISO MOTION TO DISMISS AMENDED COMPLAINT
CASE NO. 3:21-CV-05567-EMC

(or contractual iOS userbase access, for that matter), much less markets that Plaintiffs compete in or that could be completely foreclosed.  FAC ¶ 8 n.1; *see also Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1163 (9th Cir. 2003) (failure to define downstream market fatal to essential facilities claim).  Second, access to these purported facilities is not essential to "compet[ing] . . . in the app markets," FAC ¶ 183, as twenty or thirty million alleged developers have published millions of apps on the App Store without apparent access, *id.* ¶¶ 25, 87, 235, 240, 279; *see also* P. Areeda & H. Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 773b (5th ed.) (a facility "must be essential to the *plaintiff competitor's* survival in the market").

Moreover, whatever the alleged essential facilities are, Plaintiffs do not dispute that they are Apple's intellectual property.  *See* MTS ¶¶ 18–19; Opp. 11.  Plaintiffs instead deride as "absurd" and "dishonest" the argument—drawn verbatim from Professor Hovenkamp's leading antitrust treatise—that intellectual property cannot be an essential facility.  MTS ¶¶ 18–19.  Invective aside, Plaintiffs miss the point: This argument is not a "business justification" as they suggest, Opp. 11, but goes to whether an essential facility exists at all.  *See* MTD 12.  Far from "reject[ing] Apple's IP argument" as Plaintiffs contend, MTS ¶ 21, the quote they excerpt from *Epic* concerns the connection between Apple's intellectual property rights and the percentage of its commission—a point not at issue in this case. *Epic*, 2021 WL 4128925, at *62.  On the issue presented here, the *Epic* court said Apple's argument "appears meritorious" because "to hold otherwise would chill innovation and investment." *Id.* at *112 n.626.  And that observation is only the latest link in an unbroken chain of decisions affirming that intellectual property is not an essential facility.  *See, e.g.*, *Solidfx, LLC v. Jeppesen Sanderson, Inc.*, 935 F. Supp. 2d 1069, 1082-83 (D. Colo. 2013); *Applera Corp. v. MJ Research Inc.*, 349 F. Supp. 2d 338, 348 (D. Conn. 2004); *SCM Corp. v. Xerox Corp.*, 645 F.2d 1195, 1204 (2d Cir. 1981).

Finally, Plaintiffs attempt to distinguish *Blix v. Apple Inc.*, 2020 WL 7027494 (D. Del. Nov. 30, 2020), because "Coronavirus Reporter simply didn't have [alternative] distribution channels." MTS ¶ 16.  But the FAC alleges that Plaintiffs could have developed a version for Android devices that would have reached 40% of U.S. consumers.  FAC ¶¶ 140, 238.  And Plaintiffs ignore web apps and the open Internet—two other alternatives for which software allegedly can be developed at "trivial" cost.  MTS ¶ 30; *see also Epic*, 2021 WL 4128925, at *113 (rejecting essential facilities claim on these

grounds). That native apps are allegedly preferred by consumers, FAC ¶ 77, is inapt as "[t]he [essential facilities] doctrine does not demand an ideal or preferred standard," *Epic*, 2021 WL 4128925 at *113; *see also JamSports & Entm't, LLC v. Paradama Prods., Inc.*, 336 F. Supp. 2d 824, 839 (N.D. Ill. 2004).

### c.   Plaintiffs' Excessive Pricing Claim Is Contrary to Law (Count VI)

Plaintiffs' claim that Apple's annual developer fees are excessive ignores a "basic rule" of American antitrust law: "Simply possessing monopoly power and charging monopoly prices does not violate [Section] 2." *John Doe 1 v. Abbott Labs.*, 571 F.3d 930, 934 (9th Cir. 2009); *see also* MTD 14. To suggest otherwise, Plaintiffs imply that this argument was "adjudicated" and "rejected" in *Epic*. MTS ¶ 24. That is only half right: The *Epic* court confirmed that "Apple *is entitled* to license its intellectual property for a fee, and to guard its intellectual property from uncompensated use." 2021 WL 4128925, at *103 (emphasis added). Plaintiffs' suggestion that Apple need not give away its intellectual property for free because "[d]evelopers may continue to pay $99 if they *voluntarily* choose to do so" makes no sense, MTS ¶ 23; for all those developers that prefer to pay nothing over something, Apple would receive no compensation—chilling the incentive to innovate that both antitrust and intellectual property laws exist to protect. *Novell*, 731 F.3d at 1073. Plaintiffs adduce no authority that licensing intellectual property for a fee, even at monopoly prices, is unlawful. Nor could they do so. *See Trinko*, 540 U.S. at 407; *Abbott Labs.*, 571 F.3d at 934.

### d.   Plaintiffs Abandon Their "Ranking Suppression" Claim (Count IV)

Plaintiffs do not even mention—let alone attempt to defend—their Section 2 claims premised on alleged "ranking suppression." *See* FAC ¶¶ 207–12. Their failure to address any of Apple's arguments is a tacit admission that these claims lack merit and should be dismissed. *Marziano v. Cty. of Marin*, 2010 WL 3895528, at *4 (N.D. Cal. Oct. 4, 2010) (Chen, J.); *see also Narang v. Gerber Life Ins. Co.*, 2018 WL 6728004, at *4 (N.D. Cal. Dec. 21, 2018) (collecting cases).

### e.   Apple's Legitimate Justifications Are Unrebutted (Counts I, II, IV, VI)

Finally, Plaintiffs fail to join issue on Apple's legitimate business justifications. *See* MTD 15. They instead demur that "it is too early to resolve this factual question" because a jury could find Apple's justification "pretextual." Opp. 10–11. But this is not an issue that Plaintiffs can defer, for *they* bear the burden of alleging that Apple acted without any justification. *City of Vernon v. S. Cal.*

*Edison Co.*, 955 F.2d 1361, 1366–68 (9th Cir. 1992).  For this reason, courts dismiss antitrust claims where "legitimate business justifications" are apparent "within the four corners of the complaint." *Sambreel Holdings LLC v. Facebook, Inc.*, 906 F. Supp. 2d 1070, 1077–82 (S.D. Cal. 2012).  The conclusory allegation that Apple acted with "no legitimate business purpose," FAC ¶ 190, is no answer to the justifications Plaintiffs chronicled in their own complaint.  *See* MTD 14–15; *see also Iqbal*, 556 U.S. at 681.

To the extent Plaintiffs imply that Apple's justifications are pretextual because iOS is different from macOS, MTS ¶ 6, that argument is a non-sequitur.  Setting aside that it was disabused in *Epic*, 2021 WL 4128925 at *102, Plaintiffs' apps were rejected under guidelines relating to COVID-19 and blockchain apps.  Plaintiffs point to no allegations in the FAC, nor are there any, to demonstrate that these justifications are illegitimate or pretextual.  *Image Tech. Servs.*, 125 F.3d at 1212.  And if Plaintiffs mean to argue that Apple's restrictions are overbroad—because, for example, Apple's alleged "notary requirement" supposedly has "no benefit" for *some* apps, Opp. 2—that argument fails as a matter of law too because "there is no least restrictive alternative requirement in the context of a Section 2 claim." *Image Tech Serv., Inc. v. Eastman Kodak Co.*, 903 F.2d 612, 620 (9th Cir. 1990).  Thus, Apple's undisputed legitimate business justifications preclude liability under Section 2.  *Universal Analytics, Inc. v. MacNeal-Schwendler Corp.*, 914 F.2d 1256, 1258 (9th Cir. 1990).

### 4.      Plaintiffs Do Not Meaningfully Defend Their Section 1 Claim (Count III)

Turning to Section 1, Plaintiffs mock as "frivolous" the notion that they may not challenge unilateral conduct.  MTS ¶ 25; *see also* Opp. 12.  Yet concerted action is the "essence of any violation of § 1." *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 330 (1991).  Indeed, that was the Supreme Court's holding in the very case they cite.  *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 768 (1984) ("Section 1 . . . does not reach conduct that is wholly unilateral."); *see also* 15 U.S.C. § 1 (prohibiting "contract[s], . . . combination[s] . . ., or conspirac[ies]").

Plaintiffs have not alleged concerted action here.  Faced with the conclusion in *Epic* that the very contract challenged in this case is not actionable under Section 1 as a matter of law, 2021 WL 4128925, at *99–100, Plaintiffs offer another non-sequitur—that the case is "currently on appeal," Opp. 12.  Yet they give no *reason* why the court's analysis in *Epic* is wrong.  Nor do they disarm their own

allegations that Apple's contracts are adhesive, FAC ¶¶ 19, 21, 130, 135, 165, 199, 271, "legally void," *id.* ¶ 21, give Apple "unilateral control of the App Store," *id.* ¶ 271, and bestow "absolute discretion" on Apple for approving apps, *id.* ¶¶ 43, 165.  Such allegations are hallmarks of unilateral conduct that cannot be challenged under Section 1.  *See* MTD 15–16.  Plaintiffs cite no authority suggesting otherwise.  *See* Opp. 12.

Rather, Plaintiffs' only counter is to argue Apple "coerc[ed] an agreement."  Opp. 12.  But in *Monsanto Co. v. Spray-Rite Service Corp.*, the case on which Plaintiffs rely, the Supreme Court reaffirmed that a supplier's "right to deal, or refuse to deal, with whomever it likes" precludes a distributor who "acquiesces" to announced terms from alleging concerted action under Section 1.  465 U.S. 752, 761 (1984).  As the leading antitrust treatise recognizes, "[e]ven the most circumscribed reading of *Monsanto* does not permit finding an agreement on the basis of unwilling compliance alone" because the Supreme Court "clearly denie[d] that unwilling or coerced compliance with an announced condition on future dealing creates an agreement."  Areeda & Hovenkamp, *supra*, ¶¶ 1446, 1451d2.

Regardless, Plaintiffs do not even plead a coerced agreement.  To do so, a plaintiff must at a minimum "show that the supplier's conduct rose to the level of coercion sufficient to deprive the dealers of their free choice."  *Hanson v. Shell Oil Co.*, 541 F.2d 1352, 1357 n.4 (9th Cir. 1976).  But no one is forced to sell through the App Store.  *See Epic*, 2021 WL 4128925, at *99.  Plaintiffs' only allegation otherwise is the unadorned assertion that Apple "induced and coerced developers to sign and be bound by their contracts of adhesion."  FAC ¶ 199.  That is yet another "legal conclusion," *Mayor & City Council of Baltimore, Md. v. Citigroup, Inc.*, 709 F.3d 129, 135–36 (2d Cir. 2013), that finds no other support in the FAC.  Conclusory allegations like those made here cannot survive a motion to dismiss. *See*, *e.g.*, *Alan Darush MD APC v. Revision LP*, 2013 WL 1749539, at *5 (C.D. Cal. Apr. 10, 2013) (dismissing claim premised on "inadequately allege[d]" agreement).

### 5.    Plaintiffs' Defense of Their Tying Claim Is Self-Defeating (Count V)

With respect to their tying claim, Plaintiffs accept that a tie requires two separate products in two separate markets.  MTS ¶ 29; *see also*, *e.g.*, *Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 12, 21 (1984).  But challenged to identify alleged facts demonstrating that "access to [the] iOS device," "the App Store," "notary stamps," and "onboarding software" are distinct products in distinct markets,

Mot. 16, Plaintiffs can cite only circular statements such as "Apple's iOS device, is distinct from the tied product, notary stamps, because such a 'permission ticket' to launch an app is separate from a smartphone." FAC ¶ 220. Such "circular allegations lack the factual content needed to lend facial plausibility" to a claim. *Cho v. Osaka Zen Spa*, 2021 WL 1736813, at *4 (S.D.N.Y. May 3, 2021).

What is more, Plaintiffs' arguments merely prove Apple's point. They contend the App Store is "just one store" and the other three are "distinct products, all introduced by Apple's anticompetitive rewrite of MacOS to make iOS." MTS ¶ 29. Thus, notary stamps, for example, are an "algorithmic invention" integrated into iOS itself. FAC ¶ 171. Even in Plaintiffs' telling, therefore, these supposed "products" are all features of the way that Apple has designed iOS—a single, integrated software eco-system that "cannot be broken into pieces to create artificially two products." *Epic*, 2021 WL 4128925, at *109. To suggest otherwise, Plaintiffs rely exclusively on a law student's journal comment. Opp. 14–15 (quoting Emma C. Smizer, Epic Games v. Apple: *Tech-Tying and the Future of Antitrust*, 41 Loy. L.A. Ent. L. Rev. 215 (2021)). But this article rightly acknowledges that its theories about so-called "tech tying" face "significant hurdles" under existing precedent as "[a]ntitrust laws must evolve" to accommodate them. Smizer, *supra*, at 215, 251. As Apple set out, numerous cases explain how a platform cannot be dissected into constituent services—"inherent components" in Plaintiffs' parlance. MTS ¶ 29; Opp. 13–14. The four alleged products "are just [some] of the many services provided by [Apple] for its [developers and users]" and therefore "no separate demand exists . . . that is sufficient to create a separate market." *Collins v. Associated Pathologists, Ltd.,* 844 F.2d 473, 477 (7th Cir. 1988). Indeed, this result is compelled by *Amex*: Because the App Store's various features are "inputs" into a two-sided transaction platform—for which "only one market should be defined"—they by defi-nition cannot be separate products in separate markets. 138 S. Ct. at 2286–87 & n.8.

Finally, Plaintiffs' assertion that they have standing also misses the mark. *See* MTS ¶ 30; Opp. 16. Plaintiffs agree that only purchasers "forced to buy the tied product" or competitors "restrained from entering the market for the tied products" have standing to challenge tying arrangements. *Abra-ham v. Intermountain Health Care Inc.*, 461 F.3d 1249, 1266 n.10 (10th Cir. 2006) (quotation marks omitted); *see also* Opp. 16. But the FAC alleges that Plaintiffs, as app developers, do not purchase the

1   supposedly tied products—only consumers do.  FAC ¶¶ 217–26; *see also* MTD 17.  And while Plain-

2   tiffs argue that "it is 'trivial' for an app developer to make a website for app downloads," MTS ¶ 30,

3   the FAC does not allege, as Plaintiffs suggest, Opp. 16, that they tried to do so—or that they would

4   offer "notary stamps" or "application loaders" absent the alleged tie.  Plaintiffs therefore "lack standing

5   to assert this claim."  *Abraham*, 461 F.3d at 1266 n.10; *see also Cyntegra Inc. v. Idexx Labs., Inc.*, 520

6   F. Supp. 2d 1199, 1210–11 (C.D. Cal. 2007) (plaintiff lacked standing because they had no product

7   that competed with the allegedly tied product).

8       Nor are the other elements of Plaintiffs' claim uncontested as they assert.  Mot. 13.  As but one

9   example, Plaintiffs do not debate the rule of reason's applicability.  *See* MTD 16.  Yet they fail to even

10  argue that most of the alleged tied product markets were harmed.  *See* Opp. 13 & n.7.  This too is fatal.

11  *See, e.g.*, *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1200 (9th Cir. 2012) (plaintiff "must allege

12  an 'actual adverse effect on competition'" in the relevant tied market caused by the tie).

13      **6.      Plaintiffs Cannot State an "Auxiliary Claim" Via Judicial Estoppel (Count VII)**

14      Plaintiffs' last redoubt is to argue that "Apple's [motion] doesn't even address Plaintiffs' aux-

15  iliary claim (*Cameron*) for the paid-app out-out [sic] from that Class."  MTS ¶ 9; *accord* Opp. 4.  What-

16  ever this claim purports to be, Plaintiffs are wrong.  *See* MTD 17 n.6 (explaining that plaintiffs cannot

17  incorporate separate theories of liability by vague reference to the entire complaint in *Cameron*).  It is

18  Plaintiffs who fail to address the well-settled rule "that allegations in pleadings in another action . . .

19  cannot be incorporated by reference."  5A Wright & Miller, Fed. Prac. & Proc. Civ. § 1326 (4th ed.);

20  *see also Muhammad*, 2012 WL 1854315, at *3 n.5 (collecting cases).

21      Plaintiffs instead attempt to invoke judicial estoppel, arguing that Apple cannot "settl[e] a

22  case . . . that doesn't state a claim for relief."  MTS ¶ 9.  Yet litigants may choose to settle cases for a

23  variety of reasons—to avoid litigation costs, achieve other business objectives, or simply eliminate

24  contingencies.  And while there is no obligation for Apple to "go on record as saying *Cameron* doesn't

25  state a claim for relief," *id.*, it already has done so, *Cameron v. Apple Inc.*, No. 4:19-cv-03074-YGR,

26  Dkt. 74 at 20 (N.D. Cal. Nov. 11, 2019) ("The Complaint and the purported causes of action contained

27  therein fail, in whole or in part, to state a claim for which relief can be granted.").  Nothing in the

28  *Cameron* settlement is "clearly inconsistent" with Apple's positions in this case.  *Arizona v. Tohono*

18

*O'odham Nation*, 818 F.3d 549, 558 (9th Cir. 2016); *see also Cameron v. Apple Inc.*, No. 4:19-cv-03074-YGR, Dkt. 396-1 Ex. A § 2.6 (N.D. Cal. Aug. 26, 2021) (Apple's "vigorous[]" denial of liability).  Plaintiffs' "auxiliary claim"—whatever it is—cannot survive by estoppel alone.

## C.      Plaintiffs Do Not State Viable Contract Claims (Counts VIII & IX)

Plaintiffs marshal no coherent defense of their claim for breach of contract.  As Plaintiffs make clear, the alleged breach arises from Apple's rejection of the Coronavirus Reporter app.  Opp. 17; *see also* FAC ¶¶ 246-49, 254.  The primary problem remains that Plaintiffs point to Apple's policy for COVID-19 apps as the source of the alleged breach.  *See* Opp. 17.  That is not an agreement between the parties.  *See Cotter v. Newark Hous. Auth.*, 422 F. App'x. 95, 98 (3d Cir. 2011) (the mere "allegation that an agreement has been reached, is a legal assertion, not a factual one," and is thus ignored).  The Court has the relevant contract before it: The Developer Program License Agreement.  Dkt. 46-2.  And Plaintiffs do not dispute that the DPLA's plain language invests Apple with "sole discretion" to select apps for distribution on the App Store.  Dkt. 46-2 § 3.2(g); *see also* FAC ¶¶ 43, 165, 271.  As Apple has repeatedly explained, there was thus no breach when Apple exercised that discretion.  *See* MTD 18.

Plaintiffs cannot challenge their apps' rejections by reading a reasonableness standard into the DPLA.  *See* MTS at 12.  Plaintiffs do not disagree that contract interpretation starts and ends with the unambiguous words in the agreement.  *See* MTD 18.  Nor do they cite any authority holding otherwise. So if the DPLA's plain terms "rewrite Plaintiffs' allegations" as they suggest, Opp. 17, then that is only because their allegations are at odds with the agreement itself.  *See*, *e.g.*, *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1116 (9th Cir. 2014) (courts do not accept as true allegations contradicted by properly considered exhibits); *Mountain Cascade Inc v. City & Cty. of San Francisco*, 2013 WL 6069010, at *5 (N.D. Cal. Nov. 18, 2013) (similar).

The notion that the DPLA's relevant provisions are adhesive and thus "illegal" is self-defeating. MTS ¶ 30; *see also* Opp. 17.  Setting aside that "adhesive contracts are generally enforced," *Gatton v. T-Mobile USA, Inc.*, 152 Cal. App. 4th 571, 591 (Cal. Ct. App. 2007), a "party to an illegal contract cannot bring an action to enforce the contract," *City Lincoln-Mercury Co. v. Lindsey*, 52 Cal. 2d 267, 276 (Cal. 1959).  Plaintiffs cannot sue for breach of an allegedly unlawful term for which they have not

19

DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE AND
REPLY ISO MOTION TO DISMISS AMENDED COMPLAINT
CASE NO. 3:21-CV-05567-EMC

even alleged their own performance.  *See* MTD 18.  And even if they could, "courts will not strike a new bargain for the parties for the purposes of saving an illegal contract."  *Strategix, Ltd. v. Infocrossing W., Inc.*, 142 Cal. App. 4th 1068, 1074 (Cal. Ct. App. 2006); *see also Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 124 (Cal. 2000) (illegal provisions either void the contract or are extirpated therefrom).  Plaintiffs offer no authority for their attempt at unilateral reformation, and their claim should be dismissed.

Plaintiffs' lone argument in defense of their implied covenant claim is equally meritless.  They contend that one need not allege "that a specific contractual term . . . was breached."  Opp. 18.  What Apple actually argued, however, is that an implied covenant claim can arise only where the defendant *frustrates* a *specific* contractual term.  *See* MTD 19.  Plaintiffs do not and cannot dispute that proposition, which is precisely what *Soundgarden v. UMG Recordings, Inc.* observed: "The implied covenant will not apply where no express term exists on which to hinge an implied duty, and where there has been compliance with the contract's express terms."  2020 WL 1815855, at *17 (C.D. Cal. Apr. 6, 2020).  Plaintiffs still cannot identify any "express" obligation in the DPLA with which Apple did not comply.  *Id.*; *see also*, *e.g.*, *Martin v. Wells Fargo Bank, N.A.*, 2020 WL 3128883, at *4 (N.D. Cal. June 12, 2020) (dismissing implied covenant claim because the challenged action was not "tied to any express provision" in the relevant contracts); *Wilson v. Gateway, Inc.*, 2010 WL 11520532, at *3 (C.D. Cal. Jan. 25, 2010) (dismissing implied covenant claim because the plaintiff merely argued the defendant "should have been prohibited" from taking the challenged action).

## D.   Plaintiffs Do Not State Viable RICO or Fraud Claims (Counts X & XI)

Plaintiffs do not dispute that they must plead their RICO and fraud claims with particularity.  *See* MTS ¶¶ 31, 33; Opp. 19–20.  Yet aside from block citing the FAC without explication, Opp. 21, Plaintiffs merely argue that the alleged screenshots in their Complaint suffice.  *See* MTS ¶ 31.  Their conclusory assertion that these alleged communications "conveyed knowingly false information," *id.*, points up the problem: Plaintiffs have failed to plead with specificity *how* these communications were false.  *Maxwell v. Kaylor*, 2020 WL 4732340, at *10 (N.D. Cal. Aug. 14, 2020); *see also* MTD 19-20.  That Plaintiffs believe *other* apps violate Apple's Guidelines, FAC ¶¶ 277–79, for example, does not mean that Apple's grounds for rejecting Plaintiffs' apps were false.

Plaintiffs also fail to identify an alleged enterprise other than Apple itself. *See* MTD 21. Indeed, their arguments contradict one another. In their Motion to Strike, Plaintiffs argue that the FAC "striv[es] to avoid naming an Apple shareholder or executive." MTS ¶ 32. This of course concedes that such individuals are *not* named. *See, e.g.*, *Chang v. Noh*, 2017 WL 7411155, at *4 (C.D. Cal. Nov. 27, 2017) (dismissing RICO claim because separate individuals were not clearly alleged). But Plaintiffs try to shift gears in their Opposition, asserting that "PR firms, law firms, and rival developers" are members of the enterprise. Opp. 22. Yet this too is inadequate. Plaintiffs still do not identify *who* these entities are—as required under Rule 9. *See Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 668 (9th Cir. 2019). Nor are there any allegations that they "operat[ed] or manage[d]" the enterprise. *Baumer v. Pachl*, 8 F.3d 1341, 1344–45 (9th Cir. 1993). Plaintiffs do not even attempt to explain how they could allege as much consistent with the First Amendment. *See* MTD 21–22.

Thus, this case stands in stark contrast to *Living Designs, Inc. v. E.I. Dupont De Nemours & Co.*, 431 F.3d 353 (9th Cir. 2005), on which Plaintiffs rely. Opp. 23. In that case, the defendant's attorneys had gone far beyond ordinary legal representation to falsify relevant information. 431 F.3d at 358. By contrast, "[a] complaint that does no more than allege that a law firm performed legal work for an enterprise fails to state a violation of § 1962(c)." *Muskegan Hotels, LLC v. Patel*, 986 F.3d 692, 699 (7th Cir. 2021); *see also, e.g.*, *In re Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 3920353, at *15 (S.D.N.Y. July 15, 2016) (distinguishing *Living Designs* because the accused law firm did not allegedly engage in misconduct outside ordinary legal representation). Cases like this one that "fail[] to allege that the [defendant's law firm] operated or managed the enterprise. . . [are] dismissed." *Walter v. Drayson*, 2007 WL 641413, at *7 (D. Haw. Feb. 26, 2007).

Indeed, Plaintiffs betray their actual theory in their Motion to Strike. "Plain and simple, *Apple* made knowingly false representations," they say, and "*Apple*'s lack of due process [in reviewing apps] subjects it to fraud claims." MTS ¶¶ 31, 33 (emphases added). Far from a "trivial technicality," *id.* ¶ 32, this failure to identify an enterprise distinct from the defendant is an elemental defect. *See, e.g.*, *Greenstein v. Peters*, 2009 WL 722067, at *2 (C.D. Cal. Mar. 16, 2009) (dismissing RICO claim that failed to name individuals other than the defendant corporation and its "own employees and board members"). Were it otherwise, "every fraud case against a corporation" would implicate RICO—a

21

1   "far-fetched possibility" that has uniformly been rejected.  *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225,

2   226 (7th Cir. 1997).

3          What is more, Plaintiffs overlook their claims' most glaring deficiencies.  They ignore, for ex-

4   ample, their total failure to allege the requisite intent.  *See* MTD 20–22.  They also do not defend their

5   attempt to indict protected speech and petitioning.  *See id.* at 21–22.  Nor do they even attempt to argue

6   that they pleaded the existence of an actionable "scheme" with specificity.  *See id.* at 20–21.  Again,

7   these tacit concessions are dispositive in their own rights.  *Marziano*, 2010 WL 3895528, at *4.

8   **E.     Plaintiffs Should Be Denied Leave to Amend**

9          Still having failed to state a claim in their seventh attempt, Plaintiffs offer no clear reason why

10  the eighth would be any different.  They suggest that "Apple has not yet answered the FAC," MTS ¶ 3,

11  but Apple has no obligation to do so.  *See* Fed. R. Civ. P. 12.  And contrary to Plaintiffs' unsubstantiated

12  assertion that dismissal with prejudice is "draconian" before "the first hearing," Opp. 24, courts fre-

13  quently dismiss antitrust claims without leave to amend where, as here, plaintiffs have amended prior

14  to the first ruling.  *See, e.g.*, *In re Inclusive Access Course Materials Antitrust Litig.*, 2021 WL 2418333,

15  at *13 (S.D.N.Y. June 14, 2021).  Plaintiffs' vague assertion that they can "resolve[] by amendment"

16  any defect in "factual allegations," Opp. 24, ignores the reality of this case: Apple has identified the

17  *legal* flaws in Plaintiffs' claims on five prior occasions, MTD 22–23, yet the FAC is a step backwards—

18  more opaque, less cogent, and no closer to stating a claim than its predecessors.  *See, e.g.*, *Green v.*

19  *State Bd. of Med. Examiners*, 2020 WL 1229744, at *1 (M.D. Ala. Mar. 12, 2020) (dismissing with

20  prejudice a complaint that was "worse" than its predecessor and failed to cure defects identified in

21  earlier motions).

22         This point is brought home by Plaintiffs' "proposed addendum," MTS ¶ 3, which presumably

23  sets forth the amendment that they would make if permitted.  *See* Fed. R. Civ. P. 15(a).  To be sure,

24  this addendum is a nullity because they have not noticed a motion for such relief, much less complied

25  with the Court's procedures for doing so.  *See Hocking v. City of Roseville*, 2007 WL 3240300, at *5

26  (E.D. Cal. Nov. 2, 2007) ("Because this request was not submitted by properly noticed motion, it is not

27  presently before the court and the court therefore declines to address it at this time."); *see also* N.D.

28  Cal. L.R. 7-1 & 10 (explaining the rules for moving for leave to amend a complaint).  Indeed, it is

merely another stalling maneuver. Plaintiffs' other filings expose the pretense: They claim there to offer the claim now because the "UCL and RICO developments . . . were simply unavailable to Plaintiffs at time of filing the FAC," Dkt. 52 at ECF Page 3, but POLITICO published the source article on August 20, 2021—*17 days before they filed the FAC*, Dkt. 53 at ECF Page 3. Using this pretextual justification to invite the Court to "moot" Apple's motion, MTS ¶¶ 7–8, proves that this is merely Plaintiffs' latest attempt to avoid adjudicating the merits. *See Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (affirming dismissal with prejudice because amendment was a "dilatory tactic"); *see also* MTD 3–4 (recounting Plaintiffs' history of avoiding merits adjudications).

In any event, the proposed amendment is futile. It attempts to "extend[] Apple's [RICO] enterprise to lobbyists," Dkt. 52 ¶ 8, and declare the same conduct "unfair." Dkt. 53 ¶ 6. But this runs headlong into the First Amendment's bulwark: Just as for Apple's litigation efforts, MTD 21–22, the *Noerr-Pennington* doctrine precludes liability arising from alleged lobbying. *Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1056, 1059 (9th Cir. 1998); *see also Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006) (extending *Noerr-Pennington* to RICO); *Multimedia Patent Tr. v. LG Elecs., Inc.*, 2013 WL 12073800, at *3 (S.D. Cal. Aug. 1, 2013) (same for UCL). Indeed, courts have repeatedly rejected attempts to condemn lobbying under RICO or the UCL. *See, e.g.*, *Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1155 (E.D. Cal. 2017); *San Diego Puppy, Inc. v. City of San Diego*, 2014 WL 4546390, at *6 (S.D. Cal. Sept. 11, 2014); *Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp.*, 192 F. Supp. 2d 519, 531 (M.D. La. 2001).

This is far from the only bar to Plaintiffs' proposed amendment. For one, Plaintiffs lack standing to bring this putative claim: That various proposed bills were not passed by state legislators and signed by governors is "the result of the independent action of some third party not before the court." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (alterations omitted). Nor have Plaintiffs identified how this Court "likely" would redress any violation using the UCL. *Id.* The UCL does not authorize damages, and Plaintiffs assuredly do not contend that the Court could enjoin Apple from lobbying state legislatures across the country under California's Unfair Competition Law. *See Ameritech v. Voices for Choices, Inc.*, 2003 WL 21078026, at *1–2 (N.D. Ill. May 12, 2003) (refusing to enjoin "public lobbying" of state legislatures because it would not only "offend the First Amendment's guarantee to

23

free speech" but also "would detrimentally affect democracy generally").

Furthermore, nothing in the POLITICO article supports the conclusory allegations of criminal conduct necessary to support a RICO claim. *See* Dkt. 53 ¶ 5. The alleged "quid pro quo," for example, rests merely on the assertion that Apple lobbyists reportedly said the company could pull out of economic development projects in Georgia if certain legislation passed. Dkt. 53 ¶ 4 & ECF Page 5. There is no allegation that Apple provided anything of value to public officials in exchange for an official act. *See* 18 U.S.C. § 201. To construe even the alleged conduct as bribery, obstruction of justice, or any other crime as Plaintiffs contend, Dkt. 53 ¶ 5, would run afoul of the Supreme Court's narrow interpretation of these offenses—borne out of the precise concern that they would be used, as Plaintiffs seek to do here, to attack constitutionally protected speech and petitioning. *See McDonnell v. United States*, 136 S. Ct. 2355, 2370–73 (2016).

Nor is there anything about Apple's alleged lobbying that is "directly analogous" to the UCL claim in *Epic*. MTS ¶ 4. The court there found "anti-steering" provisions in Apple's Guidelines— which prohibited developers from using certain in-app links and external communications to steer consumers away from Apple's payment system—to be unfair. *Epic*, 2021 WL 4128925, at *117–18. That says nothing about lobbying. The only UCL ruling in *Epic* applicable here was the court's *rejection* of Epic's challenges to the app distribution restrictions that also are at issue in this case. *Id.* at *116.

## F.   Plaintiffs' Class Allegations Should Be Stricken

Plaintiffs seek to defend their class allegations by miscasting Apple's arguments. For example, Apple does not contend that the class is "simply too large," as Plaintiffs suggest. MTS ¶ 36. Rather, their theories of liability—and the relief they seek—entail individualized inquiries for hundreds of thousands if not millions of app rejections. MTD 24. To this, Plaintiffs have no response. And if "a short plain statement" of the claims related to five apps requires over 100 pages, Fed. R. Civ. P. 8(a)(1), then the innumerable individual "stories" Plaintiffs plan to tell will be anything but manageable. FAC ¶ 115.

Without denying that intractable conflicts also infect their putative classes, MTD 23–24, Plaintiffs next suggest, without elaboration, that "[p]rocedures can be put in place, after discovery, to identify any 'cronies' that may be exempt from the class." MTS ¶ 34. Yet they identify no way to do that

24

DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE AND
REPLY ISO MOTION TO DISMISS AMENDED COMPLAINT
CASE NO. 3:21-CV-05567-EMC

1    with "objective, rather than subjective, criteria." *Senne v. Kan. City Royals Baseball Corp.*, 315 F.R.D.

2    523, 563 (N.D. Cal. 2016).  Nor do they suggest such a determination could or would be anything but

3    individualized.  Plaintiffs cannot cure their class allegations with the bare assertion that Apple's sup-

4    posed "cronies" also suffered from Apple's alleged "anticompetitive behavior," MTS ¶ 34—particu-

5    larly when Plaintiffs' own allegations of ranking suppression would mean Apple inflated the discover-

6    ability of these cronies' apps.  *See* Mot. 23; *see also Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d

7    170, 184 (3d Cir. 2012) (fundamental conflict exists when some class members are "harmed by the

8    same conduct that benefited other members").

9          Finally, Plaintiffs contend that their putative classes will have adequate counsel because "Isaacs

10   does not represent the class." MTS ¶ 35.  But that distinction is empty: Isaacs is the principal behind

11   this litigation both as a represented and allegedly self-represented party—as evidenced by the assertion

12   in the opposition, signed only by the plaintiff entities, about who Isaacs "represent[s]" and what he

13   "claims." *Id.*; *see also Samaan v. Sauer*, 2008 WL 2489004, at \*2 (E.D. Cal. June 17, 2008) (explaining

14   that an individual cannot proceed pro se where he is also the principal of a represented party).  Moreo-

15   ver, Plaintiffs ignore altogether their inadequacy as class representatives given that their own allega-

16   tions regarding their experiences on the App Store render them atypical (to say the least).  *See* MTD

17   23.

18                                  **III. CONCLUSION**

19         Apple respectfully requests that the Court dismiss the FAC with prejudice and, to the extent

20   any claims remain, strike Plaintiffs' class allegations.

21   Dated:     October 12, 2021                Respectfully submitted,

22                                              By:    */s/ Rachel S. Brass*
23                                                     Rachel S. Brass

24
25                                              GIBSON, DUNN & CRUTCHER LLP
                                                MARK A. PERRY (SBN 212532)
26                                               mperry@gibsondunn.com
                                                RACHEL S. BRASS (SBN 219301)
27                                               rbrass@gibsondunn.com
                                                JULIAN W. KLEINBRODT (SBN 302085)
28                                               jkleinbrodt@gibsondunn.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: (415) 393-8200
Facsimile:  (415) 374-8429

*Attorneys for Apple Inc.*

DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE AND
REPLY ISO MOTION TO DISMISS AMENDED COMPLAINT
CASE NO. 3:21-CV-05567-EMC