Keith Mathews
Associated Attorneys of New England
PO Box 278
Manchester, NH 03105
Ph. 603-622-8100
keith@aaone.law

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORONAVIRUS REPORTER,<br>CALID INC,<br>PRIMARY PRODUCTIONS LLC,<br>DR. JEFFREY D. ISAACS,<br>on behalf of themselves and all others similarly situated<br><br>                  Plaintiffs,<br><br>vs.<br><br>APPLE INC.,<br>FEDERAL TRADE COMMISSION<br><br>                  Defendants. | Case No. 3:21-cv-05567-EMC<br><br>**PLAINTIFFS' REPLY TO DEFENDANT APPLE, INC.'S RESPONSE RE LIVE TESTIMONY**<br><br>The Honorable Edward M. Chen |

## **PLAINTIFFS' REPLY IN SUPPORT OF LIVE TESTIMONY**

Plaintiff Coronavirus Reporter filed a Notice of Motion for Preliminary Injunction on August 8, 2021. Plaintiff noticed that the motion would be based upon "evidentiary materials to be presented at hearing." (*Docket* #20 p. 2). As counsel informed Apple on August 11, the evidentiary testimony would include depositions by Mr. Eddy Cue and an additional witness with "extensive knowledge of Apple's Covid Program." On August 13, Gibson Dunn responded that "Apple will not stipulate to the discovery you propose at this time." (*Exhibit A*, p.1). In the two months since mid-August, Gibson Dunn further has refused to Meet & Confer on spoliated evidence (*Ibid.*), Leave to Amend a State UCL claim (*Ibid.*, page 2), and allegations of false statements in their MTD and Objection to Preliminary Injunction. As a result, there exist contested facts, and live testimony is the most efficient way to resolve the matter. Apple's objection to the Preliminary Injunction does not object to "evidentiary materials" being presented at the hearing. As such, the company waived objection to Plaintiff's motion for an evidentiary hearing. Because there are contested facts, and because Apple did not object to an evidentiary hearing, good cause exists under Local Rule 7-6 to permit live testimony.

Unfortunately, it has become necessary to enumerate the following a non-exhaustive list of false and/or misleading statements pleaded by Gibson Dunn; resolution of these important issues will shed light on the merits of the preliminary injunction, and therefore necessitate live testimony at the Preliminary Injunction hearing.

1. "Coronavirus Reporter app—which is not affiliated with any apparent, recognized healthcare institution as Apple's guidelines required."

   The app was at all times affiliated with University of Arizona and Dignity Health (the largest hospital network on a revenue basis) (FAC Exhibit B). On March 6, 2020, Apple was (See *Kosmynka Declaration*) provided with Coronavirus Reporter App's healthcare credentials, including Dr. Robert Roberts and Dr. Brandon Robert's status as app co-founders. Dr. Robert Roberts further provided a letter indicating the app had institutional support: *"We will review the epidemiological data gathered by this app in conjunction with academic physician scientists at my own institution and elsewhere, and will continually adapt the app based upon scientific and medical advice from experts."*

As such, Plaintiffs have a clear likelihood to prevail – not only should Apple not have banned/censored all startups, but they certainly shouldn't have banned the first COVID-19 tracking app, which was supervised by a renowned cardiologist who is a professor at three venerable institutions.

Live testimony is urgently indicated because an actual Apple witness will not corroborate the knowingly false statements Gibson Dunn pleaded – that the app had no medical credentials (other than Dr. Isaacs', the app programmer) and no institutional support.

2. "Plaintiffs have submitted no evidence concerning the nature of their businesses… At least before this app, Plaintiffs' app businesses were not health-services focused."

Again, this is simply untrue. Apple/Trystan Kosmynka's own declaration proves that CALID provided Apple of evidence on March 6, 2022 of their former health care projects, which included FactMed, an FDA side effect bioinformatics site used by "millions," and the CALID app, which focused on telemedicine. Live testimony will again disprove Gibson Dunn's knowingly false pleadings that seem unsupported by Apple's own declarations.

3. "Dr. Isaacs was suspended and ultimately dismissed for harassing a classmate."

Gibson Dunn knows that Dr. Isaacs was acquitted of any allegations at USC Keck School of Medicine. If presented with the acquittal documents on the stand during live testimony, Apple will certainly acknowledge they exist, unlike the dishonest assertion to the contrary by Gibson Dunn. Apple will also acknowledge evidence from the American Academy of Medical Colleges and the New Hampshire Employment Tribunal which determined that Dr. Isaacs was acquitted and obtained expungement of said charges. In fact, said charges were never for "harassment" or "stalking," but rather, an academic finding of "failure to possess essential characteristics of a student physician." It is unfair to Dr. Isaacs to allow Gibson Dunn (see docketed Supreme Court petitions) to deny the acquittal and expungement, under so-called *Noerr-Pennington* Immunity; Apple must testify as to whether or not Dr. Isaacs' medical credentials formed a basis for their rejection of the App.

4. "Isaacs has waged an unsuccessful litigation campaign across federal courts."

Isaacs filed an action against the Department of Justice seeking an investigation into Dartmouth and Jim Yong Kim's spoliation of evidence. Several months after the White House and DOJ were provided with the Complaint, Jim Yong Kim resigned from the World Bank Presidency. Upon information and belief, Isaacs' litigation, intended to enforce evidence spoliation laws, succeeded in its cause.

Beyond federal court, two competent state authorities adjudicated in Dr. Isaacs' favor, determining allegations against him were acquitted and expunged, after conducting full investigations and tribunals (with live testimony). In short, conflicting interpretations of Dr. Isaacs acquittal have one clear pattern: when live testimony was permitted, Dr. Isaacs' acquittal was upheld; when procedural grounds blocks trial on the merits, dishonest pleadings prevailed.

    Gibson Dunn characterizes Dr. Isaacs' federal litigfagation falsely as "unsuccessful" which in fact references Dr. Isaacs' federal lawsuit against their firm – dismissed on procedural grounds for statutes of limitations – never having reached a jury on the merits. Moreover, the firm is alleged to have lied to a panel of three Ninth Circuit judges, and the United States Supreme Court is currently reviewing this matter.

5. "On March 19, 2021, it sought to overturn this decision a second time by pointing to its alleged collaboration with a physician, Dr. Robert Roberts."

    Here, Gibson Dunn attempts to falsely suggest that Dr. Roberts was neither co-founder nor Chief Medical Officer of the Coronavirus Reporter App. They do so, as Law360 astutely noticed, by spending a page on Dr. Isaacs, but only one mere reference to Dr. Roberts: https://www.law360.com/articles/1434611. As Dr. Roberts' representative stated (see last page of this document), such an assertion is not reasonable.

6. "The FAC omits that Isaacs "was enrolled [at Vanderbilt Law School] for just under a year,"

    This dishonest attempt to discredit Dr. Isaacs is obvious. Dr. Isaacs, by all standards, possesses multi-disciplinary talents directly relevant to this proceeding. He obtained a neurosurgeon level score on the National Boards, and completed an MD with honors rotations at prestigious medical schools like Mount Sinai, Cleveland Clinic, and St. George's London. He had a perfect 800 math SAT. He is a commercial instrument rated pilot. He has a highly competitive MBA from Insead-Wharton Singapore in international administration. He worked in technology investment banking for Merrill Lynch Bank of America. He worked as a venture capital analyst for a Saudi Royal family in 1999 on the first internet IPO in Europe. He worked on mRNA sequencing apps in high school, in 1994. He had a full scholarship to Vanderbilt Law. His apps and patents have generated generated nearly one hundred million dollars in economic efficiencies. He has an honors Computer Science degree from Dartmouth. But despite all of this, and some ten years in post-graduate studies, and a near record seventeen years in post-grad studies should he complete a neurosurgery residency, Gibson Dunn[1] (a RICO defendant of Dr. Isaacs) victim-blames him for only dedicating one year to study law.

7. "There is no evident reason why any attorney from Gibson Dunn would "be called as a witness in this case."

    As asserted above, Gibson Dunn defied two competent authorities, and the plain language of a court-ordered federal settlement acquittal, and falsely represented to this Court (and the Ninth Circuit) that nothing acquitted Isaacs in a disputed USC controversy. They are certainly a witness to this case, because they have deemed Dr. Isaacs' medical credentials as relevant to the App Store litigation.

8. "Plaintiffs ask the Court to compel Apple to reengineer iOS itself."

    No re-engineering necessary to comply with the Injunction. Apple iPhone enterprise users already have access to application loaders. Apple didn't contest that fact. Plaintiffs seek

---

[1] To be fair, opposing counsel's version of reality centers around finishing a JD and attaining partner status.

enabling of that enterprise function to all users. Plaintiffs seek due process with App Store rejections – which does not require iOS modification. Should "sideloading" be permitted by an injunction, the reengineering would be trivial, because iOS is based on MacOS, which has sideloading functionality. We shouldn't believe Gibson Dunn's defenses – themselves based upon *zero evidence*. The Court must let Apple testify as to actual nature of iOS application loading.

9. "Plaintiffs have come again to this Court with a request for sweeping injunctive relief supported by *zero* evidence."
Plaintiffs included some 180 pages of evidence from the Congressional Subcommittee, news reports, and legislation (proposed or passed) from some 38 countries. Plaintiffs included 61 pages of Dr. Roberts credentials – willfully ignored by Gibson Dunn, so they could focus on their vendetta against Dr. Isaacs. Furthermore, Plaintiffs noticed "evidentiary materials to be presented" at the hearing. Plaintiff has evidence, which Gibson Dunn has chosen, repeatedly, to ignore (at best) or dishonestly refute. It is time for a hearing. Plaintiff has a right to obtain actual testimony, as opposed to lawyer pleadings, from the witness itself. See *Dkt 66-68* Notices – "time honored principal" to obtain relevant testimony in a hearing.

10. "[A 65-80% market share] assertion is contrary to Judge Gonzalez Rogers' finding in Epic that "Apple does not have market power in the smartphone market." Public estimates peg Apple's share of U.S. smartphone sales around 50%"

    Gibson Dunn's market share pleadings seem less than trustworthy. The most recent public information states that Apple has a 64% market share in US smartphones. https://www.counterpointresearch.com/us-monthly-smartphone-sell-highlights-recovery/ . Judge Gonzalez Rogers' statement applied to the international smartphone market, where Apple has a smaller share than Plaintiff's alleged US smartphone market. Apple should provide live testimony as to their US market share; they certainly know what it is, despite filing outdated news suggesting 50%. An antitrust proceeding is the one and only example where Apple downplays its market share. This is an important injunction concerning censorship of apps that affects every American; knowing the truth about Apple's disputed US market share is important. Live testimony is urgently required.

11. "state civil procedures do not apply in federal court," *Castillo-Antonio v. Hernandez,* 2019"

    This quote is from a defendant in a denied motion to dismiss. Plaintiff will not surmise as to why Gibson Dunn quoted the losing side, except to say it could have been an attempt to avoid discussion of *Erie Doctrine*. The *Castillo* decision upholds "supplemental state jurisdiction" in a federal court. In Coronavirus Reporters' case, the UCL claim has an even stronger argument than *Castillo-Antonio,* because of differences in state-federal threshold requirements for Sherman/UCL claims, as compared to that cases' ADA/Unruh claims.
    It appears Gibson Dunn wishes to invoke a deprecated interpretation of *Erie Doctrine*, without mentioning it by name, which would lead to failure of their argument. As William & Mary Law Review points out in an 8-page flowchart, *Erie Doctrine* interpretation hinges on numerous state-federal interactions: https://scholarship.law.wm.edu/cgi/viewcontent.cgi?article=3031&context=facpubs.

In Plaintiff's case, there are state claims for UCL (pending amendment) and state fraud claims. Moreover, the Apple DPLA invokes California law and California venue. In the case of CCP Section 1987, it does not present any conflict with FRCP 45 Subpoena federal guidelines. CCP 1987 adds support of California legislative intent that a party – here Apple – need not be issued a subpoena for its relevant testimony that should be reasonably available to the opposing party in the case of contested facts – which is certainly the case here. In all, the Court should allow Plaintiff's notices to remain valid. But either way, the point is moot[2]; Plaintiff issued a subpoena which remains in effect under FRCP 45.

12. "The App Store is not a "separate and distinct" [product] but rather technically integrated "component[s] of the full suite of services offered by iOS and the App Store."

    Gibson Dunn creatively, and falsely, argues that the App Store is in integral part of an operating system. But it is not. A commercial store has never been considered a core component of any operating system. While Plaintiff can cite https://en.wikipedia.org/wiki/Operating_system Wikipedia, live testimony by Eddy Cue is preferable and necessary. Mr. Cue is a Duke-trained computer scientist, who certainly knows basic components of an operating system. He is Apple's highest ranked computer scientist. The fact that Apple has disabled portions of core OS components (identified by Wikipedia as "Program Execution" and "Disk access" and "GUI" components) and made their store the limited-functionality surrogate to these longstanding functions, does not mean that "App Store" is not a separate product pursuant to Sherman. Gibson Dunn uses creative language such as "full suite of services," to avoid an outright lie. Mr. Cue's testimony is imperatively needed to clarify that the App Store is indeed improperly tied to the iOS operating system.

13. "Plaintiffs have failed to offer any evidence that the alleged ties "ha[ve] a substantial and anticompetitive effect that harms consumers" in the relevant tied product markets."

    Plaintiffs have clearly alleged – in 180 pages of evidence from 38 countries and the US House and Senate– that Apple restricts innovation and selection and output by censoring apps. This also raises prices in the case of paid apps. It may have cost lives, in the case of Coronavirus Reporter's improper denial, based on Apple's own research that contact-tracing saves lives. Plaintiffs have offered significant and sufficient evidence. Plaintiff seeks an injunction based upon an "international consensus" of improper App Store restraints; Apple has remained quiet on this matter – without a single word to refute the fact that such "international consensus" exists.

14. "Plaintiffs' multiple markets are "inconsistent with [the] recognition that the App Store constitutes a two-sided transaction platform," Plaintiffs are certain to fail on the merits."

    Plaintiff's monopsony theory, that Apple is the only purchaser of apps, suggests that Plaintiff's market definitions are not necessarily two-sided. There is not always an opposing, symmetric transaction, under Plaintiff's theories. Take for example the movie streaming example Plaintiff

---

[2] Apple has been served with an FRCP 45 subpoena, and CCP 1987 notices. Either one would require live testimony. The FTC was only served with a CCP 1987 notice. Plaintiff hereby notifies the Court that it has retracted the notice to the FTC, because they are not within 100 miles of the Court.

cites. A movie distributor may purchase a "free movie"(ie app) from an author. That is a separate transaction from each subsequent viewing of the movie (ie app download). A movie author may be overpaid or underpaid (as alleged in the FAC) for the movie by the monopsony purchaser.

Apple here plainly intends to confound and confuse the court and the public on this matter. Notably, *Epic* and many other cases *do* allege a two-sided symmetric transaction, because they focus on the percent commission for *each app* purchase. But Plaintiff's theory – which Gibson Dunn doesn't want anyone to understand – is that the quantity and price of app downloads is not directly linked to the Apple monopsony purchase of the free app. This is the fundamental reason why Plaintiff's theory works for both paid and free apps, and why Judge Gonzalez Rogers deemed the case unrelated to the two-sided paid app cases. In short, whether or not the App Store is two-sided or not for free apps is a matter for a jury to decide, after reviewing the evidence. The Court should not rely upon Defendant's false assertion that a monopsony buyer of apps must necessarily invoke a two-sided symmetric transactional platform.

15. "<u>Plaintiffs have not noticed a motion for leave to amend the FAC.</u>"

Plaintiff's Amended Motion for Preliminary Injunction motioned the court to append a two-page appendix to the FAC. The Court may construe this technically as a Motion for Leave to Amend, which should be freely granted as justice requires.

16. "<u>The *Noerr-Pennington* doctrine precludes liability arising from alleged lobbying.</u>"

The FTC, a party to this lawsuit, has authoritative documentation on the boundaries of *Noerr-Pennington* in antitrust matters https://www.ftc.gov/sites/default/files/documents/reports/ftc-staff-report-concerning-enforcement-perspectives-noerr-pennington-doctrine/p013518enfperspectnoerr-penningtondoctrine.pdf

In short, the doctrine does not apply here because Apple directly seeks to harm its competitors and block their apps, improperly under Sherman, by using illegal *quid pro quos* and other tactics by lobbing firms. This matter certainly requires discovery to determine applicability of any such defense, before precluding liability.

17. "<u>The proposed injunction also seeks to trample Apple's intellectual property rights</u>."

Apple censors apps, to control the behavior of end users, who have already paid all inherent royalties on any relevant Apple IP rights. As already argued, Apple makes a "scary proposition" that a patent allows it to control an end user. No TV manufacturer has ever said its patents allow it to determine what kind of movies an end-user can watch on their "patented" TV technology. Apple's argument is a first – and it is knowingly false, if not "scary." Apple has not responded to this assertion, raised by Plaintiff's over a month ago, that a patent cannot be used to justify censorship. It should be deemed waived, and Apple should be estopped from making further such extraneous, desperate IP arguments.

18. "<u>Plaintiffs identify no injury to developers like themselves.</u>"

> Plaintiffs have pleaded that they lost income from the denial of their apps. They lost leadership positions that cannot be replaced with money, in the case of Coronavirus Reporter. As the first COVID-19 app, certainly its founders would have been able to contribute in leadership response to the pandemic. Furthermore, Plaintiffs have been censored and squelched – as have countless other class members. Their profession – as computer developers – is irreparably harmed by diminished competition. Finally, as US citizens, the economic output reduction (China has an app store 4x the size of Apple's) caused by Apple's Sherman Act violations harms the Plaintiffs.

19. "For the second time, Plaintiffs submit *no evidence* in support of their motion."

    Apple and Gibson Dunn falsely assert – on at least three different occasions – that Plaintiff has no evidence. Plaintiff has filed hundreds of pages of exhibits, which Gibson Dunn denies the very existence of. Even Apple's own declarations constitute evidence in support of Plaintiff's motion (i.e. China app store and Trystan declaration re Roberts). This is not the first time Gibson Dunn has denied the existence of documents (see Dr. Isaacs' SCOTUS petition). They seem to know they can get away with it. Moreover, Plaintiffs noticed "evidentiary materials" to be presented at trial, including live testimony. Dr. Roberts' letter evidences institutional support and oversight of the app.

20. "Plaintiffs' notices also suggest that they intend to call an additional, undisclosed witness for live examination."

    Exhibit A clearly indicates that Plaintiffs informed Apple that they intend to call four witnesses: Dr. Robert Roberts, Dr. Jeffrey Isaacs, Mr. Eddy Cue, and Mr. Trystan Kosmykna. Gibson Dunn's reference to "surprise" and "undisclosed" witnesses is unsubstantiated.

21. Furthermore, the Court can take judicial notice of a statement Mr. Tim Cook made earlier this week concerning Apple's antitrust position:

    "The main thing we're focused on in the App Store is keeping our focus on privacy and security. These are the two major tenets that have produced a very trusted environment where consumers and developers come together. Consumers can trust the developers and the apps are who they say they are." (*https://www.macrumors.com/2021/10/28/apple-ceo-tim-cook-app-store-regulation/*)

    Mr. Cook's position appears to be contradictory to Gibson Dunn's pleadings in that it suggests, in "working with regulators concerns," that Apple is no longer focusing on "controversial" subjective app censorship, and "focusing" on their right to screen apps for malware, users' privacy and security. There is no reasonable "privacy" or "security" issue with the Coronavirus Reporter App, which was developed with Dr. Roberts' institutional resources at University of Arizona. Live testimony is necessary to resolve this apparent conflict – has Apple taken the position last week that, in working with regulators, they are now "focusing" on privacy and security (what Judge Gonzalez Rogers' called "non-controversial app denials")? Or does Apple still wish to censor apps using their subjective, "controversial" criteria, such as their opinion of Dr. Roberts' institutional credentials, Parler's political base, or countless other non-privacy, non-security rejections? Mr. Cook's statement appears to contradict Gibson Dunn's core legal defense. Live testimony is indicated.

      Their opposition begins "*After 11:00 p.m. on October 25, 2021.*" The actual circumstances of the filing's timing are that this case requires coordination with individuals in three time zones – Apple in Pacific Standard Time, the Plaintiffs' counsel, on Eastern Standard Time, and Dr. Robert's representative in Greenwich Mean Time. Dr. Roberts' representative, a bioethics attorney in London, routinely participates in this case and related legal drafting. She participated in a settlement conference with Apple in April, and in September participated in a two-hour discussion to recap a Meet & Confer on sanctions against Gibson Dunn. The bottom line is it is not possible for all parties to communicate during the 9-5 workday. For example, the following messaging transcript took place at 6PM EST, but 23:00GMT, in which Dr. Robert's representative asked that Counsel further emphasize (in this document) the evidence of institutional backing for Coronavirus Reporter:



      Dr. Roberts' representative confirmed during this discussion that he would like to, and hereby requests, to offer live testimony directly to the Court. The representative stated that Dr. Roberts is willing to appear in person or via videoconference. On the other hand, Gibson Dunn seeks to avoid any real testimony or truth, for that matter, and dismiss this entire case largely because a co-plaintiff had a head injury a decade and a half ago. An evidentiary hearing is in the interest of justice.

Plaintiff requests three to four hours of time allocation during the November 4 scheduled injunction hearing, pursuant to Local Rule 7.6. This should allow the Court to resolve most, and hopefully all, of the twenty-one enumerated contested facts above. Resolution of these contested facts during an efficient evidentiary hearing is in the interests of judicial economy. In the alternative, the parties' pleadings will further diverge, as opposing counsel seems to deny even the most evident of truths. Apple has signaled that it intends to stall and delay most antitrust cases, even appealing a "favorable" ruling in *Epic*. Prompt resolution of the above enumerated items will certainly focus discovery and prevent further escalation of these disputes. Three or four hours of testimony could save the court much more time in the adjudication of the preliminary injunction alone. Other motions – from a motion to dismiss, to possible motions to compel and motions for sanctions, will likely be averted or streamlined by this early live testimony.

Pursuant to Plaintiff's motion for preliminary injunction, requesting "evidentiary materials" i.e. evidentiary testimony, and in the interests of judicial economy, this important App Store censorship matter of national importance should be adjudicated with three to four hours of live testimony.

Respectfully submitted, this 31th day of October, 2021[3].

/s/ Keith Mathews

---

[3] The opposition states it is awaiting a motion from Plaintiff for an evidentiary hearing. Plaintiff's position is the underlying preliminary injunction motion also constitutes a motion for an evidentiary hearing. If the Court determines otherwise, Plaintiff hereby notices intent to submit this notice as an independent Expedited Motion for Evidentiary Hearing.

Keith Mathews, *Pro Hac Vice*
Counsel for Coronavirus Reporter, Primary Productions,
CALID Inc, and Proposed Class Members
Associated Attorneys of New England
PO Box 278
Manchester, NH 03105
Ph. 603-622-8100
keith@aaone.law

## CERTIFICATE OF SERVICE

I, Keith Mathews, do declare as follows:

I certify that a copy of the foregoing **REPLY IN SUPPORT OF LIVE TESTIMONY** was delivered electronically to counsel for the Defendants with counsel and emailed to those without known counsel.

Executed on this 31th day of October, 2021.

/s/ Keith Mathews
Keith Mathews, *Pro Hac Vice*
Associated Attorneys of New England
PO Box 278
Manchester, NH 03105
Ph. 603-622-8100
keith@aaone.law