Keith Mathews

Associated Attorneys of New England

PO Box 278

Manchester, NH 03105

Ph. 603-622-8100

keith@aaone.law

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORONAVIRUS REPORTER,<br>CALID INC,<br>PRIMARY PRODUCTIONS LLC,<br>DR. JEFFREY D. ISAACS,<br>on behalf of themselves and all others similarly situated<br><br>                         Plaintiffs,<br><br>vs.<br><br>APPLE INC.,<br>FEDERAL TRADE COMMISSION<br><br>                      Defendants. | Case No. 3:21-cv-05567-EMC<br><br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT APPLE, INC.'S MOTION TO QUASH**<br><br><br>The Honorable Edward M. Chen |

## **PLAINTIFFS' OPPOSITION TO APPLE'S MOTION TO QUASH SUBPOENA**

Gibson Dunn opposes the pending injunction on the purported grounds that Plaintiffs have no evidence. In moving to quash a valid subpoena ordering Mr. Eddy Cue's testimonial evidence on twenty-one disputed facts, Gibson Dunn incredulously now motions that injunction *trial testimony* constitutes *sanctionable early discovery*.

This frivolous MTQ represents precisely the litigation conduct rebuked by the Congressional Subcommittee investigation of civil Sherman antitrust enforcement. Wealthy technology companies, specifically Apple, have $3 trillion to retaliate[1] against censored developer-scientists like Coronavirus Reporter, who simply wanted to offer a world-renowned[2] cardiologist's help at the outset of the COVID-19 pandemic. Gibson Dunn and Apple's Motion to Quash even trumps the obstacles pointed out by the Subcommittee:

"In the decades since Congress enacted these foundational statutes, the courts have significantly weakened these laws and made it increasingly difficult for federal antitrust enforcers and private plaintiffs to successfully challenge anticompetitive conduct and mergers. By adopting a narrow construction of "consumer welfare" as the sole goal of the antitrust laws, the Supreme Court has limited the analysis of competitive harm to focus primarily on price and output rather than the competitive process—contravening legislative history and legislative intent. Simultaneously, **courts have adopted the view that underenforcement of the antitrust laws is preferable to overenforcement, a position at odds with the clear legislative intent of the antitrust laws**… In recent decades, the Justice Department and the Federal Trade Commission have contributed to this problem by taking a narrow view of their legal authorities and issuing guidelines that are highly permissive of market power and its abuse. **The overall result is an approach to antitrust that has significantly diverged from the laws that Congress enacted**." (*Subcommittee, Page 390*)

---

[1] The Motion to Quash contains unacceptable violent remarks that live testimony would amount to an "ambush" by Dr. Roberts. The actual source of mayhem is Apple and Gibson Dunn's pleadings that aim to scatter the merits of the case. Gibson Dunn's arguments are increasingly tiresome – take for example their assertion that no "US smartphone market" exists because a "tablet" could be in this market, despite Plaintiff specifically excluding "feature phones, tablets" and other non-smartphone devices.

[2] Dr. Robert Roberts also looked forward to working on this project with his son, a front-line Emergency Room physician with Georgetown degrees in public health, and his daughter, a bioethics attorney. What should have been both a family-backed and institutionally backed COVID-19 tracking app, indeed the first of its kind in March 2020, has turned into uncalled for disrespect from Apple and Gibson Dunn directed at this innocent family and their colleagues. Apple has shamefully accused the family of bringing this lawsuit "in disregard of the law," but now cower away from a trial on the merits – and putting their billionaire witnesses under oath. Dr. Roberts has agreed to testify and be cross-examined.

Last month, a United States District Court in Florida visited the issue of permitting live testimony at a preliminary injunction hearing. Their conclusion – had a party requested it, as Coronavirus Reporter has, that District would have "absolutely permitted it:"

> "When Plaintiffs originally filed their motion, this Court held an expedited scheduling conference and set a briefing schedule to allow the parties sufficient time to prepare for the hearing. This Court by no means limited the parties to declarations and written argument. Had the parties requested to proceed with limited discovery or to present live witnesses at the hearing on Plaintiffs' motion, this Court would have absolutely permitted it. Indeed, this Court routinely allows for limited discovery ahead of preliminary-junction hearings and hears live witness testimony at such hearings. *See, e.g.*, *Aderant N. Am., Inc. v. Yezovich*, Case No. 4:21cv343-MW/MAF (permitting limited discovery ahead of hearing); *21st Century Oncology, Inc. v. Moody*, 402 F. Supp. 3d 1351, 1361 (N.D. Fla. 2019) (Walker, C.J.) ("During the [preliminary-injunction] hearing before this Court, the parties presented lengthy expert testimony . . . ."); *League of Women Voters of Fla. v. Scott*, 366 F. Supp. 3d 1311, 1314 (N.D. Fla. 2018) (Walker, C.J.) (describing testimony from evidentiary hearing on motion for preliminary injunction); *Hoffer v. Jones*, 290 F. Supp. 3d 1292, 1294 (N.D. Fla. 2017) (Walker, J.) (order granting preliminary injunction after five-day hearing that included testimony from expert witnesses, prison officials, and inmates)." *Dream Defenders v. Ron Desantis* (Northern Florida District, 4:21cv191-MW/MAF)

Apple's entire motion to quash Mr. Cue's subpoena is falsely premised on the erroneous and inherently misleading notion that a valid FRCP 45 *trial or hearing subpoena* must be quashed because it somehow constitutes an early *discovery deposition*:

> "Any discovery request is therefore barred by Rule 26(d)(1). **Subpoenas are discovery devices**…Plaintiffs' October 22 subpoena—whatever they have tried to label it—is plainly an **attempt to obtain premature discovery** in **violation of Rule 26(**d)(1) and in **disruption** of "the orderly course of justice…issuance of Rule 45 subpoenas where "the parties have not yet conferred as required by Rule 26(f)" "clearly violates" Rule 26(d)(1) and thus warrants a protective order quashing the subpoenas).. **That the subpoena seeks discovery is plain** from its broad sweep. **Apple notes that a willful failure to "abide by discovery rules" has been cause for considering the *imposition of sanctions* in this District."**(*MTQ, p. 6-8*).

A subpoena for a live witness at hearing/trial is not a discovery request. The FRCP Advisory Committee (1937 Notes) makes clear that FRCP Rule 45 governs two types of subpoenas – *ad testificandum* and *duces tecum*:



2007; Apr. 16, 2013, eff. Dec. 1, 2013.)

**NOTES OF ADVISORY COMMITTEE ON RULES—1937**

This rule applies to subpoenas *ad testificandum* and *duces tecum* issued by the district courts for attendance at a hearing or a trial, or to take depositions. It does not

As elaborated by the Office of the Chancellor at UC Berkeley, a subpoena may in fact be one of three kinds:



The subpoena issued to Mr. Cue operates as an *ad testificandum,* or witness subpoena, to appear at a hearing. It is simply not a discovery device, nor is it a deposition subpoena. On these grounds alone, opposing counsel's entire Motion to Quash fails because it falsely asserts Plaintiffs seek to engage in early discovery.

Incontrovertibly, the relevant testimony of a witness at a hearing or trial is not discovery, despite Gibson Dunn's gross misunderstanding. Rather, witness testimony is a time-honored right in our justice system: "time honored principle that under our system of justice every litigant is entitled to another person's relevant and non privileged testimony in a judicial proceeding." *Owens v. QVC*, 221 F.R.D. 430, 432 (E.D. Pa. 2004).

Federal Rule of Civil Procedure 43 governs the taking of testimony. FRCP 43(c) explicitly permits the Court to hear live testimony in a motion for preliminary injunction:

> FRCP Rule 43 <u>Taking Testimony</u> Section (c) *Evidence on a Motion*. When a motion relies on facts outside the record, the court may hear the matter on affidavits or may hear it wholly or partly on oral testimony or on depositions.

> As the *Advisory Committee Notes-1996* state, "The importance of presenting live testimony in court cannot be forgotten. The very ceremony of trial and the presence of the factfinder may exert a powerful force for truthtelling. The opportunity to judge the demeanor of a witness face-to-face is accorded great value in our tradition."

 In this motion, Plaintiffs have identified no less than twenty-one contested facts (see below) falsely asserted by Gibson Dunn. **Plaintiffs had no way of knowing, at the time of filing the injunction, that Gibson Dunn would argue such falsities, such as Dr. Roberts not being a co-founder, not having institutional support from University of Arizona, Apple only having 50% market share, or the App Store being a "fundamental" component of an operating system**. As such, the Court must allow due process to occur, and resolve these contested facts through live testimony. Plaintiffs (*see Docket 72-1*) sought to avoid live testimony by stipulating with Apple to depose Mr. Cue. Apple refused to stipulate to depositions, and refused to Meet & Confer on a Motion to Compel.  But the reality is, even if depositions had taken place, Gibson Dunn's defenses deny such basic truths that live testimony by Apple would almost certainly still be necessary. Furthermore, Apple missed their opportunity to object to Plaintiff's motion for "evidentiary materials," ie testimony at the preliminary

injunction, and cannot belatedly do so in an ill-founded Motion to Quash. When viewed in light of the substantiated allegations of false statements in Gibson Dunn's pleadings, their refusal to stipulate to depositions, and their waiver of objection to evidentiary hearing, under FRCP Rule 43 live testimony is fully indicated.

The reality is, Gibson Dunn knows the difference between a subpoena to appear at trial-hearing, versus a subpoena to show for a deposition. Just a few pages after falsely accusing Plaintiffs of conducting early depositions, opposing counsel notes that "**The apex doctrine applies both to deposition subpoenas and subpoenas for hearings or trials.**" *(Footnote 7 on Page 10)*. The Court should strike the Motion to Quash as it is clearly a dilatory tactic, meant to incur costs on the opposing side and to improperly shield Apple from having to testify about its monopoly during an internationally important injunction hearing. Gibson Dunn doesn't want a trial on the merits, they want a dismissal on creatively false pleadings. Enough is enough. Plaintiffs didn't attempt to illicitly conduct[3] pre-Rule 26 depositions, and Gibson Dunn's scandalous assertion should itself be sanctioned for impropriety. This is but the latest in a string of unfair accusations against Dr. Roberts. There are contested facts about Apple's censorship of apps. Plaintiffs have a right to obtain testimony from the witness, Apple.

Gibson Dunn's attempt to get Apple off the hook with the Apex Doctrine doesn't fare any better than their attempt to cast a trial subpoena as a deposition subpoena. They have provided zero case law that

---

[3] Opposing counsel did not properly Meet & Confer on the underlying Motion to Quash, nor the pending Motion to Dismiss, nor 4 Meet & Confer requests to compel from Dr. Isaacs. In this case, at 6AM an irate, maniacal sounding Mark Perry shouted at counsel, in plain violation of the Rules of Professional Conduct "WHAT AUTHORITY DO YOU HAVE TO CONDUCT DISCOVERY BEFORE RULE 26?" As the MTQ surprisingly acknowledges, Plaintiff counsel explained "Of course" a Rule 26 conference had not taken place, but the Motion for Preliminary Injunction stood on its own as a request for evidentiary live testimony. After angrily yelling, Mr. Petty then disconnected the phone, about 9 minutes into the call. Despite Mr. Perry's inappropriate tone, Plaintiffs provided the above statutory authority by email after the call, which was ignored in the MTQ. Gibson Dunn knows this is not a discovery dispute, it is a dispute over live testimony at an injunction hearing-trial. The firm should be reprimanded, but all Plaintiffs ask for today is that their COVID-19 antitrust claims proceed on the merits, with appropriate testimony.

the relevant testimony of a party at a hearing or trial is subject to Apex Doctrine. The case they do site, *Pinn*, referenced a non-party to the lawsuit, and in *Pinn,* no attempt had been made to depose that non-party. In this case, in contrast, Plaintiff's wish to obtain testimony of a party (Apple), and made diligent efforts to stipulate as to a limited deposition. Because Gibson Dunn has no case law in support of their argument, it must be rejected. Furthermore, it is noted that Apex Doctrine is hardly black letter law, and even when there is some precedent, "vast discretion" is afforded to the Court to invoke, or to not invoke, the doctrine. In short, there is no "rule" that apex depositions cannot take place, and there certainly is no rule or precedent that a party – at a hearing – must be granted apex exemptions from testifying. This is but another attempt of Apple to avoid exposing the truth at trial and arriving at a decision on the merits.

But even if the Court were to consider the doctrine, the argument stacks against the Defendant. Mr. Cue played a fundamental role in the development of the App Store. At issue in this case is whether the App Store is an integral part of the iOS operating system. As the highest ranked computer scientist, who participated in the App Store development, Mr. Cue's testimony is directly relevant. Moreover, *some* senior officer with binding authority for Apple must testify as to the myriad twenty-one contested facts pleaded by Gibson Dunn. Plaintiffs waived their right to have CEO Tim Cook testify, and properly focused on the right person for this case – Mr. Cue. Apple's own assertion – that Mr. Cue was deposed in *Epic* – defeats their convenient new argument that he does not possess knowledge relevant to App Store antitrust actions. But if Apple prefers, Plaintiff's will allow Mr. Cue to be replaced with Mr. Cook.

Furthermore, Dr. Roberts is planning, and has respectfully requested, to testify at the injunction trial. Invoking the Apex Doctrine would create an untenable disparity. Dr. Roberts is an apex-level

executive. He is Chair of Cardiovascular Research at University of Arizona. He is Director of Cardiovascular Genetics at Dignity Health. He served most of last decade as CEO of the University of Ottawa Heart Institute ("Ottawa Heart"). He served much of his career as Chief of Cardiology at Baylor College of Medicine. There is no reason why Apple should be permitted to assign a junior-level employee to counter Dr. Roberts' apex-level testimony, plain and simple.

Gibson Dunn also asserts a last-ditch argument that Plaintiffs ignored public testimony from *Epic,* and should obtain all relevant testimony by reviewing Mr. Cue's prior deposition. This argument fails for numerous reasons. First, Plaintiffs' claim theories and facts differ substantially from *Epic*, a video game company. This case has been deemed unrelated to other antitrust cases. As Judge Gonzalez Rogers all but said, *Epic* did a less than stellar job prosecuting their case. Gonzales Rogers said another antitrust Plaintiff, with a different set of facts, could indeed prove a Sherman violation. This case might just be that case. Plaintiffs are under no obligation to limit themselves to *Epic* testimony, which apparently cost that firm $60 million dollars – with less than ideal results. Finally, it is worth pointing out that Plaintiffs *do* advance evidence from the *Epic* case – namely Judge Gonzalez Rogers' finding that Apple Executive Craig Federighi's testimony was hardly candid, and that the MacOS is a "safe platform."

It is worth noting that the Court has already been briefed on the subpoena and CCP 1987 notices, in the form of a notice, response, and reply to notice. The underlying Motion to Quash is largely redundant, because the only novel issue it raises is the idea of depositions being early discovery. But there is no deposition sought here, only live testimony, which is not discovery under even the most liberal of definitions. Apple has simply ignored the twenty-one contested facts set forth

in notice briefings. Out of an abundance of caution, Plaintiffs hereby incorporate said Notice Reply, which Apple has largely failed to address in their Motion to Quash:


------ (Reply Notice Begins Here)

Plaintiff Coronavirus Reporter filed a Notice of Motion for Preliminary Injunction on August 8, 2021. Plaintiff noticed that the motion would be based upon "evidentiary materials to be presented at hearing." (*Docket* #20 p. 2). As counsel informed Apple on August 11, the evidentiary testimony would include depositions by Mr. Eddy Cue and an additional witness with "extensive knowledge of Apple's Covid Program." On August 13, Gibson Dunn responded that "Apple will not stipulate to the discovery you propose at this time." (*Exhibit A*, p.1). In the two months since mid-August, Gibson Dunn further has refused to Meet & Confer on spoliated evidence (*Ibid.*), Leave to Amend a State UCL claim (*Ibid.*, page 2), and allegations of false statements in their MTD and Objection to Preliminary Injunction. As a result, there exist contested facts, and live testimony is the most efficient way to resolve the matter. Apple's objection to the Preliminary Injunction does not object to "evidentiary materials" being presented at the hearing. As such, the company waived objection to Plaintiff's motion for an evidentiary hearing. Because there are contested facts, and because Apple did not object to an evidentiary hearing, good cause exists under Local Rule 7-6 to permit live testimony.

Unfortunately, it has become necessary to enumerate the following a non-exhaustive list of false and/or misleading statements pleaded by Gibson Dunn; resolution of these important issues will shed light on the merits of the preliminary injunction, and therefore necessitate live testimony at the Preliminary Injunction hearing.

1. "Coronavirus Reporter app—which is not affiliated with any apparent, recognized healthcare institution as Apple's guidelines required."

The app was at all times affiliated with University of Arizona and Dignity Health (the largest hospital network on a revenue basis) (FAC Exhibit B). On March 6, 2020, Apple was (See *Kosmynka Declaration*) provided with Coronavirus Reporter App's healthcare credentials, including Dr. Robert Roberts and Dr. Brandon Robert's status as app co-founders. Dr. Robert Roberts further provided a letter indicating the app had institutional support: *"We will review*

*the epidemiological data gathered by this app in conjunction with academic physician scientists at my own institution and elsewhere, and will continually adapt the app based upon scientific and medical advice from experts."*

As such, Plaintiffs have a clear likelihood to prevail – not only should Apple not have banned/censored all startups, but they certainly shouldn't have banned the first COVID-19 tracking app, which was supervised by a renowned cardiologist who is a professor at three venerable institutions.

Live testimony is urgently indicated because an actual Apple witness will not corroborate the knowingly false statements Gibson Dunn pleaded – that the app had no medical credentials (other than Dr. Isaacs', the app programmer) and no institutional support.

2. "Plaintiffs have submitted no evidence concerning the nature of their businesses… At least before this app, Plaintiffs' app businesses were not health-services focused."

Again, this is simply untrue. Apple/Trystan Kosmynka's own declaration proves that CALID provided Apple of evidence on March 6, 2022 of their former health care projects, which included FactMed, an FDA side effect bioinformatics site used by "millions," and the CALID app, which focused on telemedicine. Live testimony will again disprove Gibson Dunn's knowingly false pleadings that seem unsupported by Apple's own declarations.

3. "Dr. Isaacs was suspended and ultimately dismissed for harassing a classmate."

Gibson Dunn knows that Dr. Isaacs was acquitted of any allegations at USC Keck School of Medicine. If presented with the acquittal documents on the stand during live testimony, Apple will certainly acknowledge they exist, unlike the dishonest assertion to the contrary by Gibson Dunn. Apple will also acknowledge evidence from the American Academy of Medical Colleges and the New Hampshire Employment Tribunal which determined that Dr. Isaacs was acquitted and obtained expungement of said charges. In fact, said charges were never for "harassment" or "stalking," but rather, an academic finding of "failure to possess essential characteristics of a student physician." It is unfair to Dr. Isaacs to allow Gibson Dunn (see docketed Supreme Court petitions) to deny the acquittal and expungement, under so-called *Noerr-Pennington* Immunity; Apple must testify as to whether or not Dr. Isaacs' medical credentials formed a basis for their rejection of the App.

4. "Isaacs has waged an unsuccessful litigation campaign across federal courts."

Isaacs filed an action against the Department of Justice seeking an investigation into Dartmouth and Jim Yong Kim's spoliation of evidence. Several months after the White House and DOJ were provided with the Complaint, Jim Yong Kim resigned from the World Bank Presidency. Upon information and belief, Isaacs' litigation, intended to enforce evidence spoliation laws, succeeded in its cause.

Beyond federal court, two competent state authorities adjudicated in Dr. Isaacs' favor, determining allegations against him were acquitted and expunged, after conducting full investigations and tribunals (with live testimony). In short, conflicting interpretations of Dr. Isaacs acquittal have one clear pattern: when live testimony was permitted, Dr. Isaacs'

acquittal was upheld; when procedural grounds blocks trial on the merits, dishonest pleadings prevailed.

Gibson Dunn characterizes Dr. Isaacs' federal litigfagation falsely as "unsuccessful" which in fact references Dr. Isaacs' federal lawsuit against their firm – dismissed on procedural grounds for statutes of limitations – never having reached a jury on the merits. Moreover, the firm is alleged to have lied to a panel of three Ninth Circuit judges, and the United States Supreme Court is currently reviewing this matter.

5. "On March 19, 2021, it sought to overturn this decision a second time by pointing to its alleged collaboration with a physician, Dr. Robert Roberts."

Here, Gibson Dunn attempts to falsely suggest that Dr. Roberts was neither co-founder nor Chief Medical Officer of the Coronavirus Reporter App. They do so, as Law360 astutely noticed, by spending a page on Dr. Isaacs, but only one mere reference to Dr. Roberts: https://www.law360.com/articles/1434611. As Dr. Roberts' representative stated (see last page of this document), such an assertion is not reasonable.

6. "The FAC omits that Isaacs "was enrolled [at Vanderbilt Law School] for just under a year,"

This dishonest attempt to discredit Dr. Isaacs is obvious. Dr. Isaacs, by all standards, possesses multi-disciplinary talents directly relevant to this proceeding. He obtained a neurosurgeon level score on the National Boards, and completed an MD with honors rotations at prestigious medical schools like Mount Sinai, Cleveland Clinic, and St. George's London. He had a perfect 800 math SAT. He is a commercial instrument rated pilot. He has a highly competitive MBA from Insead-Wharton Singapore in international administration. He worked in technology investment banking for Merrill Lynch Bank of America. He worked as a venture capital analyst for a Saudi Royal family in 1999 on the first internet IPO in Europe. He worked on mRNA sequencing apps in high school, in 1994. He had a full scholarship to Vanderbilt Law. His apps and patents have generated generated nearly one hundred million dollars in economic efficiencies. He has an honors Computer Science degree from Dartmouth. But despite all of this, and some ten years in post-graduate studies, and a near record seventeen years in post-grad studies should he complete a neurosurgery residency, Gibson Dunn[4] (a RICO defendant of Dr. Isaacs) victim-blames him for only dedicating one year to study law.

7. "There is no evident reason why any attorney from Gibson Dunn would "be called as a witness in this case."

As asserted above, Gibson Dunn defied two competent authorities, and the plain language of a court-ordered federal settlement acquittal, and falsely represented to this Court (and the Ninth Circuit) that nothing acquitted Isaacs in a disputed USC controversy. They are certainly a witness to this case, because they have deemed Dr. Isaacs' medical credentials as relevant to the App Store litigation.

---

[4] To be fair,  opposing counsel's version of reality centers around finishing a JD and attaining partner status.

8.  "Plaintiffs ask the Court to compel Apple to reengineer iOS itself."

    No re-engineering necessary to comply with the Injunction. Apple iPhone enterprise users
    already have access to application loaders. Apple didn't contest that fact. Plaintiffs seek
    enabling of that enterprise function to all users. Plaintiffs seek due process with App Store
    rejections – which does not require iOS modification. Should "sideloading" be permitted by
    an injunction, the reengineering would be trivial, because iOS is based on MacOS, which has
    sideloading functionality. We shouldn't believe Gibson Dunn's defenses – themselves based
    upon *zero evidence*. The Court must let Apple testify as to actual nature of iOS application
    loading..

9.  "Plaintiffs have come again to this Court with a request for sweeping injunctive relief
    supported by *zero* evidence."
    Plaintiffs included some 180 pages of evidence from the Congressional Subcommittee, news
    reports, and legislation (proposed or passed) from some 38 countries. Plaintiffs included 61
    pages of Dr. Roberts credentials – willfully ignored by Gibson Dunn, so they could focus on
    their vendetta against Dr. Isaacs. Furthermore, Plaintiffs noticed "evidentiary materials to be
    presented" at the hearing. Plaintiff has evidence, which Gibson Dunn has chosen, repeatedly,
    to ignore (at best) or dishonestly refute. It is time for a hearing. Plaintiff has a right to obtain
    actual testimony, as opposed to lawyer pleadings, from the witness itself. See *Dkt 66-68*
    Notices – "time honored principal" to obtain relevant testimony in a hearing.

10. "[A 65-80% market share] assertion is contrary to Judge Gonzalez Rogers' finding in Epic
    that "Apple does not have market power in the smartphone market." Public estimates peg
    Apple's share of U.S. smartphone sales around 50%"

    Gibson Dunn's market share pleadings seem less than trustworthy. The most recent public
    information states that Apple has a 64% market share in US smartphones.
    https://www.counterpointresearch.com/us-monthly-smartphone-sell-highlights-recovery/          .
    Judge Gonzalez Rogers' statement applied to the international smartphone market, where
    Apple has a smaller share than Plaintiff's alleged US smartphone market. Apple should
    provide live testimony as to their US market share; they certainly know what it is, despite
    filing outdated news suggesting 50%. An antitrust proceeding is the one and only example
    where Apple downplays its market share. This is an important injunction concerning
    censorship of apps that affects every American; knowing the truth about Apple's disputed US
    market share is important. Live testimony is urgently required.

11. "state civil procedures do not apply in federal court," *Castillo-Antonio v. Hernandez*, 2019"

    This quote is from a defendant in a denied motion to dismiss. Plaintiff will not surmise as to
    why Gibson Dunn quoted the losing side, except to say it could have been an attempt to avoid
    discussion of *Erie Doctrine*. The *Castillo* decision upholds "supplemental state jurisdiction"
    in a federal court. In Coronavirus Reporters' case, the UCL claim has an even stronger
    argument than *Castillo-Antonio,* because of differences in state-federal threshold requirements
    for Sherman/UCL claims, as compared to that cases' ADA/Unruh claims.

It appears Gibson Dunn wishes to invoke a deprecated interpretation of *Erie Doctrine*, without mentioning it by name, which would lead to failure of their argument. As William & Mary Law Review points out in an 8-page flowchart, *Erie Doctrine* interpretation hinges on numerous state-federal interactions: https://scholarship.law.wm.edu/cgi/viewcontent.cgi?article=3031&context=facpubs. In Plaintiff's case, there are state claims for UCL (pending amendment) and state fraud claims. Moreover, the Apple DPLA invokes California law and California venue. In the case of CCP Section 1987, it does not present any conflict with FRCP 45 Subpoena federal guidelines. CCP 1987 adds support of California legislative intent that a party – here Apple – need not be issued a subpoena for its relevant testimony that should be reasonably available to the opposing party in the case of contested facts – which is certainly the case here. In all, the Court should allow Plaintiff's notices to remain valid. But either way, the point is moot[5]; Plaintiff issued a subpoena which remains in effect under FRCP 45.

12.  "The App Store is not a "separate and distinct" [product] but rather technically integrated "component[s] of the full suite of services offered by iOS and the App Store."

Gibson Dunn creatively, and falsely, argues that the App Store is in integral part of an operating system. But it is not. A commercial store has never been considered a core component of any operating system. While Plaintiff can cite https://en.wikipedia.org/wiki/Operating_system Wikipedia, live testimony by Eddy Cue is preferable and necessary. Mr. Cue is a Duke-trained computer scientist, who certainly knows basic components of an operating system. He is Apple's highest ranked computer scientist. The fact that Apple has disabled portions of core OS components (identified by Wikipedia as "Program Execution" and "Disk access" and "GUI" components) and made their store the limited-functionality surrogate to these longstanding functions, does not mean that "App Store" is not a separate product pursuant to Sherman. Gibson Dunn uses creative language such as "full suite of services," to avoid an outright lie. Mr. Cue's testimony is imperatively needed to clarify that the App Store is indeed improperly tied to the iOS operating system.

13. Plaintiffs have failed to offer any evidence that the alleged ties "ha[ve] a substantial and anticompetitive effect that harms consumers" in the relevant tied product markets."

Plaintiffs have clearly alleged – in 180 pages of evidence from 38 countries and the US House and Senate– that Apple restricts innovation and selection and output by censoring apps. This also raises prices in the case of paid apps. It may have cost lives, in the case of Coronavirus Reporter's improper denial, based on Apple's own research that contact-tracing saves lives. Plaintiffs have offered significant and sufficient evidence. Plaintiff seeks an injunction based upon an  "international consensus" of improper App Store restraints; Apple has remained quiet on this matter – without a single word to refute the fact that such "international consensus" exists.

---

[5] Apple has been served with an FRCP 45 subpoena, and CCP 1987 notices. Either one would require live testimony. The FTC was only served with a CCP 1987 notice. Plaintiff hereby notifies the Court that it has retracted the notice to the FTC, because they are not within 100 miles of the Court.

14. <u>Plaintiffs' multiple markets are "inconsistent with [the] recognition that the App Store constitutes a two-sided transaction platform," Plaintiffs are certain to fail on the merits.</u>"

Plaintiff's monopsony theory, that Apple is the only purchaser of apps, suggests that Plaintiff's market definitions are not necessarily two-sided. There is not always an opposing, symmetric transaction, under Plaintiff's theories. Take for example the movie streaming example Plaintiff cites. A movie distributor may purchase a "free movie"(ie app) from an author. That is a separate transaction from each subsequent viewing of the movie (ie app download). A movie author may be overpaid or underpaid (as alleged in the FAC) for the movie by the monopsony purchaser.
Apple here plainly intends to confound and confuse the court and the public on this matter. Notably, *Epic* and many other cases *do* allege a two-sided symmetric transaction, because they focus on the percent commission for *each app* purchase. But Plaintiff's theory – which Gibson Dunn doesn't want anyone to understand – is that the quantity and price of app downloads is not directly linked to the Apple monopsony purchase of the free app. This is the fundamental reason why Plaintiff's theory works for both paid and free apps, and why Judge Gonzalez Rogers deemed the case unrelated to the two-sided paid app cases. In short, whether or not the App Store is two-sided or not for free apps is a matter for a jury to decide, after reviewing the evidence. The Court should not rely upon Defendant's false assertion that a monopsony buyer of apps must necessarily invoke a two-sided symmetric transactional platform.

15. <u>"Plaintiffs have not noticed a motion for leave to amend the FAC."</u>

Plaintiff's Amended Motion for Preliminary Injunction motioned the court to append a two-page appendix to the FAC. The Court may construe this technically as a Motion for Leave to Amend, which should be freely granted as justice requires.

16. <u>"The *Noerr-Pennington* doctrine precludes liability arising from alleged lobbying."</u>

The FTC, a party to this lawsuit, has authoritative documentation on the boundaries of *Noerr-Pennington* in antitrust matters https://www.ftc.gov/sites/default/files/documents/reports/ftc-staff-report-concerning-enforcement-perspectives-noerr-pennington-doctrine/p013518enfperspectnoerr-penningtondoctrine.pdf

In short, the doctrine does not apply here because Apple directly seeks to harm its competitors and block their apps, improperly under Sherman, by using illegal *quid pro quos* and other tactics by lobbing firms. This matter certainly requires discovery to determine applicability of any such defense, before precluding liability.

17. <u>"The proposed injunction also seeks to trample Apple's intellectual property rights</u>."

Apple censors apps, to control the behavior of end users, who have already paid all inherent royalties on any relevant Apple IP rights. As already argued, Apple makes a "scary proposition" that a patent allows it to control an end user. No TV manufacturer has ever said its patents allow it to determine what kind of movies an end-user can watch on their

"patented" TV technology. Apple's argument is a first – and it is knowingly false, if not "scary." Apple has not responded to this assertion, raised by Plaintiff's over a month ago, that a patent cannot be used to justify censorship. It should be deemed waived, and Apple should be estopped from making further such extraneous, desperate IP arguments.

18. "<u>Plaintiffs identify no injury to developers like themselves.</u>"

Plaintiffs have pleaded that they lost income from the denial of their apps. They lost leadership positions that cannot be replaced with money, in the case of Coronavirus Reporter. As the first COVID-19 app, certainly its founders would have been able to contribute in leadership response to the pandemic. Furthermore, Plaintiffs have been censored and squelched – as have countless other class members. Their profession – as computer developers – is irreparably harmed by diminished competition. Finally, as US citizens, the economic output reduction (China has an app store 4x the size of Apple's) caused by Apple's Sherman Act violations harms the Plaintiffs.

19. "<u>For the second time, Plaintiffs submit *no evidence* in support of their motion.</u>"

Apple and Gibson Dunn falsely assert – on at least three different occasions – that Plaintiff has no evidence. Plaintiff has filed hundreds of pages of exhibits, which Gibson Dunn denies the very existence of. Even Apple's own declarations constitute evidence in support of Plaintiff's motion (i.e. China app store and Trystan declaration re Roberts). This is not the first time Gibson Dunn has denied the existence of documents (see Dr. Isaacs' SCOTUS petition). They seem to know they can get away with it. Moreover, Plaintiffs noticed "evidentiary materials" to be presented at trial, including live testimony. Dr. Roberts' letter evidences institutional support and oversight of the app.

20. "<u>Plaintiffs' notices also suggest that they intend to call an additional, undisclosed witness for live examination.</u>"

Exhibit A clearly indicates that Plaintiffs informed Apple that they intend to call four witnesses: Dr. Robert Roberts, Dr. Jeffrey Isaacs, Mr. Eddy Cue, and Mr. Trystan Kosmykna. Gibson Dunn's reference to "surprise" and "undisclosed" witnesses is unsubstantiated.

21. <u>Furthermore, the Court can take judicial notice of a statement Mr. Tim Cook made earlier this week concerning Apple's antitrust position:</u>

<u>"The main thing we're focused on in the App Store is keeping our focus on privacy and security. These are the two major tenets that have produced a very trusted environment where consumers and developers come together. Consumers can trust the developers and the apps are who they say they are." (*https://www.macrumors.com/2021/10/28/apple-ceo-tim-cook-app-store-regulation/)*</u>

Mr. Cook's position appears to be contradictory to Gibson Dunn's pleadings in that it suggests, in "working with regulators concerns," that Apple is no longer focusing on "controversial" subjective app censorship, and "focusing" on their right to screen apps for

malware, users' privacy and security. There is no reasonable "privacy" or "security" issue with the Coronavirus Reporter App, which was developed with Dr. Roberts' institutional resources at University of Arizona. Live testimony is necessary to resolve this apparent conflict – has Apple taken the position last week that, in working with regulators, they are now "focusing" on privacy and security (what Judge Gonzalez Rogers' called "non-controversial app denials")? Or does Apple still wish to censor apps using their subjective, "controversial" criteria, such as their opinion of Dr. Roberts' institutional credentials, Parler's political base, or countless other non-privacy, non-security rejections? Mr. Cook's statement appears to contradict Gibson Dunn's core legal defense. Live testimony is indicated.

As the Court will learn, Gibson Dunn's false pleadings (Dkt 72, page 2) are largely motivated by their vendetta against Dr. Isaacs. Their opposition begins "*After 11:00 p.m. on October 25, 2021*" apparently alluding to an isolated incident of a side-effect Plaintiff's co-founder experienced from a head injury medication *fifteen years ago*, which has never again surfaced since 2005. Gibson Dunn shamefully, and wrongfully, apparently attributes the timing of the after-hours filing to this head injury. The actual circumstances of the filing's timing is that this case requires coordination with individuals in three time zones – Apple in Pacific Standard Time, the Plaintiffs' counsel, on Eastern Standard Time,  and Dr. Roberts representative in Greenwich Mean Time. Dr. Roberts' representative, a bioethics attorney in London, routinely participates in this case and related legal drafting. She participated in a settlement conference with Apple in April, and in September participated in a two-hour discussion to recap a Meet & Confer on sanctions against Gibson Dunn. The bottom line is, it is not possible for all parties to communicate during the 9-5 workday. For example, the following messaging transcript took place at 6PM EST, but 23:00GMT, in which Dr. Robert's representative asked that Counsel further emphasize (in this document) the evidence of institutional backing for Coronavirus Reporter:




Dr. Roberts' representative confirmed during this discussion that he would like to, and hereby requests, to offer live testimony directly to the Court. The representative stated that Dr. Roberts is willing to appear in person or via videoconference. On the other hand, Gibson Dunn seeks to avoid any real testimony or truth, for that matter, and dismiss this entire case largely because a co-plaintiff had a head injury a decade and a half ago. An evidentiary hearing is in the interest of justice.

Plaintiff requests 3 – 4 hours of time allocation during the November 4 scheduled injunction hearing, pursuant to Local Rule 7.6. This should allow the Court to resolve most, and hopefully all, of the twenty-one enumerated contested facts above. Resolution of these contested facts during an efficient evidentiary hearing is in the interests of judicial economy. In the alternative, the parties' pleadings will further diverge, as opposing counsel seems to deny even the most evident of truths. Apple has signaled that it intends to stall and delay most antitrust cases, even appealing a "favorable" ruling in *Epic.* Prompt resolution of the above enumerated items will certainly focus discovery and prevent further escalation of these disputes. Three or four hours of testimony could save the court much more time in the adjudication of the preliminary injunction alone. Other motions – from a motion to dismiss, to possible motions to compel and motions for sanctions, will likely be averted or streamlined by this early live testimony.

Pursuant to Plaintiff's motion for preliminary injunction, requesting "evidentiary materials" i.e. evidentiary testimony, and in the interests of judicial economy, this important App Store censorship matter of national importance should be adjudicated with 3-4 hours of live testimony.

-----End of Reply Notice ---

Furthermore, the subpoena for Apple to present a live witness (Mr. Eddy Cue, or Mr. Tim Cook, alternatively) is a valid hearing/trial document and should not be improperly quashed as a "discovery device." Gibson Dunn should be cautioned to cease from filing further dilatory motions,

to engage in proper Meet & Confers, and to cease their intimidation of witness(es) in this case by blocking their court-related correspondence.

Respectfully submitted, this 2nd  day of November, 2021.

/s/ Keith Mathews
Keith Mathews, *Pro Hac Vice*
Counsel for Coronavirus Reporter, Primary Productions,
CALID Inc, and Proposed Class Members
Associated Attorneys of New England
PO Box 278
Manchester, NH 03105
Ph. 603-622-8100
keith@aaone.law

**CERTIFICATE OF SERVICE**

I, Keith Mathews, do declare as follows:

I certify that a copy of the foregoing **OPPOSITION TO MOTION TO QUASH** was delivered electronically to counsel for the Defendants with counsel, and emailed to those without known counsel.

Executed on this 2nd  day of November, 2021.

/s/ Keith Mathews
Keith Mathews, *Pro Hac Vice*
Associated Attorneys of New England
PO Box 278
Manchester, NH 03105
Ph. 603-622-8100
keith@aaone.law