https://www.inputmag.com/culture/apple-won-a-class-action-app-store-lawsuit-on-a-silly-detail

Matt Wille

12.2.2021 10:56 AM

FLOP

# Apple won a class-action App Store lawsuit on a silly detail

The plaintiffs just couldn't figure out how to define the market Apple is monopolizing

Despite its longstanding commitment to charging developers as much as possible, Apple has won a case alleging it holds monopoly power via the App Store. A federal judge dismissed the case this week, citing a lack of evidence that Apple had monopolized any single market with the App Store.

Judge Edward Chen found that the plaintiffs — a group of developers behind an app called "Coronavirus Reporter" — did not present enough evidence to suggest Apple has too much of a hold on any particular market. The developers had sought $200 billion from Apple for exercising what they described as "tyrannical greed."

"Missing from plaintiffs' market definitions is the identification of any well-pleaded allegations that support the boundaries they seek to define," Judge Chen wrote in his ruling.

The crux of the case is reminiscent of a number of other cases against Apple in recent years, most notably the case brought up by Epic Games. And once again Apple has weaseled its way out.

ERROR 404: NO MARKET FOUND — The reason for Chen's dismissal is a frustrating one. The plaintiffs essentially failed to bolster their case in a way that could actually prove Apple is breaking any antitrust laws. In order to prove Apple is monopolizing a given market, it falls upon the plaintiffs to first define which market, exactly, is being monopolized. They tried a few avenues here, such as the general "smartphone market" and the more specific "iOS market."

The latter, Chen argues, is a market in which Apple is "inherently and necessarily" the only competitor. It is a single-brand market and thus cannot

be considered for antitrust violations. On the other end of the spectrum, the "smartphone market" argument was just too broad, Chen argues. The plaintiffs aren't even smartphone manufacturers, as he points out.

DEAD ON ARRIVAL — This is one of those frustrating cases where the legal process got in the way of the larger problem at hand. The plaintiffs just couldn't find the right angle in time to convince the judge. Perhaps aiming for $200 billion in damages also set the case back. That's, um, a lot of money, even for Apple. It also probably didn't help that the plaintiffs' first filing claimed Tim Cook was seeking profits to "compensate for the tragic loss of Steve Jobs."

Other courts have already found that some of Apple's App Store policies — most notably the forced use of its commission-ridden in-app payment system — do break antitrust law. Apple has in recent months been [forced to change its](#) policies to allow external payment methods.

Coronavirus Reporter et al. have plans to appeal the judge's decision, but they'll need to come up with some more convincing arguments if they hope to win next time around.

https://www.jdsupra.com/legalnews/market-definition-is-front-and-center-1044464/

December 7, 2021 Julie Webb

# Market Definition Is Front and Center in Recent Decision Dismissing App Developers' Antitrust Claims Against Apple

A recent decision from Judge Edward M. Chen in the United States District Court for the Northern District of California focuses on the sufficiency of allegations of market definition to state a claim for federal antitrust violations. The decision highlights what plaintiffs must plead in order to establish the existence and boundaries of a relevant market in monopolization claims.

In *Coronavirus Reporter, et al., v. Apple Inc., et al.*, Case No. 21-cv-05567-EMC, several app developers brought antitrust and other claims against Apple. Plaintiffs' apps were allegedly rejected from the app store because they violated Apple's written policies, or subject to "ranking suppression" that rendered them "invisible." The developers asserted that Apple operated its app store in a monopolistic manner, and that Apple's exercise of its market power to "curate" or "censor" apps violated federal antitrust laws.

In a November 30, 2021 decision, the court granted Apple's motion to dismiss Plaintiffs' claims. Central to the court's decision was a lengthy analysis of whether Plaintiffs had adequately defined the relevant market, which is a "threshold" requirement for monopolization claims.

The app developers' complaint identified at least fifteen different relevant markets, including:

- a Smartphone Enhanced National Internet Access Devices market;

- a smartphone market;

- a single-product iOS Smartphone Enhanced Internet Access Device market;

- the iOS market;

- the market for smartphone enhanced commerce and information flow ;

- the institutional app market;

- the iOS institutional app market;

- the iOS notary stamps market;

- the iOS onboarding software market;

- the market for access rights to the iOS userbase;

- the national smartphone app distribution market;

- the iOS App market;

- the US iOS Device App market;

- the market of COVID startups; and

- the App Market.

Many of these alleged markets were not further defined or explained in any detail. The court found that this approach "lacks clarity," fails to "define the boundaries of or differences between" the many alleged markets, and does "not seem to correspond with the products subject to the alleged antitrust conduct."

In their response to Apple's motion to dismiss, Plaintiffs sought to narrow the universe of relevant markets. Plaintiffs urged the court to focus on two principal "foremarkets" ("US Smartphones" and "an alternative single brand

foremarket of US iOS Smartphones"), and four "downstream markets" ("the iOS institutional App Market, the iOS notary stamp market, the iOS application loader market and the iOS userbase market"). Plaintiffs argued that each of the "downstream markets" was "100%" controlled by Apple. The court rejected Plaintiffs' re-characterization of the alleged relevant markets as an improper "attempt to amend their complaint through motion practice." However, the court also explained that even if it were to consider the new market allegations, they still failed "to provide sufficient clarity to pass muster" at the motion to dismiss stage.

The court also found that Plaintiffs' alleged markets were not sufficiently *plausible* to satisfy the Rule 12(b)(6) standard. Among the court's criticisms were that the complaint did not address cross-elasticity of demand, several of the alleged markets were purely hypothetical and were not actual markets for products or services, and several of the alleged markets were defined in such a way that Apple was necessarily the only market participant. The court expressed significant skepticism about single-brand markets, which are rare and generally disfavored, and found them to be implausible under the circumstances presented.

Apple further argued in its motion to dismiss that Plaintiffs failed to adequately allege antitrust injury to competition as a whole, and instead alleged only harm to specific individual Plaintiffs. The court agreed, finding many of Plaintiffs' injury allegations to be conclusory and threadbare recitals of the elements, which are insufficient to state a claim.

This decision serves as a reminder that defendants should not hesitate to challenge the sufficiency of an antitrust complaint's market definition allegations. Conclusory allegations—unsupported by facts that could be used to satisfy standard economic tests, explain the boundaries of competition in the alleged market, or show how competition as a whole was harmed instead of the individual plaintiff—should lead to an early dismissal.