Keith Mathews
Associated Attorneys of New England
PO Box 278
Manchester, NH 03105
Ph. 603-622-8100
keith@aaone.law

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORONAVIRUS REPORTER,<br>CALID INC,<br>PRIMARY PRODUCTIONS LLC,<br>DR. JEFFREY D. ISAACS,<br>on behalf of themselves and all others similarly situated<br><br>                Plaintiffs,<br><br>vs.<br><br>APPLE INC.,<br>FEDERAL TRADE COMMISSION<br><br>                Defendants. | Case No. 3:21-cv-05567-EMC<br><br>**PLAINTIFFS' REPLY FOR RECONSIDERATION AND RELIEF FROM JUDGMENT**<br><br>**<u>Hearing</u>**<br><br>Date:    February 10, 2022<br>Time:   1:30PM<br>Place:   Courtroom 5, 17th Floor<br>            (videoconference)<br><br>The Honorable Edward M. Chen |

## MOTION FOR RECONSIDERATION REPLY

Plaintiffs submit this concise rebuttal reply to Defendant Apple's Opposition to the Motion for Relief from Judgment. Additionally, in adjudicating this Motion, the Court may consider the simultaneously filed Motion for Sanctions. For the reasons stated below, Apple's opposition fails because it ignores critical information in support of Plaintiffs' motion.

**The Patent Reissue Represents Newly Discovered Evidence Relevant to Plaintiffs' Sherman Act and RICO Causes of Action.**

Apple incorrectly argues that "the motion for reconsideration offers no explanation of any possible connection the reissued patent has to any claim that was or could have been asserted in this litigation." (*Objection at p.13*) The FAC itself leaves absolutely no ambiguity that the Web Caller-ID patent is integral to Plaintiffs' RICO and Sherman Act claims, insofar as Apple used their monopoly power to evade Dr. Isaacs' patent claims and de-rank his Top Ten App:

> *FAC at 29 - When Dr. Isaacs asked Apple to remove copycat Caller-ID apps from the App Store, Apple refused to do so, despite federal law requiring a presumption of validity for his patent. Shortly thereafter, Caller-ID was demoted two hundred spots and lost 98% of installs.*

> *FAC at 99- When Dr. Isaacs informed Apple he held a patent on web caller ID, and that their crony, Whitepages (a top App Store IAP gross producer) violated his patent, Apple took strong measures to curtail Dr. Isaacs' iOS projects. They demoted his app to below spot #200 (losing 98% of revenue) and replaced him with another crony with a copycat interface, Orave. They issued false wire transmissions to Dr Isaacs with pretextual reasons to block his app for a period of approximately one-year (see below).*

> *FAC at 102- Apple suppressed WebCaller because it competed with Facetime, because it wasn't written in Swift, because it's cross platform emphasis negated iOS "lock in" techniques, and because they knew Dr. Isaacs held the web caller ID patent. Specifically, they retaliated against Isaacs' email stating "Apple threw us under the bus" with regards to the patent.*

*FAC at 305- Here, Apple retaliated against a valid patent proceeding, which at least until it was incorrectly invalidated by Whitepages, should have been treated as enforceable.*

*FAC at 312- A clear case of intent to defraud was Apple's demoting Caller-ID two hundred ranking spots, just months after a patent claim was made that would have cost Apple substantial losses from Whitepages and other infringers. Apple harassed one Plaintiff by sending him thirty messages of unspecified privacy concerns in Caller-ID, over a one month period, effectively forcing a wild goose hunt for a non-existent privacy leak. These messages – all thirty – disappeared from the App Store Connect portal, and likely represent a predicate act in above RICO claims for evidence destruction.*

In short, it is not within the Court's discretion to accept Apple's patently false argument – that the patent reissuance, and patent issue itself, are not relevant to Plaintiffs' claims. Indeed, the Court *sua sponte* seemingly acknowledged that the patent could be relevant, if it was in force: "Plaintiffs concede that the '698 patent was invalidated." (*Order at p.4*). Because the patent was reissued immediately after that Order, Plaintiffs' RICO, Sherman, and (proposed) infringement claims must proceed to discovery.

Dr. Isaacs has filed evidence that he was not able to file the infringement claims prior to issuance, which occurred after the Court's Order. He additionally filed extensive email chains showing that he attempted to Meet & Confer on this matter with Gibson Dunn, who refused to do so, thereby blocking a witness. Gibson Dunn's purported defense based on 28 U.S.C. §1654 is to no avail, as 1) it is irrelevant to the statute's intent and literal meaning, and 2) Gibson Dunn also refused to Meet and Confer with this counsel about amending the infringement claim. Dr. Isaacs plainly communicated to Gibson Dunn that amending the infringement reissue claim outside this lawsuit "was not in the interest of judicial economy." Now, scandalously, they accuse Dr. Isaacs of forum shopping, after aggressively blocking him from filing in this present case and district.

Importantly, Dr. Isaacs is waiting for this Court to rule upon the matter; he has not filed infringement claims in Florida Southern District for his personal ownership portion of the patent. Moreover this Counsel can represent that Coring is amenable to consolidating its claims in this District, should this Court permit leave to amend. Both judicial economy, and plain fairness, dictate

that Dr. Isaacs (who never amended his claims yet in this case) be allowed to bring the relevant patent claims – and retaliation/RICO/Sherman claims. Dr. Roberts and Primary Productions should, in all fairness, be granted similar leave to amend. This is not an extraneous "add-on" as Apple terms it – this is a seven year ongoing patent dispute of considerable importance in that Dr. Isaacs' invention saved the economy $100 million, and which directly addresses Apple's dominant market power and abuse of rivals.

### The *Cameron* Claims and Facts Deserved Adjudication

This week, hundreds of thousands of *Cameron* class-action notices were mailed to developers. Plaintiffs can neither participate in that settlement, nor proceed with the *Cameron* causes of action, in a most unfair result. Specifically Plaintiffs, who stated *Cameron* causes of actions as paid app opt-outs, weren't afforded any adjudication on the matter. Apple's opposition references Docket Item 64, which states "the well-settled rule "that allegations in pleadings in another action . . . cannot be incorporated by reference." 5A Wright & Miller, Fed. Prac. & Proc. Civ. § 1326 (4th ed.)" But this curt textbook quote – with no binding case law referenced, is problematic and misplaced as it does not capture the situation at hand. Here, the free app lawsuit class action claims were deemed not subject to consolidation with *Cameron* by the Honorable Yvonne Gonzalez-Rogers. As the FAC states, "In order to streamline litigation, and to avoid confusion, Plaintiffs CALID and Jeffrey Isaacs assert claims for non-zero price apps as specified in the already docketed complaint *Cameron v. Apple*. These causes of action, and all supporting facts from that complaint are incorporated herein, as if they had been stated in the Amended Complaint."

In light of the YGR Order, this was a reasonable request by Plaintiffs – to move the paid app claims as opt-outs to the auxiliary. Apple shouldn't win on such a trivial technicality. If the Court would prefer the *Cameron* claims and facts be included in the main Complaint document, rather than by Exhibit, Plaintiffs will do so accordingly – this is certainly not a "futile" amendment, if requested by the Court. The *Cameron* case was settled for $100 million, hence fairness and discretion would imply Plaintiffs at least have a right to have their opt-out claims heard.

**Apple's Silence On 26 AG / Google Markets is Particularly Problematic**

The underlying Motion states that Plaintiffs could amend their markets to those in *Coring*, which is largely verbatim based on the 26 State Attorney Generals' Google case and a Congressional Antitrust Expert opinion on free digital products. Plaintiffs specifically argued that, if Apple cannot declare the Coring/AG Google markets fail to define a relevant Sherman marketplace, then FAC amendment is clearly non-futile.

As evident, Apple's opposition does not make the requested declaration. Instead, Apple argues

"*the markets alleged in Coring are no better than those dismissed in this case. The supposed markets there—a "Smartphone App Distribution Market" and a market for "Smartphone Apps," Pls.' Mot. at 13–14—were already rejected in this case.*"

Not only do Apple and Gibson Dunn shy away from outright declaration that no relevant marketplace is pleaded by *Coring*, but Apple actually equates *Coring's* markets to the FAC markets. In doing so, Apple has conceded that a Smartphone App and Smartphone App Distribution market were "already rejected in this case." That is problematic on numerous grounds.

First, and most importantly – this goes to the heart of the FAC which addresses censorship of the Smartphone App market. As Dr Isaacs pointed out, Gibson Dunn's Brass said during oral argument that Dr. Isaacs "extensively" argued for the existence of a Smartphone App market. Once again, the Motion for Reconsideration Opposition now acknowledges that a well-defined Smartphone App market was pleaded. It is not so ambiguous – Apple was able to construe the FAC market as essentially identical to the *Coring* definition, which included a Congressional expert opinion and 26 AG consensus.

Moreover, numerous press articles covering this case seemed to understand that Plaintiffs pleaded an "app" and "distributor" market that competes with Apple. This Court itself focused most of the oral argument on these precise markets. In short, the idea Plaintiffs pleaded "fifteen" relevant

Sherman marketplaces is a farce. Apple's pleading, and oral argument, prove this fact. Plaintiff's markets are not "in the hinterlands", "ill-defined at the contours," or "cobblestone." Everyone gets it, and Apple just reiterated that point in the opposition by comparing Plaintiffs markets to yet another (Cameron, and now 26 AG) related lawsuit that settled or moved beyond 12b6. Whether it is the FAC (which includes a third concept of physical userbase access), or the *Coring* complaint, these markets should go ahead vis-à-vis the concepts argued in the underlying Motion:

**1 - The *Coring* complaint defines a relevant product market for the distribution of apps to users of iOS mobile devices (the "iOS App Distribution Market").**

**2- Coring Defines The Market for Smartphone Apps, or alternatively, iOS Apps, is a Relevant Antitrust Market**

Notably, Apple has not objected to the Court releasing the video of the oral argument, which may be beneficial in supporting this herein assertion that the two primary markets under Sherman were adequately well understood – indeed a "meeting of the minds" of sorts reached during oral argument.

**New Evidence of Massive Security and Quality Bug in Apple's Safari**

Apple's primary defense for App Store exclusivity, used to reach a verdict in *Epic* and this case (*See Order on quality, generally*) is that Apple software and vetting is somehow superior to independent developers. Indeed, Apple accused Coronavirus Reporter of having software bugs in recent pleadings – but never, upon information and belief, directly to Plaintiffs during the February 2020 correspondence.

This week, a major bug was found in Safari browser that enables any website to see the identity and browser history of any Safari user. This Safari coding error represents a massive safety breach that could gravely jeopardize an individuals well-being. It is one of numerous Apple quality control issues that seem to be worsening in recent years – the FAC describes the Pegasys espionage bug, which Apple fixed a year later. In cannot be argued that Apple has completely failed on multiple occasions with regards to safety and protection of users. The Court should allow discovery into this Safari bug, rather than accepting as true Apple's "quality assertions," generally.

**CONCLUSION**

For the aforementioned reasons, the Court is respectfully requested to Reconsider and Grant Relief from its order granting Apple's motion for 12(b)(6) dismissal, by issuing a corrected Order Denying Defendant Apple's Motion to Dismiss.

Submitted on this 18th day of January, 2022.

/s/ Keith Mathews
Keith Mathews, *Pro Hac Vice*
Counsel for Coronavirus Reporter, Primary Productions and CALID
Associated Attorneys of New England
PO Box 278
Manchester, NH 03105
Ph. 603-622-8100
keith@aaone.law

# CERTIFICATE OF SERVICE

I, Keith Mathews, do declare as follows:

I certify that a copy of the foregoing **REPLY FOR MOTION PURSUANT TO FRCP RULES 59 & 60** was delivered electronically to counsel for the Defendants with counsel, and emailed to those without known counsel.

Executed on this 18th day of January, 2022.

/s/ Keith Mathews
Keith Mathews, *Pro Hac Vice*
Associated Attorneys of New England
PO Box 278
Manchester, NH 03105
Ph. 603-622-8100
keith@aaone.law