# EXHIBIT 3

No. _____

===============================================================

In The

# Supreme Court of the United States

————————— ◆ —————————

DR. JEFFREY ISAACS,

*Petitioner,*

v.

USC KECK SCHOOL OF MEDICINE,
TRUSTEES OF DARTMOUTH COLLEGE,
NEW HAMPSHIRE BOARD OF MEDICINE,
GIBSON DUNN,

*Respondents.*

————————— ◆ —————————

**On Petition For Writ Of Certiorari
To The United States Court Of Appeals
For The Ninth Circuit**

————————— ◆ —————————

**PETITION FOR WRIT OF CERTIORARI**

————————— ◆ —————————

KEITH A. MATHEWS, ESQ.
ASSOCIATED ATTORNEYS OF NEW ENGLAND
1000 Elm Street, Suite 800
Manchester, NH 03104
Ph. 603-622-8100
keith@aaone.law

===============================================================

COCKLE LEGAL BRIEFS (800) 225-6964
WWW.COCKLELEGALBRIEFS.COM

i

## QUESTIONS PRESENTED

Dr. Isaacs respectfully petitions the United States Supreme Court to address the following questions presented and grant a writ of *certiorari*.

1. Under the doctrine of judicial estoppel, should the lower courts have upheld the sanctity of the oath and estopped USC and Gibson Dunn from arguing inconsistent positions that spanned a decade-and-a-half?

2. Did USC and Gibson Dunn present knowingly false statements to the Ninth Circuit, when asked multiple times whether the intent of the Isaacs-USC 2008 settlement agreement was to invalidate the Isaacs-USC 2007 settlement, or did Robin Dal Soglio falsely represent to the District Court that the 2008 settlement "had no effect" on the 2007 settlement agreement?

3. Dr. Isaacs' medical license (*see 2018 cert petition*) was revoked for his reliance upon Dal Soglio's above representation. Should a physician be effectively barred from medical practice for life, because he relied upon one of two contradictory positions taken by USC counsel over a span of fourteen years?

4. Does FRCP 41(d) allow for award of attorneys' fees, or is it limited to costs, per the plain language of the Rule?

ii

**QUESTIONS PRESENTED** – Continued

5. Per dissenting Judge Ikuto, is "the [ma-
   jority] interpretation unreasonable" that
   a settlement agreement was written with
   intent to be unenforceable?[1]

Petitioner Dr. Jeffrey Isaacs has spent nearly his
entire adult life in federal court, seeking to enforce a
settlement agreement with University of Southern
California's Keck School of Medicine that would allow
him to practice medicine. This Petition marks his fifth
attempt seeking *certiorari*, concerning an unfortunate
series of events that continue to malignantly escalate.

In 2005, Petitioner enrolled at University of
Southern California's Keck School of Medicine. In liti-
gation that ensued in the California Central District,
then medical student Jeffrey Isaacs raised three spe-
cific whistleblower concerns: 1) USC engaged in brib-
ery and pay-for-play admissions, 2) a Dean treated him

---

[1] "The majority today affirms the district court on the ground
that the language in the 2008 settlement agreement entitles USC
to legal fees for any lawsuit brought by Isaacs that 'refer[s] to,
or incorporat[es]' or is 'based on any events, acts or omissions
through and including the date [of the agreement].' Apparently,
the majority interprets this language as precluding Isaacs from
bringing a lawsuit to enforce either the 2007 or 2008 settlement
agreement, because such a lawsuit would necessarily refer to an
act that occurred before (or on the date of) the 2008 settlement
agreement – namely, the execution of the settlement agreements
themselves. Such an interpretation is unreasonable. The parties
clearly did not intend that by entering into the 2008 settlement
agreement, Isaacs would be precluded from enforcing it . . . This
conclusion makes the settlement agreements unenforceable."

iii

**QUESTIONS PRESENTED** – Continued

suspiciously "inappropriately," and 3) USC coerced him into an illegal settlement agreement.

Generally, a decade and a half later no controversy exists that USC engaged in all of these improper practices. The FBI Operation Varsity Blues resulted in RICO guilty verdicts for USC admissions practices. In 2010, a Keck Medical School Dean was removed from his post after being caught in a "drug-fueled relationship" with a teenager. To settle that case, it was revealed just last week that USC coerced an illegal settlement agreement that stipulated for the destruction of evidence pertaining to an ongoing criminal investigation.[2]

Specifically, Petitioner's own claims were never proven true or false, because in 2007 Isaacs reached a settlement with USC whereby he dropped claims against individual deans. In consideration thereof, Isaacs' contested disciplinary record was sealed and he was granted factual innocence as to the retaliatory allegations that lead to his departure from USC. Already enrolled in another medical school by 2008, Isaacs and USC settled their remaining claims in a second settlement, which annulled his entire record, including any matriculation contracts. Redundantly, the secondary settlement agreement also "acquitted" Isaacs of all charges, "of any nature whatsoever." Out of an

---

[2] https://www.dailymail.co.uk/news/article-10047101/USC-ordered-photos-videos-ex-medical-school-dean-using-drugs-DESTROYED-1-5M-settlement.html.

iv

**QUESTIONS PRESENTED** – Continued

abundance of caution, Dr. Isaacs informed District Judge
Gary A. Feess that the second agreement "may have
accidentally" invalidated the first settlement's sealing
of records provision, by annulling all prior contracts.
USC successfully countered with a promise that "the
[global 2008 settlement] pertains to different subject
matter" than the 2007 settlement concerning the indi-
vidual deans. In no uncertain terms, USC represented
to the District Court in 2008 that the intent of all par-
ties was that the 2007 settlement remained in force.

Isaacs received his MD in 2010, having achieved
a USMLE Medical Boards score above the average
neurosurgeon. When he began his residency training
at Dartmouth-Hitchcock in New Hampshire, he suf-
fered unethical treatment by his supervisors, who
unbeknownst to him, gained knowledge of his sealed
USC records and wanted him to leave their program.
Eventually, in worsening health from six months of
constructive termination efforts on top of an already
difficult medical internship, Dr. Isaacs caught on. He
emailed Dartmouth's Dean, Dr. Jim Yong Kim, an
FRCP Rule 37 notice to preserve all electronic evidence
pertaining to his residency. Within a week, his entire
hospital email account was deleted, overriding auto-
matic safeguards.

The three aforementioned *certiorari* petitions filed
in 2014 and 2018 sought to sanction Dartmouth for ev-
idence spoliation and reinstate Dr. Isaacs in federally-
funded residency program. While the courts over-
looked Dr. Isaacs' claims, the Executive Office did not.

v

**QUESTIONS PRESENTED** – Continued

Within two months of the White House learning about Dr. Jim Yong Kim's role in deleting federal lawsuit evidence, Dr. Kim resigned rather than face investigation. Public media reports stated the resignation was "for unknown reasons" and that Dr. Kim, a long-term academic, would be joining a Nigerian hedge-fund.

Despite the occurrence of some redress as to evidence spoliation issues, Dr. Isaacs remained ostracized from medical residency programs, due to USC's failure to adhere to settlement terms and general confusion by outsiders of the ramifications of an unusually extensive litigation history. He filed a RICO cause of action, the underlying claim to this petition, against USC in April 2019, the news broke. In short, the underlying claim is that by intentionally breaching their settlement agreements, USC and its deans participated in over a decade of witness retaliation against Isaacs because of his aforementioned whistleblower claims. That case was improperly dismissed at the 12(b)(6) level, which is the subject of a simultaneously filed *certiorari* petition.

As it turns out, USC's President Folt was a protégé of Jim Yong Kim's and served as his Vice Precept at Dartmouth College. President Folt would quickly learn that USC's corrupt practices had grown tentacles in medical academia that had reached across the country to Dartmouth. Under Folt's leadership, USC immediately replaced the two-person firm Dal Soglio & Martins with the global powerhouse Gibson Dunn & Crutcher to litigate the underlying claims in this case.

vi

**QUESTIONS PRESENTED** – Continued

Within weeks of being assigned to an entertainment lawyer at Gibson Dunn, and with obvious pleading deficiencies concerning his lack of knowledge of the medical residency training system, Gibson Dunn moved for a 12(b)(6) affirmative defense. Among other things, the firm falsely represented that "nothing in the settlements acquitted Isaacs." It became rather clear Gibson Dunn was embarking on what appears to be their *modus operandi* of deny, attack, and reverse the victim and offender.[3]

Realizing that Gibson Dunn had the hutzpah to disavow the very core consideration of two settlement agreements that were meant to restart his medical career, a frustrated Dr. Isaacs informed Gibson Dunn that if he was never acquitted, then there was no

---

[3] In a landmark Apple developer class action antitrust case in the Northern California District, 21-cv-5567-EMC, Gibson Dunn has maliciously unsealed Dr. Isaacs' acquitted USC controversy once again, in an effort to dismiss that Sherman Act case on 12(b)(6) grounds. In February 2020, Dr. Isaacs was part of a startup that invented the first COVID-19 smartphone tracking app. Apple censored all startups from publishing COVID apps, and hence blocked competing apps to favor their own app that, eighteen months later, remains unavailable in most of the United States. The startup was led by renowned cardiologist Dr. Robert Roberts, who invented the gold standard test for heart attacks that saved immeasurable lives. Despite this seemingly incontrovertible fact, Gibson Dunn employed their all-too-familiar DARVO tactics, and falsely claimed the "vexatious" lawsuit was filed "with disregard for the law." Unwilling to even let Dr. Isaacs work on a COVID app with a Fields' Medal scientist, Gibson Dunn argued that the startup had unacceptable medical credentials because of his acquitted 2006 Keck history.

vii

**QUESTIONS PRESENTED** – Continued

consideration to the settlement agreements. Hence, he intended to re-open complaints with USC campus police that he had waived in signing the 2007 settlement. In response, and absent any due process by USC faculty, Gibson Dunn issued a new campus ban preventing Isaacs from going on campus to register his complaints. In turn, pursuant to FRCP 41, Isaacs refiled the underlying action to include Respondent/Defendant Gibson Dunn as administrator of his settlement agreements and USC academic record.

This resulted in the filing of an anti-SLAPP motion by Gibson Dunn, claiming that Dr. Isaacs' objection to a retaliatory campus ban, believed to be the first time ever a Big Law firm administratively enacted a campus ban, somehow infringed upon their right to free speech. As is typical with DARVO, considered a common manipulation strategy of psychological abusers[4], Gibson Dunn used an anti-SLAPP statute meant to protect the vulnerable to attack Dr. Isaacs.

That anti-SLAPP motion was somehow granted, in a breathtaking ruling by District Judge Dale S. Fischer. Moreover, Isaacs was ordered to pay attorneys' fees to USC, purportedly under the authority of FRCP 41(d) and a settlement agreement "attorney's fee provision." An appeal to the Ninth Circuit ensued, resulting in a split 1-2 decision regarding the fees.

---

[4] https://en.wikipedia.org/wiki/DARVO.

viii

## RELATED CASES

Coronavirus Reporter et al v. Apple Inc et al, United States District Court for the Northern California District, 21-cv-5567.

Jeffrey Isaacs v. USC Keck School of Medicine et al., 2:19-cv-2011, United States District Court for Central California, Judgment entered February 3, 2020.

Jeffrey Isaac v. USC Keck School of Medicine et al., 20-55239, United States District Court of Appeals for the Ninth Circuit, Judgement entered May 15, 2020.

Jeffrey Isaacs v. USC Keck School of Medicine et al., 20-55239, United States Court of Appeals for the Ninth Circuit, Judgement entered May 15, 2020.

ix

## TABLE OF CONTENTS

Page

QUESTIONS PRESENTED ................................   i

RELATED CASES ................................................   viii

TABLE OF CONTENTS ......................................   ix

TABLE OF AUTHORITIES ................................   xii

OPINIONS BELOW............................................   1

JURISDICTIONAL STATEMENT ......................   4

CONSTITUTIONAL AND STATUTORY PROVI-
    SIONS............................................................   4

STATEMENT OF THE CASE.............................   5

ARGUMENT ........................................................   5

Standard Of Review.............................................   10

Analysis of Questions Presented ........................   17

    1.  Under the doctrine of judicial estoppel, the
        lower courts had a duty to uphold the
        sanctity of the oath and estop USC and
        Gibson Dunn from arguing inconsistent
        positions regarding the settlement agree-
        ments meant only to achieve litigation ad-
        vantage ......................................................   17

    2.  USC and Gibson Dunn asserted an unac-
        ceptable lie to the Ninth Circuit, when
        asked multiple times whether or not the
        intent of the Isaacs-USC 2008 settlement
        agreement was to invalidate the Isaacs-
        USC 2007 settlement.................................   19

x

TABLE OF CONTENTS – Continued

Page

3.  In 2008, USC and Dal Soglio made a prior representation that a 2007 settlement sealing his records remained in effect. A dissenting Ninth Circuit judge agreed with this interpretation. Dr. Isaacs' medical license (see 2018 cert petition) was revoked making the same representation to the NH Board of Medicine. As such, a physician has been wrongly barred from medical practice, and even medical app development, because he adopted the same contract interpretation as a Ninth Circuit judge .......................................................... 21

4.  The plain language of FRCP 41(d) is limited to costs. The District Judge abused discretion to award of attorneys' fees under this Rule ............................................. 23

5.  Per dissenting Judge Ikuto, is "the [majority] interpretation unreasonable" that a settlement agreement was written with intent to be unenforceable? ....................... 26

CONCLUSION.................................................... 28


APPENDIX

United States Court of Appeals for the Ninth Circuit, Memorandum, Filed Apr. 22, 2021 ..... App. 1

United States District Court for the Central District of California, Order, Filed May 15, 2020 ................................................................. App. 7

xi

TABLE OF CONTENTS – Continued

Page

United States Court of Appeals for the Ninth
   Circuit, Order Denying Petition for Rehear-
   ing, May 28, 2021 .......................................... App. 11

xii

## TABLE OF AUTHORITIES

Page

CASES

*Avazian v. Genworth Life & Annuity Ins. Co.*,
2017 U.S. Dist. LEXIS 199070 (C.D. Cal. Dec.
4, 2017) ...................................................................25

*Banga v. First United States, N.A.*, 2010 U.S.
Dist. LEXIS 142075 (C.D. Cal. Dec. 8, 2010)....24, 25

*Caldwell v. Wells Fargo, N.A.*, 2014 U.S. Dist.
LEXIS (N.D. Cal. Feb. 26, 2014) .............................25

*Canaan Taiwanese Christian Church v. All
World Mission Ministries*, 211 Cal. App. 4th
1115 (2012)...............................................................12

*Carver v. Chevron U.S.A., Inc.*, 97 Cal. App. 4th
132 (2002)................................................................10

*Esquivel v. Arau*, 913 F. Supp. 1382 (C.D. Cal.
1996)........................................................................25

*Hamilton v. Zimmerman*, 37 Tenn. (5 Sneed) 39
(1857)......................................................................15

*Hardt v. Reliance Standard Life Ins. Co.*, 560
U.S. 242 (2010) ........................................................25

*Mesa Shopping Center-East, LLC v. O Hill*, 232
Cal. App. 4th 890 (2014)..........................................15

*Santisas v. Goodin*, 17 Cal. App. 4th 599 (1998)........15

*Shapira v. Lifetech Resources, LLC*, 22 Cal. App.
5th 429 (2018) ...............................................10, 15

xiii

TABLE OF AUTHORITIES – Continued

Page

STATUTES

28 U.S.C. § 1254(1)........................................................4

42 U.S.C. § 1983 ...........................................................2

Administrative Procedural Act ....................................3

All Writs Act, 28 U.S.C. § 1651 ........................4, 10, 23

Cal. Civ. Code § 717(b)(2)...........................................14

Cal. Civ. Code § 1717(b)(2).............................. 14, 23, 24

Cal. Civ. Code § 1717 ...........................................14, 15

RULES

FRCP 12(b)(6) ...............................................................2

FRCP 41......................................................................14

FRCP 41(a)....................................................................3

FRCP 41(d) .......................................................*passim*

OTHER AUTHORITIES

*Loyola of Los Angeles Law Review* .............................15

*"The Judiciary Says, You Can't Have it Both Ways: Judicial Estoppel—a Doctrine Preventing Inconsistent Positions"* (1996)..........................15

1

## OPINIONS BELOW

Dr. Isaacs filed a Complaint and Demand for Jury Trial in the United States District Court for the District of Central California on May 30, 2006 (06-cv-3338-GAF) against USC, Dean Peter J. Katsufrakis, Dean Brian Henderson, and NIH Director Robert Baughman. The case alleged that the NIH officer had effectively bribed the deans using NIH federal funding to admit his daughter to USC. When Petitioner turned down her advances, Katsufrakis involved himself in cross-allegations of harassment, and then he himself treated Petitioner "inappropriately" with "double-entendres about being caught with [your] pants down." A *Bivens* claim was asserted for the NIH director's use of a federal office to influence the outcome of a retaliatory disciplinary proceeding against Petitioner.

The Individual Defendants were dismissed by stipulation on September 6, 2007, when USC entered into an agreement with Petitioner sealing his disciplinary academic records and affording him factual innocence and a "second chance" to restart his medical career.

On April 28, 2008, USC filed a motion to enforce a settlement that acquitted Isaacs of all charges of any nature whatsoever and annulled all contracts between the parties. Petitioner objected on the grounds the annulment clause, intended to cancel out any record of his matriculation at USC, would also cancel out the 2007 Individual Settlement Agreement. On May 8, 2008, in reliance upon USC counsel's affirmation that

2

the 2008 settlement had "no effect" upon the 2007 Settlement Agreement, District Judge Gary A. Feess ordered the parties to be bound by the settlement, terminating the case.

In 2012, Petitioner was fired by Dartmouth Hitchcock for abiding by the settlements, and not disclosing the sealed academic "professionalism" allegation on his résumé. Petitioner filed suit in the New Hampshire District, case 12-cv-040-LM, alleging IIED and ADA claims from the hazing imparted by Dartmouth to oust him from the federally funded residency program. An evidence spoliation motion directed at Dartmouth's President was denied, and the case was dismissed for failure to state a claim. Petitioner sought *certiorari* for a denied injunction in Petition No 14-179 and for the 12(b)(6) dismissal in Petition No. 14-1421.

In 2014, after two years of deliberations, the New Hampshire Board of Medicine revoked Dr. Isaacs' medical license, stating there was "no evidence" the "Keck matter had been sealed." Petitioner appealed to the NH Supreme Court, then sought certiorari in Petition No. 14-1219.

Dr. Isaacs filed a Complaint and Demand for Jury Trial in the United States District Court for the District of New Hampshire on February 3, 2017, asserting Section 1983 claims against the Board of Medicine, and Rehabilitation Act retaliation claims against Dartmouth, who refused six years of applications from Dr. Isaacs following his improper termination. The case was dismissed on 12(b)(6) grounds, incorrectly determining

3

that Petitioner had never engaged in protected activity under the Rehabilitation Act. A First Circuit appeal was denied, and *certiorari* was sought in Petition No. 18-1411.

In September 2018, the White House was informed of the unadjudicated evidence spoliation conduct allegations against Jim Yong Kim. Three months later, Kim resigned from the Presidency of the World Bank, thereby avoiding investigation.

Also in 2018, Petitioner retained former AUSA Mark Josephs to seek relief under the Administrative Procedural Act (APA) with the Department of Education, to determine his eligibility to practice medicine under relevant student loan guidelines. That case was dismissed on jurisdictional grounds.

With diminishing chances to ever practice medicine absent clarity on the settlement enforceability, Petitioner filed declaratory judgement and RICO claims against Respondent USC in the California Central District on March 12, 2019, alleging somebody leaked Petitioner's sealed USC records for his whistleblower claims of admissions bribery (19-cv-2011-DSF). Later that same day, the FBI brought similar admissions bribery RICO claims against USC in "Operation Varsity Blues."

Petitioner re-filed this case, under FRCP 41(a), to include Respondent Gibson Dunn, an illegal campus ban by an entertainment lawyer, and newly discovered information about a false AAMC profile. That case, 19-cv-08000-DSF, is the underlying case to this petition. USC and Gibson Dunn filed a special anti-SLAPP

4

motion to strike, dismissing the case and awarding attorneys' fees to the Respondents. Petitioner appealed to the Ninth Circuit on both the dismissal (see simultaneously filed Petition), and the fees.

The Ninth Circuit issued a split decision on April 22, 2021, with a Dissent by Circuit Judge Sandra Segal Ikuta, and majority decision by Circuit Judge Milan Smith and visiting District Judge John E. Steele.

A Petition for Rehearing En Banc was likewise split 1-2 on May 28, 2021. Under the "Order Rescinding Prior COVID Orders" issued July 19, 2021, this petition is timely filed in 150 days from the denial of a rehearing.

———————◆———————

## JURISDICTIONAL STATEMENT

The Supreme Court of the United States has jurisdiction under 28 U.S.C. § 1254(1) to review this Petition. Under the All Writs Act, 28 U.S.C. § 1651, this Court has authority to directly issue declaratory judgement on the disputed settlement clauses that have resulted in conflicting rulings spanning multiple states and circuits.

———————◆———————

## CONSTITUTIONAL AND
## STATUTORY PROVISIONS

Federal Rules of Civil Procedure Rule 41(d): Costs of a Previously Dismissed Action. If a plaintiff who

5

previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court:

> (1)   may order the plaintiff to pay all or part of the costs of that previous action;

————————◆————————

## STATEMENT OF THE CASE

This petition concerns an attorneys' fees award of nearly a quarter million dollars to Gibson Dunn and USC against an aspiring neurosurgeon subject to oppressive tactics in his fourteen-year quest to enforce a settlement agreement so that he can practice medicine. The petition for *writ of certiorari* follows a denied appeal to the Ninth Circuit, reached after both parties presented oral arguments to the panel of three judges.

————————◆————————

## ARGUMENT

Counsel for USC plainly misrepresented critical facts to the Ninth Circuit, falsely arguing that a 2007 Settlement Agreement was not enforceable, because the parties purportedly didn't intend it to be. But fourteen years earlier, USC counsel argued the exact opposite to the Central California District Court. Both assertions cannot be simultaneously valid. Protecting the finality and sanctity of settlement agreements is a fundamental operation of the Court, and therefore reversing the District Court order is necessary. Dr. Isaacs relied upon the validity of that court settlement

6

when he proceeded through four years of medical school, achieving neurosurgeon level National Boards scores.

At the recorded Zoom hearing, Circuit Judge Ikuto asked USC and Gibson Dunn no less than five times, in five distinct ways, whether the intent of the 2008 Settlement Agreement was to void enforceability of the 2007 Settlement Agreement. Counsel for USC and Gibson Dunn lied to the Ninth Circuit's panel of three judges, and lied multiple times, and the recorded words and videotaped facial expressions leave little to interpretation:

> **Judge Segal Ikuta:**  "Was that the intent Isaacs could not enforce the 2007 settlement?" . . . "The 2008 agreement doesn't preclude USC from disclosing settlement records, is that your position?"

> **USC/Gibson Dunn:**  "Yes . . . he could not enforce any breach of that agreement, again, predating 2008."

USC should be fined and sanctioned for lying to the courts, but instead, anti-SLAPP legislation has been turned on its head, a RICO claim dismissed, and the victim punished to the tune of $200k. The majority reasoning is that their "dissenting colleague raises an argument not raised by either party or considered by the district court below," namely, that USC represented to the District Court in 2008 that the intent of the parties *was indeed* to allow enforcement of the 2007 settlement.:

7

*"Plaintiff argues in his Opposition that Paragraph 22 of the Settlement Agreement may have "accidentally" superseded the provision contained in the parties' earlier partial settlement in which USC agreed not to "release or disclose Isaacs' disciplinary records to any third party" in exchange for the Plaintiff's dismissal of the Individual Defendants from the lawsuit. Paragraph 22 makes clear, however, that the Settlement Agreement supersedes prior agreements reached on the "subject matter" covered in the Settlement Agreement. The current "global" Settlement Agreement does not deal with nor address sealing of disclosing Plaintiff's disciplinary records, and therefore has no effect on the prior partial settlement"* (06-cv-3338-GAF Docket#80 p.10)."

It is entirely erroneous to state this argument was novel. The District Court was presented with this argument. See 19-cv-08000 *Plaintiff's Opposition to Defendant USC's Motion for Fees*, page 5. The majority opinion likewise claims this argument is "not relevant to the question before this court," but "such an interpretation is unreasonable," as the dissenting opinion plainly points out. Not only is the interpretation of the settlement agreement relevant, but it is also central to this case and nearly a dozen related cases, including now a landmark Apple antitrust case. To state otherwise is insulting to common sense and insulting to anyone who watched the five minutes of the Zoom hearing where the Appeals' Court questioned opposing counsel on the matter, only to be lied to again and again.

8

Whether or not the 2007 Settlement Agreement was enforceable, which it was, the fraudulently concealed AAMC profile also breached the 2008 Settlement Agreement. The 2008 Settlement Agreement acquitted Isaacs of all charges, known and unknown, of any nature whatsoever. In spite of that, USC's AAMC profile for Dr. Isaacs continues to be published nationwide, falsely citing dismissal for non-academic (i.e., criminal or quasi-criminal violations). Isaacs was acquitted of any charges, if they ever existed at USC. The dismissal was for academic reasons (see below). Not only is the AAMC profile in breach of both settlements, but it was and continues to be false. It was illegally withheld from discovery in 2007 in a clear attempt to mislead Isaacs. It is unconscionable to reward USC for their conduct, namely, fraudulently concealing the AAMC profile from discovery just as Plaintiff entered into the 2008 Settlement Agreement. This all falls within a pattern of witness retaliation and evidence spoliation meant to block Petitioner from ever enforcing his settlement and moving forward with his medical career. In the matter of justice, the case should be remanded for proper examination and investigation of these serious allegations, and attorneys' fees should be denied.

The AAMC profile may be likened to an online real-time database publication status. It was not solely pre-2008 activity. Every time Isaacs applies to a hospital program, the AAMC profile shows up. USC is perpetually violating their settlement agreement. It defies morality to fine Isaacs for seeking to take down this constant libelous threat to his career and well-being,

9

which prevents him from contributing to society his skills as a doctor.

Additionally, it is noted that the Motion to Strike in the underlying appeal should have been granted. The parties' settlement addressed incorrect allegations against Dr. Isaacs and **dismissed** them, with **acquittal**, under **seal**, including whether there was anyone that could be labeled a "victim" or any "campus threats." Those statements alone would prevent a physician from obtaining employment at any hospital. Worse yet, Gibson Dunn is actively quoting pleadings such as these in an attempt to shield Apple from antitrust liability and prevent Dr. Isaacs from even working on medical apps, let alone, practicing clinical medicine. USC's pleadings in the lower courts were demonstrably false and *defy the clear decision made by USC faculty in 2006 to address this matter as an academic one, rather than a criminal one*:

> Dr. Katsufrakis reviewed the Committee's possible options, and referred to the "Essential Characteristics" which Jeff signed prior to his admission. As this issue has not been resolved since November, it will be approached as an academic issue, regarding professional development. Possible options might range from doing nothing to dismissal, or something in the middle, such as a leave of absence. Dr. Schechter said when he met with Jeff previously, he told him if there was any further contact he would be suspended.
>
> USC 209

10

It is long overdue that the Petitioner be exonerated. To fine him, after fourteen years of petitioning to work in medicine, is inhumane and reeks of political retribution. USC's Vice President entered into an agreement with Isaacs "dismissing all administrative charges" and "acquitting Isaacs of any charges, known of unknown, of any nature whatsoever." USC is bound to this contract, even if they lie to the Court and aver differently. Under the All Writs Act, and in recognition of now *five* certiorari petitions stemming from multiple states and circuits, Petitioner implores the Supreme Court to issue a simple declaratory judgement as to whether or not he was acquitted and deemed "factually innocent." In doing so, the Court could issue the exonerating declaratory judgment Dr. Isaacs has sought for over a decade and allow him to proceed with his neurosurgery career. In the interests of justice and society, this Honorable Court, the highest of the land, may finally put this matter to rest and increase the public good by ending a decade and a half of academic-political scapegoating.

## Standard Of Review

The questions presented in this petition of the District Court's award of attorneys' fees and costs involve the application of law to facts. Accordingly, the Appeals Court's review was *de novo*. *See Shapira v. Lifetech Resources, LLC*, 22 Cal. App. 5th 429, 436 (2018); *see also. Carver v. Chevron U.S.A., Inc.*, 97 Cal. App. 4th 132, 142 (2002) ("a determination of the legal basis for an attorney fee award is a question of law to be reviewed de novo").

11

The District Court lacked a valid basis to rely upon language in the 2008 Settlement Agreement between Dr. Isaacs and Keck to assess attorneys' fees against Dr. Isaacs. That language, contained in Paragraph 6 of the 2008 Agreement, provided for assessment of attorneys' fees against Dr. Isaacs if he brought litigation based on "events, acts or omissions through and including the date [of execution of the Settlement Agreement]." *Appeal Record Excerpt at 207*. Virtually all of Dr. Isaacs' Complaint brought causes of action based on allegations that occurred after execution of the 2008 Settlement Agreement. The District Court was incorrect in finding otherwise, and the award of attorneys' fees and costs for the case below should be reversed.

In its Order granting Keck's Motion for Attorneys' fees and Costs, the District Court stated that it awarded fees and costs for the lower court action "pursuant to the 2008 settlement agreement." *Appeals Rec. at 5*. The Court specifically referenced Paragraph 6 of that Agreement, which provided in relevant part:

> *if [Dr. Isaacs] violates the promises made in this paragraph and files a lawsuit charge, claim for arbitration, complaint, or appeal of any kind with any court or administrative or governmental agency against USC or any other persons or entities released herein, based on any events, acts or omissions through and including the date hereof, Isaacs will pay for all costs and losses, including actual attorney's fees, incurred by USC in connection with said lawsuit, charge, complaint, or appeal.*

12

*Appeals Rec. at 207.*[5] After describing this provision, the Court found that "a large proportion of the case involves matters that occurred before the 2008 settlement." *Rec. at 6.* The Court subsequently characterized the post-settlement agreement as "technically . . . based on actions subsequent to the 2008 settlement" and cited several isolated paragraphs as "references to" acts prior to the date of the settlement agreement. *Rec. at 6.*

The Court's characterization of Dr. Isaacs' Complaint is misguided. Excluding the alternate claim of rescission, the Complaint contains twelve (12) counts. Ten, or 83 percent, of these claims involve exclusively acts, events and omissions that occurred after execution of the 2008 Settlement Agreement. Accordingly, the content of the Complaint was contrary to the court's conclusion that "a large proportion of the case involves matters that occurred before the 2008 settlement." The court's statement is simply incorrect.

Moreover, as to the other 17 percent, Dr. Isaacs did not discover the basis for the constructive fraud and fraud claims relied upon by the Court as involving matters predating the Settlement Agreement until 2019. Dr. Isaacs' Complaint begins its factual allegations with an emphasis on his discovery in 2019 of "substantial new evidence" and later describes his discovery of the AAMC profile identifying his Keck

---

[5] A settlement agreement is a contract to which ordinary legal principles of contract interpretation apply. *See Canaan Taiwanese Christian Church v. All World Mission Ministries*, 211 Cal. App. 4th 1115, 1123 (2012).

13

attendance and Keck's exclusion of that profile from his student file in earlier litigation-related discovery. *Appeals Rec. at 65*. That discovery was an "act, event [or] omission" that occurred after the execution of the 2008 Settlement Agreement. Accordingly, even the fraud claims relied upon by the Court occurred at least partially after the Settlement Agreement execution.

The isolated Complaint paragraphs cited by the District Court do not save the Court's analysis or conclusion. These paragraphs fall into the following categories: background facts, ¶¶ 22, 184, 276; general references to the 14-year period between Dr. Isaacs' enrollment and the filing of the Complaint, ¶¶ 9 254, 249, 314; partially events occurring in 2018 and 2019, ¶¶ 56, 61; the alternate rescission claim, ¶ 326; and actually, no pre-Settlement Agreement allegations at all. ¶¶ 62, 256, 277. *See Complaint Beginning at Rec. at 62*. None of these paragraphs converted a predominantly post-Settlement Agreement Complaint and action into a pre-Agreement case.

The District Court relied exclusively on Paragraph 6 of the 2008 Settlement Agreement to award attorneys' fees for defending against Dr. Isaacs' action below. That reliance was based on an incorrect characterization of the Complaint's allegations, and the Settlement Agreement language did not provide any basis for the award of attorneys' fees, as substantial as they were. As the dissenting judge points out, Dr. Isaacs was seeking to enforce a settlement agreement and the intent of the parties was to allow enforcement.

14

The award of fees relating to an enforcement action is erroneous.

The lower court also improperly awarded Keck attorneys' fees for defending against the matter that Dr. Isaacs voluntarily dismissed under FRCP 41. California Civil Code Section 717(b)(2) specifically bars the award of attorneys' fees relating to voluntarily dismissed cases and provides no discretion for courts to do so in any circumstances. The Court's award of attorneys' fees violated this statutory provision. Moreover, Rule 41(d), relied upon the Court to award attorneys' fees, does not, by its plain language, provide for the award of attorneys' fees – it only provides for the award of costs. While the Ninth Circuit never has ruled on this issue, and the District Courts in the Ninth Circuit are split, the better argument supports the plain language of 41(d) only allowing for the award of costs, as "costs" are identified in the Rule, but fees are not.

California Civil Code Section 1717 governs the award of attorneys' fees and costs in the context of contract provisions providing for such awards in particular circumstances. This statute provides that the prevailing party in an action on the contract is the party entitled to receive attorneys' fees and costs under the contract. The statute also provides, however, that in the case of voluntary dismissal, "there shall be no prevailing party for purposes of this section." Cal. Civ. Code § 1717(b)(2). California courts have routinely interpreted this statute as consistent with its plain language and barring the award of attorneys' fees when a plaintiff voluntarily dismisses its case. *See*

15

*Shapira*, 22 Cal. App. at 441 (defendant could not be a prevailing party under Section 1717 after plaintiff voluntarily dismissed its case and therefore that provision "barred an award of attorney fees"); *Mesa Shopping Center-East, LLC v. O Hill*, 232 Cal. App. 4th 890, 903 (2014) ("court 'had no discretion to award fees' after plaintiff voluntarily dismissed action"); *Santisas v. Goodin*, 17 Cal. App. 4th 599, 615-17 (1998) (Section 1717(b)(2) bars recovery of attorneys' fees even in cases in which the contract provided for attorneys' fees in the case of voluntary dismissal).

The oral argument conducted by the three-judge panel raised an issue not fully briefed, namely, that of judicial estoppel. The doctrine of judicial estoppel was developed in *Hamilton v. Zimmerman*, 37 Tenn. (5 Sneed) 39 (1857) by the Tennessee Supreme Court, which intended to "uphold the proper reverence for the sanctity of the oath." In short, the doctrine states that a party can't "have it both ways": a party is estopped from taking a position that is contrary to a position it has taken in earlier legal proceedings. The doctrine is most relevant, and most often surfaces in cases like this that span a decade or longer. A common example is contradictory positions taken, for example, in divorce and subsequent bankruptcy proceedings. An entire *Loyola of Los Angeles Law Review* article made the case, in 1996, that the Ninth Circuit should issue more comprehensive guidance regarding this theorem. "*The Judiciary Says, You Can't Have it Both Ways: Judicial Estoppel—a Doctrine Preventing Inconsistent Positions*" (1996), page 324. That article's Appendix shows

16

that nearly every other circuit in America has clearly defined elements of judicial estoppel, but for the Ninth Circuit. As best as counsel is aware, the Ninth Circuit has since only narrowly addressed a bankruptcy judicial estoppel case, and the loophole remains.

While it has become an unfortunate reality that every day, in every court, attorneys file less-than-scrupulous pleadings, knowingly false statements shouldn't be immune from estoppel when appropriate. By lying to the Ninth Circuit, USC and Gibson Dunn subverted an aspiring neurosurgeon's fifteen-year battle to practice medicine. This isn't a little white lie. Rather, the parties demonstrated irreverence for the sanctity of the oath, so that they could win their case. An influential defendant such as USC Gibson Dunn shouldn't be allowed to lie, just because they can get away with it. It is time and place to revive the doctrine of judicial estoppel that the Tennessee Supreme Court had the foresight to elucidate in the 1800s. Lower courts must be reminded that lawyer's pleadings – just like a witness placing their hand on the bible – are under the sanctity of the oath. Our legal system functions on the assumption that lawyers, like witnesses, are telling the truth.

Under this doctrine, the following elemental requirements exist in nearly every other circuit:

1) The party's position is clearly inconsistent with a prior position, from which a party gained a benefit in a different proceeding

17

2) Acceptance of the inconsistent position would yield a perception of bias or a misled court,

3) An unfair advantage flows to the party if not estopped, and

4) The inconsistency was not a mistake or inadvertence.

### Analysis of Questions Presented

**1. Under the doctrine of judicial estoppel, the lower courts had a duty to uphold the sanctity of the oath and estop USC and Gibson Dunn from arguing inconsistent positions regarding the settlement agreements meant only to achieve litigation advantage.**

In 2008, Dr. Isaacs, then medical student Isaacs, was concerned that a 2008 Settlement Agreement with USC would supersede and cancel a 2007 agreement, which cleared his name and allowed him to proceed with his medical career. At the time, USC argued without ambiguity that the 2008 agreement covered "different subject matter" and the 2007 agreement remained enforceable. Unfortunately, Isaacs' fear in 2008 was warranted: USC represented to the Ninth Circuit that the intent of the 2008 settlement was in fact to cancel the 2007 agreement.

All the elements to invoke judicial estoppel were plead in this present litigation. First, USC benefitted from the prior position: Isaacs had sought to void the 2008 Settlement Agreement and proceed with

18

litigation, but USC closed out the case by assuring the 2007 Settlement Agreement remained in force. Second, there can be no reasonable belief this inconsistent positioning was a mistake. USC operates a highly ranked law school, and it is represented by a law firm with near limitless legal resources. There is simply no argument that this inconsistent positioning was "accidental." It cost Dr. Isaacs his career, and $200k in extraordinary "attorney's fees" to Gibson Dunn, which certainly meets the perception of bias and unfair flow thresholds of the remaining two elements.

In any other circuit, the doctrine of judicial estoppel would have been recognized, as a result, Petitioner could today be practicing medicine and free of a $200k burden to Gibson Dunn.

The Ninth Circuit, more precisely the majority of a 1-2 split, stated the inconsistent irreverence to the oath was "irrelevant," but the dissenting opinion, without directly referencing the judicial estoppel doctrine, argued that the discrepancy "was not reasonable."

The essence and intent of a judicial estoppel invocation were indeed plead. Attorney Josephs stated in the hearing that, although he didn't have the thirteen-year-old case citation in front of him, he understood inconsistent positioning to be a concern. Within a few days, Attorney Josephs filed a motion to supplement the oral argument with the appropriate case citation from 2008. A petition for rehearing specifically pointed out USC had "lied" – five times – to the Court. The

19

dissenting opinion stated the inconsistency was "not reasonable."

For these reasons, it is respectfully requested that *certiorari* be granted so that this loophole – where an attorney can take on contradictory arguments – be closed in the Ninth Circuit. Dr Isaacs spent thirteen years hoping that USC academic medical deans were not above the law. This saga apparently failed, at the end because the Ninth Circuit felt the sanctity of the oath did not apply to such highly ranked academics.

The parties – and the public have a right to know if the Ninth Circuit differs from every other circuit in the country. Without precedent establishing the elements, district courts in this circuit effectively face a loophole where pleadings (and parties) are exempt from judicial estoppel, that is, they are exempt from being held to the sanctity of their oath in prior proceedings.

## 2. USC and Gibson Dunn asserted an unacceptable lie to the Ninth Circuit, when asked multiple times whether or not the intent of the Isaacs-USC 2008 Settlement Agreement was to invalidate the Isaacs-USC 2007 settlement.

This case, and Petitioners' entire adult life, surrounds the interpretation and enforceability of a single clause in a 2007 Settlement Agreement meant to seal and clear his contested academic record at USC. In a motion to terminate the 2008 lawsuit, where Petitioner

20

raised the issue of the 2007 Settlement Agreement, then USC-counsel Robin Dal Soglio stated:

> *"The current 'global' Settlement Agreement does not deal with nor address sealing of disclosing Plaintiff's disciplinary records, and therefore has no effect on the prior partial settlement* (06-cv-3338-GAF Docket#80 p.10)."

This statement, of course, is polar opposite to what USC and Gibson Dunn argued over a decade later at the Ninth Circuit hearing:

> **Judge Segal Ikuta:** "Was that the intent Isaacs could not enforce the 2007 settlement?" . . . "The 2008 agreement doesn't preclude USC from disclosing settlement records, is that your position?"

> **USC/Gibson Dunn:** "Yes . . . he could not enforce any breach of that agreement, again, predating 2008."

Both statements cannot be true. Either the parties intended the 2007 settlement to be enforceable, or they didn't. Moreover, this discrepancy cannot be attributed to "minor mistake" or "misinterpretation." The 2008 lawsuit was settled on this core promise by Dal Soglio. Dal Soglio's representation was made with careful deliberation; the progression or dismissal of the 2008 lawsuit depended on this matter. Yet thirteen years later, USC and Gibson Dunn needed to argue the opposite to win the underlying case. So they did exactly that, hoping to avoid scrutiny and get away with their lie, at Dr. Isaacs' expense. It almost worked, but for the

21

fact the Honorable Judge Ikuta called it out as "unreasonable."

Regardless of whether the lower courts should have estopped the argument (see above), they certainly should not have dignified such a meritless lie and issued a Ninth Circuit opinion based on it. (Notably, the Ninth Circuit refused to publish the opinion, despite Petitioner-Appellant's request to do so). USC and Gibson Dunn's shameful litigation conduct has ramifications to the rest of Dr. Isaacs' life; the Supreme Court is respectfully petitioned to address Respondents' dishonesty in the lower court by granting *certiorari*.

**3. In 2008, USC and Dal Soglio made a prior representation that a 2007 settlement sealing his records remained in effect. A dissenting Ninth Circuit judge agreed with this interpretation. Dr. Isaacs' medical license (see 2018 cert petition) was revoked making the same representation to the NH Board of Medicine. As such, a physician has been wrongly barred from medical practice, and even medical app development, because he adopted the same contract interpretation as a Ninth Circuit judge.**

Perhaps most unconscionable here is not the fees themselves, but the implications of permitting USC to change a settlement contact's supposed intent, thirteen years after the fact. Dr. Isaacs based his residency applications largely upon the language of the 2007 Settlement Agreement that sealed his records, or granted

22

him "factual innocence" as described in the underlying
complaint. Several competent authorities have re-
viewed this matter and concurred with the interpreta-
tion of factual innocence. For example, the American
Academy of Medical Colleges (AAMC) in DC and the
New Hampshire Employment Tribunal both upheld
this interpretation. On the other hand, the New Hamp-
shire Board of Medicine revoked Dr. Isaacs' medical li-
cense finding "no evidence his USC records were
sealed."

Those divergent opinions resulted in Dr. Isaacs'
previously filed *certiorari* petition, No. 14-1219 (*Jeffrey
D. Isaacs v. New Hampshire Board of Medicine*), which
was denied.

Without any satisfactory resolution to this diver-
gent ruling, a significant motivation for filing the
underlying RICO action against USC was to seek de-
claratory judgement on the matter. That alone should
have been a call to action for the District Judge to
rule on the matter. Had the judge afforded any such
diligence to the declaratory judgment, not only would
the conflicting opinions have been resolved, but the
fees award would not have issued. This is because
proper analysis of the declaratory judgement would
have held both 2007 and 2008 Settlement Agreements
in full effect, as promised by USC and Robin Dal Soglio.
Alternatively, the judge would have ruled that no con-
sideration existed for Isaacs, and that the contracts
were voided on multiple grounds as illegal "hush"
agreements – exactly what USC did in the Puliatfito
settlement. In that case, the attorneys' fee provisions

23

would have been voided. Hence, the declaratory judgement sought in this case had two possible outcomes – neither of which permitted attorneys' fees. For this reason alone, and in the interest of judicial economy in this case, and related cases (including Apple), the United States Supreme Court should address this declaratory matter directly, under the All Writs Act.

There exists little question that a significant number of lawyers have made much of a career from fifteen years of tangential litigation concerning the Isaacs-USC settlement. Largely, their unscrupulous arguments denied the existence of the settlement: Gibson Dunn argued "nothing acquitted Isaacs," and the NH Board argued "no evidence" of the settlement existed. While the Supreme Court may not be able to reopen the 14-1219 petition from seven years ago, under the All Writs Act the Court is implored to resolve this ongoing controversy and prevent further harm to Dr Isaacs by directly issuing a declaratory judgement on the meaning of the sealed disciplinary records or remanding the matter to the District Court.

## 4. The plain language of FRCP 41(d) is limited to costs. The District Judge abused discretion to award of attorneys' fees under this Rule.

In awarding attorneys' fees after Dr. Isaacs voluntarily dismissed the complaint he filed in September 2019, the Court ignored Section 1717(b)(2).

24

Instead, it relied upon Rule 41(d) and found that Dr. Isaacs' voluntary dismissal was "illusory" and that the lower court case that went forward was a "direct continuation of the prior case." Under the statutory language and caselaw cited above, however, the District Court did not possess the discretion to award attorneys' fees based on its characterization of Dr. Isaacs' voluntary dismissal. The statutory language is "there shall not be" a prevailing party, and, without such a party, the statute provides no basis to award attorneys' fees in contract actions. Accordingly, once Dr. Isaacs voluntary dismissed, Section 1717(b)(2) barred the District Court from awarding attorneys' fees under the Settlement Agreement.

Further, the Rule of Civil Procedure upon which the District Court explicitly relied, Rule 41(d), explicitly provides for costs only and does not identify attorneys' fees as transfers it authorizes. Rule 41(d) provides that "[i]f a plaintiff who previously dismissed an action in any court files an action based or including the same claim against the same defendant, the court: (1) may order the plaintiff to pay all or part of the costs of that previous action; and (2) may stay the proceedings until the plaintiff has complied." The Rule says nothing explicit about attorneys' fees.

District Courts within the Ninth Circuit, in the absence of binding authority on the issue, have held that Rule 41(d) does not authorize the award of attorneys' fees. For example, in *Banga v. First United States, N.A.*, 2010 U.S. Dist. LEXIS 142075 (C.D. Cal. Dec. 8, 2010), the court reasoned that it "looks to the plain and

25

ordinary meaning of the words in Rule 41(d), which refers only to 'costs' and not to 'fees.'" *Banga* at *14 (citing *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010)). The court subsequently cited to other Rules of Civil Procedure that explicitly referred to "costs" or "attorney's fees," and concluded that under the "plain language of the rule," the defendant in the case would receive only costs and not attorneys' fees. *Id.* at *15; *see also. Avazian v. Genworth Life & Annuity Ins. Co.*, 2017 U.S. Dist. LEXIS 199070 (C.D. Cal. Dec. 4, 2017) (relying on the "American rule" that in absence of statutory authority, bad faith or willful disobedience of the court, each party should bear its own attorneys' fees); *Caldwell v. Wells Fargo, N.A.*, 2014 U.S. Dist. LEXIS (N.D. Cal. Feb. 26, 2014) (adopting reasoning of *Banga*, in holding that Rule 41(d) does not provide for award of attorneys' fees); *but see Esquivel v. Arau*, 913 F. Supp. 1382, 1388-92 (C.D. Cal. 1996) (collecting cases holding that Rule 41(d) authorizes award of attorneys' fees).

Consistent with the reasoning of *Banga*, the lower court should not have awarded attorneys' fees under Rule 41(d). Interpretation of the plain language of the Rule is the approach that is most consistent with other interpretation doctrines, and, as the *Banga* court surveyed, other Rules of Civil Procedure that apply to attorneys' fees explicitly identify such fees. Rule 41(d) could have added "attorney's fees" to "costs," but it did not, and litigation costs are understood as different from attorneys' fees. The lower court should not have awarded attorneys' fees to Keck based upon Rule 41(d).

26

Particularly concerning are the incompatible implications of the Ninth Circuit approach to 41(d) in this case. On one hand, the Ninth Circuit claimed the Rule 41(d) dismissal of the earlier case was "illusory" and therefore upheld the District Court fees for both cases. But on the other hand, the Ninth Circuit upheld a dismissal of the case on statute of limitations grounds, asserting that the underlying claims didn't relate back to the earlier filed lawsuit. It is mindboggling how the Ninth Circuit believes a predecessor lawsuit to this lawsuit was an "illusory" dismissal, yet at the same time didn't accept that this claim – and the related first claim – noticed the Respondents of active litigation well within the statute of limitations.

5. **Per dissenting Judge Ikuto, is "the [majority] interpretation unreasonable" that a settlement agreement was written with intent to be unenforceable?**

In writing his majority opinion, Circuit Judge Milan Smith states:

> *"Our dissenting colleague raises an argument not raised by either party or considered by the district court below. Whether Isaacs is precluded from enforcing either settlement agreement to which he is a party is not relevant to the question before this court which is whether, pursuant to the 2008 settlement agreement, USC is entitled to the attorneys' fees it incurred in litigating against Isaacs's wide*

27

*variety of claims, some of which relate to and refer to pre-2008 events."*

The commentary misses the point of the dissent – that the parties intended the 2007 settlement to be enforceable, hence the 2008 settlement clause for pre-2008 was invalid, when looked at in the scope of the parties' clear intent. Moreover, the issue is hardly "not relevant." The enforceability of the Isaacs-USC settlement is the heart of the underlying case, as well as several related cases that sought *certiorari* review over the past decade. Dr. Isaacs has been subject to relentless retaliation for trying to enforce these settlements, which necessitated the underlying RICO claim. To award fees against Petitioner that reward Gibson Dunn and USC's outright lies, for merely trying to enforce a settlement agreement so that he can practice medicine, is not conscionable and certainly not tolerable in our society. Or, in the words of Circuit Judge Ikuto, it is "unreasonable."

Intervention by the United States Supreme Court is urgently indicated, because this controversy has grown malignantly to include multiple state medical authorities (AAMC & NH), educational institutions (USC, Dartmouth, Arizona), the World Bank, multinational law firm Gibson Dunn, and now reaches its tentacles into a landmark Apple antitrust actions (see simultaneously filed petition.)

————◆————

28

## CONCLUSION

A writ of *certiorari* should be granted to bring a fair resolution to this decade-and-a-half controversy. Enough is enough. The debate of whether the 2007 Isaacs-USC settlement is enforceable, "irrelevant", or even exists has gone on for nearly fourteen years. Having never seen a jury, or even a semblance of investigation, Petitioner has made extraordinary attempts for justice spanning over a decade, ranging from *pro se* petitions in 2008 to the underlying appeal, conducted by a seasoned former federal prosecutor. As such, the procedural history and the inherent absurd results of a $200k attorneys' fee draws into question the very functioning of our legal system. If Dr. Isaacs cannot enforce a single clause of a settlement agreement in fourteen years, how many others have been denied justice through spoliated evidence, "inconsistent" attorneys' pleadings, unethical anti-SLAPP invocation, or any of the other legal plagues Dr. Isaacs encountered? If Dr. Isaacs prior *certiorari* petitions weren't granted as meeting the threshold for national importance, to let this fourteen-year saga spillover into critically important Apple antitrust matter certainly meets that standard. Respectfully, the United States Supreme Court should send a reminder that the sanctity of the

29

oath, vis-à-vis the 19th Century doctrine of judicial estoppel, still applies in our modern world.

Respectfully submitted,

*Petitioner Jeffrey D. Isaacs, MD, MBA*
   *By his Attorney*:

KEITH A. MATHEWS, ESQ.
ASSOCIATED ATTORNEYS OF NEW ENGLAND
1000 Elm Street, Suite 800
Manchester, NH 03104
Ph. 603-622-8100
keith@aaone.law