Dr. Jeffrey D. Isaacs
11482 Key Deer Circle
Wellington, FL 33449

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORONAVIRUS REPORTER,<br>CALID INC,<br>PRIMARY PRODUCTIONS LLC,<br>DR. JEFFREY D. ISAACS,<br>on behalf of themselves and all others similarly situated<br><br>  Plaintiffs,<br><br>vs.<br><br>APPLE INC.<br>  Defendant. | Case No. 3:21-cv-5567-EMC<br><br>**REPLY IN SUPPORT OF MOTION TO REOPEN CASE**<br><br>**Hearing**<br><br>Date:   July 11, 2024<br>Time:   1:30PM<br>Place:  Courtroom 5, 17th Floor<br><br>The Honorable Edward M. Chen |

**REPLY IN SUPPORT OF MOTION TO REOPEN CASE UNDER FEDERAL RULE OF CIVIL PROCEDURE 60(B)(6) DUE TO NEWLY REVEALED ECONOMIC LANDSCAPE BY THE IMPLEMENTATION OF THE EU DIGITAL MARKETS ACT . 1**

I.    INTRODUCTION ................................................................................................. 1

II.   MISAPPLICATION OF "LAW OF THE CASE" ............................................. 4

III.  MISAPPLICATION OF RULE 60(B)(5) AND 60(B)(6) ...................................... 5

IV.   APPLE FORFEITS MOTION PURSUANT TO *RETLAW* ............................... 7

V.    OBJECTIONS FAIL TO JUSTIFY DISPARAGEMENT OF PLAINTIFF'S DISABILITY ........................................................................................................ 10

VI.   APPLE's REQUEST TO DISMISS MOTION ON BASIS OF PAGE COUNT AGAIN AVOIDS MERITS .................................................................................. 12

**CONCLUSION** ............................................................................................................... 12

**CERTIFICATE OF SERVICE** ................................................................................... 16

CASES

*Foman v. Davis*, 371 U.S. 178 (1962) ---------------------------------------------------------------- 3, 9

*Retlaw Enterprises, Inc. v. Marketron Broadcasting System, Inc.*,

    945 F.2d 245 (9th Cir. 1991) ------------------------------------------------------------------7, 10

*United States v. Alexander*, 106 F.3d 874--------------------------------------------------------------- 4

RULES

Federal Rule of Civil Procedure 60(b)------------------------------------------------------------------- 4

REGULATIONS

European Union's Digital Markets Act (DMA) ------------------------------------------------------- 1

**REPLY IN SUPPORT OF MOTION TO REOPEN CASE UNDER FEDERAL RULE OF CIVIL PROCEDURE 60(b)(6) DUE TO NEWLY REVEALED ECONOMIC LANDSCAPE BY THE IMPLEMENTATION OF THE EU DIGITAL MARKETS ACT**

### I.  INTRODUCTION

Following years of investigation, the European Union competition authorities enacted rules requiring Apple open up App Store distribution to third parties ("sideloading"). Apple responded by issuing a Core Technology Fee, intended to defeat the new EU regulation.[1] Plaintiff Dr. Jeffrey Isaacs brought a Motion to Reopen the underlying case, in part to prevent the same outcome from happening in the United States. Apple objected last week on the basis that this motion, about the freedoms of nearly every human on this planet to use the smartphone they own, is "abusive" and "vexatious." Worse yet, Apple doubled-down that the "neuropsychiatric disability" of Plaintiff is somehow relevant to their Sherman Act misconduct. Apple now asserts that the link between CTF and their historic notarization services profits is "invented interpretation," which apparently means the fictitious belief of a disabled person. (*Apple Objection*, p.10) This Court is witnessing real-time ADA violations intended to discredit antitrust litigation.

This motion to reopen the case emerges from significant new developments that sharply challenge the premises of the prior dismissal, highlighting an evolving competitive and regulatory environment surrounding Apple Inc. The motion specifically draws attention to the enactment of the European Union's Digital Markets Act (DMA) and subsequent response that illuminated the existence of a market for iOS notary stamps—a market that this Court previously found unsubstantiated. It further references a recent verdict in the *Epic Games* litigation, where new legal interpretations, significantly, a guilty jury verdict applied single-brand antitrust market theory to app distribution digital marketplace behaviors similar to or identical to that contested in this case.

---

[1] EU DMA regulations are nearly identical to proposed bipartisan 2023 US senate bills with 73% popular support, never brought to vote after Apple's unprecedented lobbying efforts.

As outlined in the motion, "the introduction of Apple's Core Technology Fee (CTF), ostensibly a compliance measure with the DMA, effectively institutes a de facto 'Notary Stamp Fee' for Apple's notarization process" (*Motion to Reopen,* p. 12). This fee mirrors the monopolistic practices previously alleged and dismissed as implausible, now substantiated by Apple's own adjustments in response to regulatory pressures. Moreover, the *Epic Games* verdict against Google for anticompetitive practices in app distribution "directly contradicts the foundational premises relied upon by this Court in its dismissal" (*Motion to Reopen*, p. 8), offering a new legal precedent that reinforces the applicability of the single-brand market theories described by the Plaintiff. These pivotal elements underscore the necessity for a thorough reevaluation of the case in light of compelling new evidence and legal developments.

Further underscoring the compelling need for reconsideration is the recent antitrust action lodged by the Department of Justice against Apple, which alleges conduct strikingly similar to that contended by the Plaintiff concerning cross-platform video communications apps, amongst others. The DOJ's complaint details how Apple has impaired third-party, cross-platform video communications apps while favoring its own app, FaceTime, echoing the antitrust injuries and market manipulations described in this case (*DOJ Complaint Exhibit*, p. 120-129). This parallel litigation by a federal authority not only underscores a strong public policy interest in addressing such monopolistic behaviors rather than dismissing claims brought by small developers with less resources than DOJ. Significantly, the DOJ's detailed market definitions and delineations of antitrust injury directly counter previous assertions of the futility of amending the complaint in this case; there exists no reasonable basis to refute that this developer may now clearly "state a claim" based on exhaustive research and documentation by DOJ. The alignment of the DOJ's allegations with those of the Plaintiff transforms the landscape of litigation pubic interest, demonstrating that an amendment to reassert claims related to cross-platform video conduct would not only be viable but necessary to

align with the current judicial understanding of competitive harms in the digital economy. Moreover, Multi-District Litigation is now underway based on private lawsuits following DOJ's guidance. This case should be adjudicated accordingly.

In their extensive objection to reopening this case, Apple Inc. has deployed a litany of characterizations against the "frivolous" motion. They assert with unwavering confidence that "nothing in the world can change the dismissal," and celebrate their victories at various judicial levels, proclaiming that "no amount of testimony can change the insufficiency of Plaintiffs' complaints" (*Apple Objection*, p. 14).

Absent from Apple's objection is any substantive denial of the newly disclosed market realities for iOS notary stamps, revealed through the implementation of the EU Digital Markets Act (DMA). They sidestep the undeniable implications of these regulatory changes which now tether what was once claimed to be an "untethered" market to a stark economic reality. Nor does Apple meaningfully confront the U.S. Department of Justice's recent allegations, which mirror the Plaintiff's claims regarding Apple's exclusionary conduct towards third-party, cross-platform video communication apps—an omission that speaks volumes about the merits of reopening this case under the principles established in *Foman v. Davis*, 371 U.S. 178 (1962), where the futility of amendment no longer holds water given the parallel legal narratives now officially recognized by federal authorities.

Moreover, Apple's response glaringly omits any acknowledgement of their strategic compliance maneuvers in response to both the *Epic Games* litigation and EU regulatory directives—actions that many respectable witnesses characterize as "malicious compliance." Their document lacks any engagement with the notion that public policy, particularly the enforcement of antitrust standards in light of such conduct, demands a heightened scrutiny and a revisit of previously dismissed claims.

In essence, while Apple's objection is replete with declarations of procedural victories and dismissals of the Plaintiff's capabilities and intentions, it conspicuously avoids engaging with the substantive shifts in the legal and regulatory landscape that directly bear on the dismissed claims. This oversight, whether strategic or otherwise, underscores a continued pattern of behavior that this Court must consider. The following sections will address these gaps and argue why this Court should not only reconsider its prior rulings but also recognize the changed circumstances that justify the reopening of this case.

## II.    MISAPPLICATION OF "LAW OF THE CASE"

In their response, Apple Inc. relies heavily on the "law of the case" doctrine to oppose the motion for relief under Federal Rule of Civil Procedure 60(b). They argue that since the merits of case have been previously adjudicated and dismissed, and affirmed on appeal, this finality precludes any subsequent reconsideration or reopening of the case.

Apple's argument presents a paradox wherein any motion under Rule 60(b) could be categorically dismissed using the "law of the case" doctrine. This rigid interpretation fails to recognize the purpose and explicit provisions of Rule 60(b), which exists precisely to address situations where exceptional circumstances or manifest injustices require deviation from the usual finality of judgments. The doctrine is not a tool to perpetually shield previous judgments from correction, especially when new evidence, changes in law, or other pivotal factors come into play after a decision has been rendered.

The "law of the case" doctrine is designed to maintain consistency and prevent the re-litigation of issues that have been decisively settled in earlier stages of the same case. However, it is not absolute. Courts retain the discretion to reconsider earlier rulings if it is clear that the initial decision was materially flawed, if new evidence has surfaced, or if there has been a significant change in the law that undermines the decision's foundations (*United States v. Alexander*, 106 F.3d 874). Rule

60(b) serves as a critical safeguard within this framework, providing a mechanism to correct or reopen a case if maintaining the original judgment would be "inconsistent with substantial justice" (Federal Rules of Civil Procedure, Rule 60(b)(6)).

Apple's reliance on the "law of the case" as an absolute barrier to Rule 60(b) motions employs circular logic: if every adverse ruling establishes unchallengeable law of the case, then Rule 60(b) would never apply.

The "law of the case" doctrine simply does not apply to the Core Technology Fee (CTF). This new development, which did not form part of the original case record and was not available during previous hearings, is crucial. The CTF substantively supports the previously contested notion of an "iOS notary stamps" market, effectively validating the market's existence and Apple's monopolistic control over it. Since this fee was introduced subsequent to the appellate review, it was understandably not considered by the Ninth Circuit, and does not fall within the realm of the "law of the case."

Given that the CTF directly relates to the economic realities of the notary stamps market—a core issue in the original dispute—its emergence is a pivotal development that the Ninth Circuit had no opportunity to consider.

### III.    MISAPPLICATION OF RULE 60(B)(5) AND 60(B)(6)

Apple's assertion that Rule 60(b)(5) is inapplicable because the judgment is not "prospective" fails to acknowledge the broader implications of this Court's original dismissal. The Court's dismissal order simultaneously denied an injunction as moot. Prospective judgment is typically associated with ongoing judgments like injunctions, but "prospective" here encompasses a ruling with lasting effects that extend beyond the immediate case. A dismissal under Rule 12(b)(6) allows an antitrust injury to prospectively continue; this is not a normal case about one party's damages or lack thereof. Any further attempt to enjoin notary stamp conduct will be prospectively affected by the judgment here,

because notary stamps were deemed untethered to reality. That would mean that if Apple implemented a CTF in America, this case would prospectively preempt any challenge to the CTF.

Moreover, the recent verdict in the *Epic Games* case against Google presents a change in the legal understanding of market definitions within technology and antitrust law. This contradicts some of the fundamental legal bases relied upon in dismissing this case. Rule 60(b)(5) states relief is warranted if it is "based on an earlier judgment that has been reversed or vacated," and while not directly reversed or vacated, the principles underpinning the *Epic Games* ruling significantly deviate and conflict from those this Court relied upon, warranting a reevaluation under the second prong of 60(b)(5).

Apple's interpretation of Rule 60(b)(6) is excessively narrow, ignoring its designation as a catch-all provision intended to ensure justice is done. The emergence of the Core Technology Fee (CTF) introduced by Apple as a response to the Digital Markets Act (DMA) constitutes a significant new fact that was not and could not have been presented earlier as it did not then exist. This new fee structure mirrors the notary stamp system challenged in our original complaint and directly impacts the core issues of this case. The assertion that the developments cited in the motion do not affect the governing law overlooks the essence of Rule 60(b)(6), which allows for relief in cases of extraordinary circumstances where adherence to a final judgment is no longer equitable. The introduction of the CTF, covered extensively in the media, casts new light on Apple's practices and their competitive implications, fulfilling the extraordinary circumstances clause. Hence, even if 60(b)(5) prong 3 applied for prospective relief, the catch-all 60(b)(6) still is in force, because we (American developers) should be able to contest a CTF notary fee, whether hidden or revealed by EU policy.

The Court's prior decisions—both the dismissal of the case and the denial of the preliminary injunction—therefore meet the criteria for reconsideration under Rule 60(b)(5), as they have

established a lasting barrier to the pursuit of claims that are now supported by new evidence and developments, particularly those related to Apple's implementation of the Core Technology Fee in response to the Digital Markets Act.

### IV. APPLE FORFEITS MOTION PURSUANT TO *RETLAW*

In its objection, Apple summarily dismisses the pivotal allegation regarding the Core Technology Fee (CTF) with a single sentence, asserting the "invented interpretation of Apple's Core Technology Fee is unsupported and untrue" (Dkt. 119, p. 15). This cursory dismissal fails to engage substantively with the allegation, effectively forfeiting the issue under the principles established in *Retlaw Enterprises, Inc. v. Marketron Broadcasting System, Inc.*, 945 F.2d 245 (9th Cir. 1991), which holds that a party forfeits the right to argue an issue not properly raised or developed in its initial pleadings.

Apple's failure to provide a detailed rebuttal or evidentiary counter to the specific claims about the CTF suggests a waiver of any detailed defense against it. This perfunctory response does not satisfy the requirement to "specifically and distinctly" contest issues presented in an opposing motion, as mandated by Ninth Circuit precedent. Therefore, the court should treat the issue of the CTF and its implications as conceded for the purposes of this motion.

Moreover, Apple again carefully chose its language to disparage plaintiff. That CTF relates to notary stamps is just an "invented interpretation" is just another thinly veiled attempt to win an antitrust argument at the expense of Plaintiff's neuropsychiatric disability. Local rules permitted Apple to spend 25 pages on a rebuttal to the CTF controversy – a matter of significant importance covered by international press (See Press Coverage Exhibit.) Apple chose to ignore the *entire* issue, but for one sentence declaring the motion an "invented interpretation" of Plaintiff. This invokes *Retlaw* and forfeits the motion. In the alternative, an evidentiary hearing is warranted to determine whether or not the CTF relation to notary stamps is an "invented interpretation." Apple has not

provided substantial proof of their position to warrant a dismissal of this concept without judicial investigation.

**Additionally, Apple Forfeited by Advancing Objections that Failed to Materially Analyze Relation of DOJ Litigation to the Underlying Case**

Despite Apple's cursory dismissal of the Department of Justice's lawsuit as irrelevant, the substantive nature of the DOJ's allegations directly supports the claims previously made in this case, particularly regarding anticompetitive practices in cross-platform video communication apps. Apple's brief fails to address the crux of the matter: the DOJ's allegations provide independent governmental corroboration of the anticompetitive conduct Plaintiff has long accused Apple of perpetrating.

Apple's response to the introduction of the DOJ's lawsuit in our motion does not engage with the public policy implications presented by the Plaintiff. By failing to substantively refute or even acknowledge DOJ's parallel claims, Apple effectively bypasses new evidence presented. The involvement of the DOJ underscores the public interest and legal significance of the issues at hand. When a federal agency alleges conduct similar to that which a plaintiff has claimed in a civil suit, such allegations are inherently relevant to the reconsideration of related legal arguments in civil proceedings. This is not merely coincidental or tangential information; it is a powerful, corroborative development that strengthens the case for revisiting an original court decision to dismiss under 12(b)(6).

The Court should be wary of allowing Apple's minimalistic treatment of the DOJ's involvement to stand without scrutiny. Dismissing the DOJ's allegations as irrelevant allegations fails to consider the broader implications of systemic anticompetitive behavior alleged against Apple. In sum, Apple's insufficient response to the DOJ's allegations should be viewed as an implicit acknowledgment of the challenges these new facts pose to their defense. The Court is encouraged to

critically assess the significance of the DOJ's allegations and their impact on the overall context of this case.

In light of the recent Department of Justice allegations against Apple, the principle outlined in *Foman v. Davis*, 371 U.S. 178 (1962), is particularly relevant to the current motion to reopen the case. *Foman* asserts that a dismissal with prejudice pursuant to a Rule 12(b)(6) motion should only occur when there is clear evidence of futility in amending the complaint. This case has now reached a juncture where such a conclusion of futility can no longer be justifiably maintained, given the substantive parallels between the DOJ's detailed market definitions, its articulation of antitrust injuries, and the claims initially posited by the Plaintiff.

This alignment is critical as it demonstrates that the conduct alleged by the Plaintiff is not only plausible but is also of concern to the federal government. Even if Plaintiff got the relevant markets wrong – which in light of DMA, it appears at least one was reasonably close – the DOJ action inherently negates the previous assertions of futility in amending the Plaintiff's complaint. This situation represents a scenario where the "futility of amendment" doctrine no longer holds, as the new facts from a high-level governmental body introduce a viable path forward for amending the complaint.

In addition to *Foman*, *Retlaw* similarly applies to the new facts derived from the DOJ, EU, and *Epic* cases. Apple's opposition does not address compelling evidence sourced from the DOJ Complaint: CEO Tim Cook's blatant mockery of antitrust injury from cross-platform video apps. Apple's opposition also does not meaningfully address the fact Apple is in malicious compliance with this District's YGR Epic Court, and of course, the EU Competition Authorities. The Motion asserts that all three facts independently invoke Rule 60's catch-all, in the interest of public policy against leniency for felony antitrust conduct when the actor – Apple – is in defiance of enforcement efforts. They also didn't respond to the fact that PhantomALERT, Coring, and a host of other

developer cases will now proceed under the guidance of the DOJ complaint, hence it would be unfair to preclude Plaintiff, simply because he was the first to advocate against free app censorship. Because Apple didn't touch upon these issues in its objections, they are forfeited under *Retlaw Enterprises, Inc. v. Marketron Broadcasting System, Inc.*, 945 F.2d 245 (9th Cir. 1991).

V. **OBJECTIONS FAIL TO JUSTIFY DISPARAGEMENT OF PLAINTIFF'S DISABILITY**

Apple and Gibson Dunn's focus on disability, rather than the merits of the legal arguments, was both irrelevant and inappropriate as a tactic to win an antitrust claim. Apple's pretextual objections are implausible and based on demonstrably false information. First, Apple asserts that the "chief complaint" (a medical term, seemingly mocking the entire issue) of the motion is their use of the descriptor "neuropsychiatric disability," which stems from a Third Circuit order. That is not the alleged problem – it is that Isaacs' medical disability is irrelevant and shouldn't have been introduced into pleadings to win an antitrust lawsuit, where the conduct has nothing to do with Isaacs' disability. Attempting to prove relevance, Apple proffers:

> *Nor was this "irrelevant," as Isaacs suggests. Plaintiffs put Isaacs' "interdisciplinary expertise" at issue, Dkt. 41 ¶ 30, sought a preliminary injunction challenging the denial of their app as "pretextual at best," Dkt. 20 ¶ 46, and thereby put Apple to its proof of explaining that a former physician…*
> (Objection p. 11)

Apple's explanation is caught as untrue by their own evidence. A document containing all correspondence of Coronavirus Reporter's App Store submission was filed by Apple as evidence opposing a Preliminary Injunction. *Docket Entry #34-1, Exhibit A*. It proves Apple considered the following in the app rejection:

> *"[Coronavirus Reporter was] developed under Dr Robert Robert's leadership."*
> *"Dr Robert Roberts is Chief Medical Officer of CALID, Inc. Dr Robert Roberts oversees this app,"*
> *"Please see attached letter from Dr. Robert Roberts and CV. Calid is operating as a bioinformatics and telemedicine focused corporation, under his leadership. As his letter states, he also serves as liaison between Calid and University of Arizona."*
> *"While we understand that you are working with healthcare professionals, we continue to find that your app contains information related to the COVID-19 pandemic, but the seller and company names associated with your app are not from a recognized institution, such as a governmental entity, hospital, insurance company, non-governmental organization, or university."*

The evidence is clear. Apple rejected the App because Dr. Roberts, purportedly, didn't satisfy their "institutional" requirement, despite him being an executive at University of Arizona. Apple's unequivocal rejection documentation has *nothing to do* with Dr. Isaacs medical credentials or disability. Moreover, the FAC describes Dr. Roberts' interview with CNBC about managing this app. Dr. Roberts had full medical authority over the app and there is absolutely zero evidence to suggest otherwise, despite Gibson Dunn's best efforts, which now constitute multiple false filings meant to inject Isaacs' disability into this proceeding, and which have resulted in multiple international news articles improperly discussing Isaacs' disability.

Isaacs' assertion in the FAC that he had multidisciplinary education does not explain why Apple, in an opposition to preliminary injunction filed a month before Isaacs' educational disclosure, falsely stated that Coronavirus Reporter's "only connection" to medicine was "Jeffrey Isaacs," who suffers from "neuropsychiatric disability." Not only was that false – Apple's documentation clearly evidences Dr. Robert's primary, lead medical role – but it improperly introduced medical disability information meant to tarnish the proceedings. And it did. A Ninth Circuit Justice asked "this may be a silly question, but what is a notary stamp?" Gibson Dunn's sleight of hand – manipulating description of underlying evidence to suggest Apple rejected the App on Isaacs' medical credentials – when it did not – played a role in undermining Plaintiff's market definitions and winning an antitrust case, at Isaacs' expense. This is now repeat ADA violation and unethical litigating.

### VI. APPLE'S REQUEST TO DISMISS MOTION ON BASIS OF PAGE COUNT AGAIN AVOIDS MERITS

Apple asserts that the Motion should be denied because it exceeds the Local Rules page length limitation. The twenty-sixth page Apple refers to, which Plaintiff concedes exists, contains one sentence from the conclusion, and a section requesting oral argument, which is redundant with the previous section requesting Evidentiary Hearing. Therefore, at its discretion, the Court may truncate the last page, or Plaintiff may re-file the truncated version, whichever is preferred. Neither will affect the briefing process underway, and will permit this matter to be adjudicated on the merits.

### CONCLUSION

Put simply, Apple had twenty-five pages to rebut their alleged "tooth and nail fight" to keep notarization charges alive globally. Evidently, they couldn't do this under Rule 11, and therefore this motion should be granted. Apple Inc.'s opposition rests heavily on prior procedural outcomes and mischaracterizes both the intent and the substance of Isaacs' motion to reopen the case under Federal Rule of Civil Procedure 60(b). The response highlights a fundamental misunderstanding or intentional misrepresentation of the evolving legal landscape that impacts this case.

The disproportionate focus on past victories and the character of the plaintiff rather than the substantive new evidence presented by Isaacs suggests that Apple may perceive the CTF allegation as a significant threat to their position. This is evident in their extensive efforts, ever present in their objection, to discredit Isaacs and minimize the legal implications of the new market realities introduced by the DMA and reflected in the CTF. Apple's reluctance to engage with the CTF issue in depth may be indicative of the potential validity of the claims associated with it, which could fundamentally alter the competitive landscape in a manner previously dismissed by the court.

The court must critically assess why Apple has chosen to sideline the discussion of the CTF—a potentially transformative factor in the antitrust landscape surrounding iOS app distribution. The

selective focus of Apple's response not only undermines the spirit of comprehensive judicial review but also potentially deprives the court of a balanced understanding of how new market conditions might influence the antitrust analysis central to this case. This oversight on Apple's part necessitates a more thorough examination by the Court to ensure that all relevant factors are considered in adjudicating the motion for relief under Rule 60(b).

Apple's strategic decision to virtually ignore the CTF allegation while concentrating on procedural history and attacking a disabled developer's character should raise concerns about the adequacy of their response to the substantive legal issues presented in the motion. The Court should recognize the potential for these tactics to divert attention from significant changes in market dynamics that could validate Plaintiff's claims. A focused judicial inquiry into the implications of the CTF and the broader competitive environment is essential to ensure that the motion for relief is evaluated on its full merits, taking into account all relevant and recent developments.

Apple's use of pejorative terms to describe this motion—words carefully chosen for their stigmatizing connotations—mirrors their past strategy to shift focus to Plaintiff as rather than address the merits of his claims. This approach is not only prejudicial but also distracts from the factual and legal bases of the motion. The repeated use of such language in legal filings can have a severe impact on the perception of the litigant's character and motivations, which is especially damaging when the Plaintiff has faced challenges related to his medical condition.

Imagine if this new development were to go unchecked, and like the EU, the US authorities required Apple open up app distribution to allow third-party sideloading. Apple would then implement a CTF in the United States, just as they did in Europe. And they would be protected by the law of this case – that notary stamps are not a market. The law of this case, as it presently stands, risks further enabling the Apple monopoly. Rule 60 is the appropriate mechanism to do correct this matter.

Apple dismisses the relevance of the DMA and other global market changes by claiming they are unrelated to U.S. law and the specifics of this case. This overlooks the global nature of digital markets and the influence of international regulatory frameworks on U.S. businesses and antitrust jurisprudence, and the obvious stated above – that Apple can and will implement a CTF in the USA, if permitted. The DMA's impact on Apple's business practices offers a direct analogy to potential monopolistic practices within the U.S., thus providing new evidence that supports the plausibility of Plaintiff's market theories, particularly concerning iOS notary stamps.

Apple's focus on Isaacs' medical condition was both irrelevant and prejudicial, which tainted the proceedings. Contrary to Apple's assertion, the references to Isaacs' neuropsychiatric condition, which were never submitted to Apple nor relevant to the antitrust issues at hand, were used to undermine his credibility and win an antitrust lawsuit by mocking "notary stamps" and other writings of Isaacs. That is improper. This misuse of personal health information in court proceedings warrants correction to prevent manifest injustice, an aim squarely within the ambit of Rule 60(b)(6).

The motion for an evidentiary hearing and further discovery is justified by the need to examine the implications of new facts arising from regulatory changes and market evolution that were previously unavailable. This is a legitimate issue to say the least, and is certainly not "abusive" but rather ensures that the court's decision is informed by the most current and relevant information. Apple's attempt to close off any reconsideration of this case fails to recognize the significant changes in the digital market landscape and the potential implications of these changes on the original judgment. It is neither vexatious nor frivolous to request that the court consider new evidence that could fundamentally alter the legal and factual framework of the case. Therefore, Plaintiff respectfully requests that the court grant the motion to reopen the case, allow the introduction of new evidence, and reconsider its prior rulings in light of these developments.

Given the significance of the new information regarding Apple's adaptation to the DMA, an evidentiary hearing and further discovery are not only justified but necessary. These processes are essential to explore fully the implications of Apple's adjustments in their business model, which support claims about monopolistic practices associated with notary services. Dismissing the need for further inquiry as "prolonging litigation" fundamentally misunderstands the purpose of judicial oversight in ensuring fair competition in digital markets.

Apple's response to the motion for relief under Rule 60(b) attempts to deflect from the substantive issues by undermining the Plaintiff's character and motivations. This approach is not only inappropriate but also indicative of a broader strategy to use personal attacks in place of engaging with significant legal and factual developments that warrant reopening the case. The Court should recognize these tactics for what they are—an attempt to avoid scrutiny of potentially anticompetitive practices that have now been substantiated by international regulatory actions and documented changes in Apple's business conduct. Therefore, Plaintiff Isaacs respectfully requests that the Court look beyond the derogatory framing by Apple and allow the motion to proceed on its merits, ensuring that justice is served in light of new and compelling evidence.

Submitted on this 3rd day of May, 2024.

/s/ Dr. Jeffrey D. Isaacs
Dr. Jeffrey D. Isaacs
11482 Key Deer Circle
Wellington, FL 33449

# CERTIFICATE OF SERVICE

I, Jeffrey Isaacs, do declare as follows:

I certify that a copy of the foregoing **NOTICE OF MOTION AND MOTION TO REOPEN CASE** was delivered electronically to counsel for the Defendant.

Executed on this 3rd day of May, 2024.

/s/ Dr. Jeffrey D. Isaacs
Dr. Jeffrey D. Isaacs
11482 Key Deer Circle
Wellington, FL 33449